UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| MICHAEL PEARSON, JAMES SUTER, SILVIA SUTER, and JEANNIE STRANGE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PORT OF MORROW, LAMB WESTON HOLDINGS, INC., MADISON RANCHES, INC., THREEMILE CANYON FARMS, LLC, BEEF NORTHWEST FEEDERS, LLC, and JOHN DOES 1-10,<br><br>Defendants. | Case No. 2:24-cv-00362-HL<br><br>**JOINT REPORT RE FEDERAL RULE OF CIVIL PROCEDURE 26(F)**<br><br>Judge: Hon. Andrew D. Hallman<br>Date: June 17, 2024<br>Time: 1:30 PM |

Plaintiffs Michael Pearson, James Suter, Silvia Suter, and Jeannie Strange ("Plaintiffs"), individually and on behalf of the proposed Class, and defendants Port of Morrow, Lamb Weston Holdings, Inc., Madison Ranches, Inc., Threemile Canyon Farms, LLC, and Beef Northwest Feeders, LLC ("Defendants"), by and through their undersigned counsel, respectfully submit this joint report pursuant to Federal Rule of Civil Procedure 26(f). Counsel for the parties conferred via videoconference on June 5, 2024. This statement is filed in anticipation of the Rule 16 scheduling conference scheduled for June 17, 2024.

A.  Statement of the Nature and Basis of the Claims and Defenses

    **Plaintiffs' Statement:**

Plaintiffs are residents of the Lower Umatilla Basin, where the groundwater is so polluted with nitrates that the Oregon Department of Environmental Quality (DEQ) has declared it a "Groundwater Management Area." The GMA, which includes northern Morrow and Umatilla Counties, is home to more than 45,000 people. Nitrates are invisible pollutants that can cause miscarriage, thyroid disease, cancer, and methemoglobinemia. The federal safety threshold for nitrate concentrations is 10 mg/L; anything higher is unsafe to drink.

People in the Umatilla GMA rely on either municipal water systems or private wells for their drinking water. Tests of private wells in the area show nitrate concentrations exceeding 40 mg/L, more than four times the federal safety threshold. Hundreds of households have been instructed not to drink their well water and are being provided with bottled water by the state—a stopgap measure that does not address the underlying pollution. Even city water has tested high for nitrates, and cities have been forced to build new facilities to properly filter and treat the water to remove nitrates.

According to the Oregon DEQ, 95% of the nitrate pollution in the Umatilla GMA is attributable to irrigated agriculture, concentrated animal feeding operations (CAFOs), and

industrial wastewater treatment and disposal facilities operating in the area. Defendants are the Port of Morrow; Beef Northwest Feeders, LLC; Lamb Weston Holdings, Inc.; Madison Ranches, Inc.; and Threemile Canyon Farms, LLC. The Port of Morrow operates Oregon's second-largest port, where it leases space to food processing companies. Beef Northwest Feeders is a CAFO. Lamb Weston, Madison Ranches, and Threemile Canyon engage in widespread irrigated agriculture operations in the Umatilla GMA. The Port of Morrow and Lamb Weston dispose of nitrogen-heavy industrial wastewater by dumping it on nearby fields year-round, including during the non-growing season. They have repeatedly violated the DEQ permits that are supposed to regulate their wastewater dumping. The DEQ has fined the Port for its violations, but the Port has declared that it will keep dumping and keep violating its permit.

Nitrate contamination in the GMA has gotten worse in the last several years, even as a variety of state agencies and committees have purported to study the problem, issuing reports and "action plans" that have utterly failed to stop the flow of pollutants into the area's groundwater. In an effort to end this ongoing environmental injustice, Plaintiffs filed this putative class action on behalf of all residents of the Umatilla GMA, bringing a citizen suit under the Resource Conservation and Recovery Act, 42 U.S.C. § 6972, and state-law claims for negligence, trespass, public nuisance, and private nuisance (against all Defendants), and inverse condemnation (against the Port of Morrow only). Plaintiffs seek general, compensatory, and punitive damages and injunctive relief. They want Defendants to provide class members with potable water, conduct medical monitoring, and clean up the mess they have made.

**Defendants' Statement:**

Defendants variously reside and/or operate in Umatilla and Morrow Counties. The current named defendants are Port of Morrow, Lamb Weston Holdings, Inc., Beef Northwest Feeders, LLC, Madison Ranches, Inc., and Threemile Canyon Farms, LLC.[1]

Despite Plaintiffs' allegations to the contrary, Defendants create, manage, and/or apply the process wastewater or manure in a responsible and sustainable manner, and Defendants deny that their conduct has harmed Plaintiffs or caused or contributed to elevated concentrations of nitrates in the groundwater beneath Plaintiffs' properties or that the alleged conduct is the sole cause of groundwater contamination.

Concerns about nitrate concentrations in Umatilla and Morrow Counties is not a recent phenomenon. For more than three decades, it has been known that the region is susceptible to elevated concentrations of nitrates in the groundwater. The Oregon Department of Environmental Quality ("DEQ") established the Lower Umatilla Basin Groundwater Management Area (the "LUBGWMA") in 1990, and formed the LUBGWMA Committee in 1996, which established goals for decreasing nitrate concentrations in the region. While Defendants (some of whom did not come into existence until after the creation of the LUBGWMA) have actively participated in the LUBGWMA Committee's initiatives and have developed and implemented modern farming and application practices to minimize the potential impact on groundwater, other non-party entities in the region have historically engaged in—and some continue to engage in—

---

[1] Plaintiffs have indicated that their current plan is at some point to seek leave to further amend their pending Amended Complaint (Dkt. 17) to name additional defendants, but to date they have declined to commit to a date by which they would do so or to identify the people or entities they would seek to join.

JOINT REPORT RE FEDERAL RULE OF
CIVIL PROCEDURE 26(F) - 3 -

unregulated nitrogen application, including those that apply commercial fertilizers in Umatilla and Morrow Counties.

Plaintiffs' suit seeks to upend the regulatory framework for reuse or process wastewater, manure, and application within the LUBGWMA, and, in a very real sense, asks this Court to interfere with and usurp the state administrative agencies' authority and allow Plaintiffs to impose their own unspecified solution. In addition to the LUBGWMA Committee (which is chaired by an Oregon State University scientist), the DEQ, Department of Agriculture, Oregon Heath Authority, and the Oregon Water Resources Department all are working to address the issue. The Court, pursuant to the doctrines of primary jurisdiction and abstention, should decline to exercise jurisdiction over complex matters that are within the special competence of State (and Federal) administrative bodies. Alternatively, Plaintiffs fail to state any of their claims either as a matter of law or for failure to allege facts stating any plausible claim against some or all of the Defendants.

To the extent that the Court is inclined to allow these claims to proceed past the motion to dismiss phase, Plaintiffs' claims are not susceptible to class certification. Further, Defendants anticipate that discovery will reveal that the named Plaintiffs will be unable to support one or more of the essential elements on each of their individual claims even if their pleading is deemed sufficient.

## B. Settlement or Alternative Dispute Resolution

The parties believe settlement conversations would be premature at this point in time. The parties will review ADR options as the case develops.

## C. Preservation of Discoverable Information

Plaintiffs request preservation of all data and documents responsive to their anticipated

discovery, as described in Section D(2) below.

Plaintiffs have preserved relevant documents consistent with the claims and defenses in this case.

Although Defendants' position is that the discovery scope articulated in Plaintiffs' Statement in Section D(2) below is overly broad, Defendants have taken and shall continue to take reasonable and proportional steps to preserve documents relevant to the claims and defenses in this case, in accordance with their obligations under applicable law.

**D. Discovery Plan as Set Forth in Rule 26(f)(3) of the Federal Rules of Civil Procedure**

**(1) Exchange of initial disclosures**

**Plaintiffs' Statement:**

Plaintiffs have not waived the exchange of initial disclosure under Federal Rule of Civil Procedure 26(a)(1)(A). They believe the early exchange of information, particularly concerning the identity of potential witnesses with discoverable information, will be helpful in moving the case forward. They therefore propose exchanging initial disclosures on June 19, 2024.

**Defendants' Statement:**

Defendants believe the parties should waive the exchange of initial disclosures, which is a routine practice in the District of Oregon. Alternatively, if the Court believes the parties should exchange initial disclosures, Defendants propose July 31, 2024.

**(2) Subjects, timing, and potential phasing of discovery**

**Plaintiffs' Statement:**

Plaintiffs anticipate discovery of documents and data concerning:
- Defendants' operations;
- Defendants' creation, storage, use, and/or disposal of wastewater;

- Defendants' policies and procedures governing the creation, storage, use, and/or disposal of wastewater;
- The composition of wastewater created, stored, used, and/or disposed of by Defendants;
- Defendants' compliance with the permits (if any) regulating their use and/or disposal of wastewater;
- Defendants' communications with the Oregon DEQ and any other local, state, or federal regulators concerning their creation, storage, use, and/or disposal of wastewater;
- Communications regarding Defendants' creation, storage, use, and/or disposal of wastewater, including internal communications and any complaints received from third parties regarding adverse effects of wastewater disposal.
- The hydrogeology of the LUBGWMA;
- The contamination of public and private water sources in the LUBGWMA; and
- The medical risks associated with nitrate exposure.

Plaintiffs believe discovery should be completed by September 18, 2025, consistent with the proposed schedule in Section D(4) below.

Plaintiffs do not believe discovery should be bifurcated or phased.

**Defendants' Statement:**

Defendants expect to conduct discovery on issues related to class certification, liability, and damages as alleged by Plaintiffs in their Amended Class Action Complaint and as may be asserted by Defendants in any answers subject to rulings issued by the Court on Defendants' motions to dismiss, including:

- Sources of nitrates in the Umatilla GMA;
- The role of third parties in the alleged events and conduct at issue;

- The fate and transport of nitrates in the Umatilla GMA;

- The alleged impacts of nitrate contamination on users of public water systems or users of private wells in the Umatilla GMA (including risks of exposure);

- Plaintiffs' locations of claimed exposure to nitrates, including any testing for nitrates;

- Plaintiffs' other potential exposures to nitrates;

- Plaintiffs' real property information, including ownership, purchase, sale, value, improvements, sources of water, water testing records;

- Plaintiffs' medical records, including test results for the presence of nitrates, health care providers, and diseases or conditions for which Plaintiffs seek damages and/or medical monitoring; and

- The nature and scope of Plaintiffs' and Class members' alleged damages and requested relief, including medical monitoring.

Defendants' positions on when discovery should be completed and whether discovery should be conducted in phases are included in Section D(4) below.

### i. Electronically stored information

The parties have conferred regarding electronically stored information (ESI) pursuant to LR 26-1(2). They will submit a proposed ESI Protocol that will govern the disclosure, discovery, or preservation electronically stored information by July 31, 2024.

### ii. Privilege issues

The parties are negotiating the terms of a Protective Order containing procedures for handling the inadvertent production of privileged information and other privilege clawback and non-waiver issues pursuant to Rule 502(d) or (e) of the Federal Rules of Evidence. The parties will submit a proposed Protective Order to the Court by July 31, 2024.

### iii. Potential limitations on discovery

The parties intend to litigate this case as efficiently as possible. Plaintiffs anticipate that they may need to take more depositions and propound more interrogatories than contemplated by the default rules set forth in Federal Rules of Civil Procedure 30 and 33. At the appropriate time, the parties will meet and confer regarding a limit on the number of depositions and interrogatories that is appropriate to the case.

The parties will also meet and confer at the appropriate time to discuss factors relating to the scope of production, including, but not limited to: (i) the number and identity of ESI custodians; (ii) the search terms to be used to identify potentially relevant ESI; (iii) the date ranges for which potentially relevant data will be drawn; (iv) the timing of productions (including rolling productions); and (v) the use of predictive coding or other technology-assisted review to assist in the efficient review and production of ESI.

### iv. Need for any discovery-related orders

The parties are negotiating the terms of a Protective Order governing the use of confidential information in this case. The parties will submit a proposed Protective Order to the Court by July 31, 2024.

**(3) Proposed Schedule**

**Plaintiffs' Position**

Plaintiffs respectfully request that the Court enter a case schedule that covers motions to dismiss through dispositive motions. This case concerns a public health emergency, and it is critical that this litigation move forward at a steady pace. Defendants' proposed schedule ties the dispositive motion deadline to a class certification decision, but it does not allow for a class certification motion until after a 16-month discovery period. The result is a protracted schedule that would have dispositive motions being filed in January 2027 at the *earliest*. Defendants' proposed schedule would also delay a decision on class certification until August 13, 2026, at the

earliest. The federal rules call for class certification decisions to be made "[a]t an early practicable time," Fed. R. Civ. P. 23(c)(1)(A), not two-and-a-half years after a complaint was filed.

Plaintiffs therefore request that the Court enter the following schedule, which calls for class certification to be briefed in mid-2025, before the close of fact discovery, and for dispositive motions to be briefed by the end of 2025. This schedule sets prompt but realistic deadlines for all parties and ensures that the case will move forward expeditiously:

| EVENT | DATE/DEADLINE |
| --- | --- |
| Defendants' Motions to Dismiss | June 24, 2024 |
| Plaintiffs' Opposition to Motions to Dismiss | July 12, 2024 |
| Defendants' Replies in Support of Motions to Dismiss | August 9, 2024 |
| Deadline to Join Parties and Amend the Pleadings (except for good cause shown) | December 16, 2024 |
| Plaintiffs' Expert List | March 14, 2025 |
| Defendants' Expert Lists | March 28, 2025 |
| Plaintiffs' Motion for Class Certification | June 5, 2025 |
| Defendants' Opposition to Motion for Class Certification | July 10, 2025 |
| Plaintiffs' Reply in Support of Class Certification | August 7, 2025 |
| Close of Discovery | September 18, 2025 |
| Motions for Summary Judgment and Daubert Motions | September 18, 2025 |
| Opposition to Motions for Summary Judgment and Dauberts | October 16, 2025 |
| Replies in Support of Summary Judgment and Daubert Motions | November 13, 2025 |

**Defendants' Position**

Defendants do not find Plaintiffs' proposed schedule to be achievable. The main differences in the proposed schedules are Defendants' positions that (1) all parties should be added to the suit before discovery commences and (2) fact and expert discovery will require more than the 9 months allotted by Plaintiffs.

Plaintiffs served their first Notice of Tort Claims on December 8, 2022, and did not file their original complaint until more than 14 months later in February 2024. Even then, Plaintiffs did not serve their original complaint, waiting an additional two months to amend and serve their amended complaint. Moreover, the issue at the center of the dispute—nitrate concentrations—has been the subject of government agencies' review, intervention, and oversight for more than three decades.

Discovery should not begin until all defendants are joined and served. Plaintiffs have already amended once and indicated they still "intend to [further] amend their Complaint to include [] additional claims" and "others to be named in the future." (Dkt. 17 at 35 n.7, ¶ 63). Defendants agree that the case should proceed, but not piecemeal. The parties who will be participating in discovery should be added to the case first, especially all the entities to whom Plaintiffs have already sent RCRA and/or Tort Notice letters as long as 18 months ago as reflected in Defendants' proposed schedule below.[2]

Additionally, Defendants anticipate that both the class certification and merits stages of this case will involve complex scientific issues necessitating substantial expert work. Plaintiffs' proposed schedule, which contemplates expert designations approximately 9 months after the deadline to respond to the amended complaint is not realistically feasible.

---

[2] Thus, any contention Plaintiffs may make that they need discovery at this early juncture to determine whether any additional defendants should be added is untenable, certainly with respect to any entities to whom they have already sent RCRA or Tort Notice letters.

| EVENT | DATE/DEADLINE |
|---|---|
| Defendants' Deadline to Respond to Plaintiffs' Amended Complaint | June 24, 2024 |
| Initial Disclosures | Waived or July 31, 2024[3] |
| Joinder of Other Parties and Amendment of the Pleadings (except for good cause shown) | July 31, 2024 |
| **Close of Fact Discovery**[4] | 16 months after pleadings closed |
| Plaintiffs' Deadline to Disclose Class Certification Related Experts Pursuant to Fed. R. Civ. P. 26(a)(2) | 2 months after Close of Fact Discovery |
| Defendants' Deadline to Disclose Class Certification Related Experts Pursuant to Fed. R. Civ. P. 26(a)(2) | 4 months after Close of Fact Discovery |
| **Close of Class Certification Expert Discovery** | 5 months after Close of Fact Discovery |
| Plaintiffs' Motion for Class Certification | 6 months after Close of Fact Discovery |
| Defendants' Oppositions to Motions for Class Certification | 6 weeks after Plaintiffs' Motion for Class Certification |
| Plaintiffs' Reply ISO Motion for Class Certification | 30 days after Defendants' Oppositions to Motions for Class Certification |
| All Merits Expert Reports | 80 days after Court's ruling on Motion for Class Certification |
| All Rebuttal Merits Expert Reports | 110 days after Court's ruling on Motion for Class Certification |
| **Close of All Merits Expert Discovery** | 140 days after Court's ruling on Motion for Class Certification |
| Dispositive Motions Deadline | 170 days after Court's ruling on Motion for Class Certification |

---

[3] Defendants reserve the right to seek to stay discovery pending resolution of any motions to dismiss.

[4] Defendants do not anticipate bifurcating class and merits fact discovery. However, Defendants propose that following a decision on class certification, the Court hold a status conference to address case management issues resulting from the order. This could include notice issues, whether further merits discovery is needed and setting any additional deadlines (*e.g.,* a pretrial conference).

DATED:  June 10, 2024

Respectfully submitted,

By /s/  *Steve Berman*
Steve W. Berman (*pro hac vice*)
Meredith S. Simons (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98134
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
merediths@hbsslaw.com

Abigail D. Pershing (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
abigailp@hbsslaw.com

Michael A. Bliven, Oregon State Bar No. 942510
BLIVEN LAW FIRM, PC
704 S. Main
Kalispell, MT 59901
Telephone: (406) 755-6828
Facsimile:  (406) 755-6829
mike@blivenlawfirm.com

Robert F. Dwyer, III, Oregon State Bar No. 984197
BLIVEN LAW FIRM, PC
202 North Main Street, Suite 1
Boardman OR 97818
Telephone: (406) 755-6828
Facsimile:  (406) 755-6829
rdwyer@blivenlawfirm.com

John Heenan (*pro hac vice*)
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Telephone: (406) 839-9091
Facsimile:  (406) 839-9092
john@lawmontana.com

*Attorneys for Plaintiffs and the Proposed Class*

BUTLER SNOW LLP

*/s/Kyle V. Miller*
Kyle V. Miller, *Admitted pro hac vice*
kyle.miller@butlersnow.com
James H. Bolin, *Admitted pro hac vice*
jay.bolin@butlersnow.com
1020 Highland Colony Parkway, Suite 1400
Ridgeland, Mississippi 39157
Telephone: (601) 948-5711

Jennifer L. Gates, OSB No. 050578
jgates@pearllegalgroup.com
Pearl Legal Group, PC
529 SW Third Ave., Suite 600
Portland, OR 97204
Telephone: (971) 808-5666

Jeffrey C Misley, OSB No. 850674
jmisley@sussmanshank.com
Steven Cade, OSB No. 106466
scade@sussmanshank.com
Tab Wood, OSB No. 115604
twood@sussmanshank.com
1000 SW Broadway Ste 1400
Portland OR 97205
Telephone: (503) 227-1111

*Attorneys for Defendant Madison Ranches, Inc.*


WINSTON & STRAWN

*/s/Eric White*
Eric White, *Admitted pro hac vice*
ewhite@winston.com
Winston & Strawn
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-3472

Amanda Groves, *Admitted pro hac vice*
agroves@winston.com

Winston & Strawn
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071
Telephone: (213) 615-1851

Drew Washington, *Admitted pro hac vice*
dwashington@winston.com
Winston & Strawn
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-1475

Bruno Jagelski, OSB No. 903049
bjagelski@yturrirose.com
Yturri Rose, LLP
89 S.W. 3rd Avenue
PO Box S
Ontario OR 97914
Telephone: (541) 889-5368

*Attorneys for Defendant Lamb Weston Holdings, Inc.*


STOEL RIVES LLP

*/s/Amy Edwards*
Amy Edwards, OSB No. 012492
amy.edwards@stoel.com
Misha Isaak, OSB No. 086430
misha.isaak@stoel.com
Ariel Stavitsky, OSB No. 175907
ariel.stavitsky@stoel.com
Telephone: (503) 224-3380

*Attorneys for Defendants Port of Morrow and Threemile Canyon Farms, LLC*


DAVIS WRIGHT TREMAINE LLP

*/s/Kevin H. Kono*
Kevin H. Kono, OSB #023528
kevinkono@dwt.com
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon 97205-2771

Telephone: (503) 241-2300

David Ubaldi, *Admitted Pro Hac Vice*
davidubaldi@dwt.com
M. Scott Broadwell, *Admitted Pro Hac Vice*
scottbroadwell@dwt.com
929 108th Avenue
Bellevue, Washington 98004
Telephone: (425) 646-6100

*Attorneys for Defendant Beef Northwest Feeders, LLC*

Pursuant to Local Rule 11-1(b)(2), I attest that the other signatory listed, and on whose behalf this filing is submitted, concurs in the filing content and has authorized this filing.

DATED: June 10, 2024     */s/ Steve Berman*
                          Steve W. Berman