Michael A. Bliven (OR Bar No. 942510)
mike@blivenlawfirm.com
BLIVEN LAW FIRM, PC
704 S. Main
Kalispell, MT 59901
(406) 755-6828

Robert F. Dwyer, III (OR Bar No. 984197)
rdwyer@blivenlawfirm.com
BLIVEN LAW FIRM, PC
202 North Main Street, Suite 1
Boardman, OR 97818
(406) 75-6828

John Heenan (*pro hac vice*)
john@lawmontana.com
HEENAN & COOK, PLLC
1631 Zimmerman Trail
Billings, MT, 59102
(406) 839-9091

Steve W. Berman (*pro hac vice*)
Meredith S. Simons (*pro hac vice*)
steve@hbsslaw.com
merediths@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98134
(206) 623-7292

Abigail D. Pershing (*pro hac vice*)
abigailp@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO, LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
(213) 330-7150

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PENDLETON DIVISION

| | |
|---|---|
| MICHAEL PEARSON, JAMES SUTER, SILVIA SUTER, and JEANNIE STRANGE, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>PORT OF MORROW, LAMB WESTON HOLDINGS, INC., MADISON RANCHES, INC., THREEMILE CANYON FARMS, LLC, BEEF NORTHWEST FEEDERS, LLC, and JOHN DOES 1 – 10,<br><br>        Defendants. | Case No.: 2:24-cv-00362-HL<br><br>**PLAINTIFFS' COMBINED RESPONSE TO DEFENDANTS' REQUESTS FOR JUDICIAL NOTICE IN SUPPORT OF THEIR MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

# I.    INTRODUCTION

Defendants Port of Morrow, Threemile Canyon Farms, LLC ("Threemile"), Lamb Weston Holdings, Inc. ("Lamb Weston"), Madison Ranches, Inc. ("Madison Ranches"), and Beef Northwest Feeders, LLC ("Beef Northwest") ask the Court to take judicial notice of 41 documents comprising hundreds of pages of material extraneous to Plaintiffs' Complaint.[1] Plaintiffs do not object to the Court taking notice of those documents that pertain to permits issued by the Oregon Department of Environmental Quality ("DEQ") and to Defendants' violation thereof, because these are similar to documents that Plaintiffs reference in their Complaint.[2] However, Plaintiffs do object to the Court taking notice of two other categories of documents: (1) documents that Madison Ranches relies on to define the term "irrigation return flow"[3]; and (2) documents Threemile uses to try to establish that its confined animal feeding operations ("CAFOs") operate under a permit from the Oregon Department of Agriculture ("ODA").[4]

Madison Ranches contends that the documents it seeks to introduce are relevant to the legislature's intent in enacting the Resource Conservation and Recovery Act ("RCRA"). Plaintiffs

---

[1] *See* Defendant Beef Northwest Feeders, LLC's Request for Judicial Notice, ECF No. 52; Request for Judicial Notice in Support of Defendant Lamb Weston Holdings, Inc.'s Motion to Dismiss, ECF No. 53; Port of Morrow and Threemile Canyon Farms, LLC's Request for Judicial Notice in Support of Motion to Dismiss, ECF No. 58; Defendant Madison Ranches Motion to Dismiss at 7–9, ECF No. 59.

[2] Specifically, Plaintiffs do not object to the Court taking notice of the following documents for the purpose of showing that the DEQ and other entities have been involved in addressing groundwater contamination in the Umatilla Groundwater Management Area: the Port of Morrow's Exhibits 1 and 8, ECF Nos. 57-1 and 57-8; Lamb Weston's Exhibits 1–13, ECF Nos. 55-1–13, Madison Ranches's Exhibit 3, ECF No. 59-3; and Beef Northwest's Exhibits 1–13, ECF Nos. 52 1–3. Plaintiffs reserve their right to dispute the factual accuracy of any assertions within those documents.

[3] ECF No. 59 at 16, n.2 & n.3; ECF No. 59-1 at 2; ECF No. 59-2 at 3.

[4] ECF No. 58; *see also* Exs. 2–7 to the Declaration of Misha Isaak in Support of Port of Morrow and Threemile Canyon Farms, LLC's Motion to Dismiss Plaintiff's Amended Class Action Complaint ("Decl. of Misha Isaak"), ECF Nos. 57-2 to 57-7.

dispute this. But even if Madison Ranches were right, the definitions it seeks to import into the case are legislative facts, not adjudicative facts, and therefore are inappropriate for judicial notice.

Threemile, for its part, asks the Court to judicially notice a stack of documents related to ODA permits. Threemile says these documents establish that its CAFOs operate under an Oregon CAFO National Pollutant Discharge Elimination System ("NPDES") General Permit.[5] But Threemile's CAFO permit documents do not establish this fact "beyond dispute" and therefore should not be judicially noticed.

Plaintiffs respectfully request that the Court deny Defendants' requests for judicial notice as to documents containing "irrigation return flow" definitions (Madison Ranches's Exhibits 1–2) and Threemile's CAFO permit documents (Threemile's Exhibits 2–7).

## II.    APPLICABLE LEGAL STANDARD

Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6).[6] "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201."[7] Under Rule 201, facts may be judicially noticed if they are "not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[8] The rule governs judicial notice of "adjudicative fact[s] only, not [] legislative fact[s]."[9] A fact is "adjudicative" only if it is material to "the immediate parties—who

---

[5] POM/Threemile MTD at 22, n.7.

[6] *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

[7] *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018).

[8] Fed. R. Evid. 201(b).

[9] Fed. R. Evid. 201(a).

did what, where, when, how, and with what motive or intent."[10] "Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process," including "the enactment[s] of a legislative body."[11]

The Ninth Circuit has instructed district courts to exercise caution in cases like this one, where defendants improperly seek to exploit judicial notice procedures "to defeat what would otherwise constitute adequately stated claims at the pleading stage."[12] "[T]he unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery."[13] "Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint."[14]

Judicial notice is inappropriate where the substance of a document "is subject to varying interpretations, and there is a reasonable dispute as to what [it] establishes."[15] Furthermore, courts "cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed."[16]

---

[10] *Port of Portland v. Monsanto Co.*, 2017 WL 9098079, at *8 (D. Or. Apr. 18, 2017) (quoting Fed. R. Evid. 201(a) advisory committee's note); *see also Valdivia v. Schwarzenegger*, 599 F.3d 984, 994 (9th Cir. 2010) (adjudicative facts are "simply the facts of the particular case") (quoting Fed. R. Evid. 201(a) advisory committee's note).

[11] Fed. R. Evid. 201(a) advisory committee's note.

[12] *Khoja*, 899 F.3d at 998.

[13] *Id.*

[14] *Id.* at 1003.

[15] *Id.* at 1000.

[16] *Rollins v. Dignity Health*, 338 F. Supp. 3d 2035, 1031 (N.D. Cal. 2018).

### III.    ARGUMENT

**A.    Madison Ranches's definitions of "irrigation return flow" are not subject to judicial notice.**

Madison Ranches impermissibly seeks judicial notice of two reports written for federal agencies to buttress its argument that its application of fertilizer and industrial wastewater is an "irrigation return flow" outside RCRA's purview.[17] Madison Ranches acknowledges that RCRA does not define "irrigation return flows."[18] Attempting to circumvent that legislative gap, Madison Ranches seeks to import a definition of "irrigation return flows" into RCRA by asking this Court to take judicial notice of these reports for their "definitions of irrigation return flow and deep percolation."[19] There are multiple problems with this argument.

*First*, Congress's intent when it used the phrase "irrigation return flows" is not an adjudicative fact. It has nothing to do with the actions of the "immediate parties in this case."[20] It is a classic "legislative fact" relevant to "the lawmaking process," and therefore it is not a proper subject of judicial notice.[21] Madison Ranches's request for judicial notice should be denied on that basis alone.

*Second*, there is no reason to believe that the definitions of "irrigation return flow" in the reports are accurate reflections of Congress's intent when it passed RCRA. Madison Ranches seems to argue that these reports establish the views of "[t]he federal government" on the meaning of "irrigation return flows."[22] But the federal government is an enormous enterprise, and there is no indication that the reports Madison Ranches cites have any connection to Congress in 1980.

---

[17] Madison Ranches MTD at 8–9.

[18] *Id.*

[19] *Id.* at 9, n.2–3.

[20] *Monsanto*, 2017 WL 9098079, at *8 (D. Or. Apr. 18, 2017).

[21] Fed. R. Evid. 201(a); Fed. R. Evid. 201(a) advisory committee's note.

[22] *See* Madison Ranches MTD at 8–9.

One is a 1969 report prepared by the Utah State University Foundation for the Federal Water Pollution Control Administration ("FWPCA"), and it expressly notes that its publication "does not signify that the contents necessarily reflect the views and policies" of the FWPCA.[23] The other is a 1971 report prepared by the director of a Water Research Center for the Environmental Protection Agency's Office of Research and Monitoring.[24]

These hardly represent "sources whose accuracy cannot be reasonably questioned" on the subject of what Congress intended when it enacted RCRA—especially because evidence from the legislative history demonstrates that Congress had a narrower definition of "irrigation return flow" in mind.[25] Because there "is a reasonable dispute as to what [these documents] establish[]," judicial notice should be denied.[26]

## B.    Threemile's CAFO permitting documents are not subject to judicial notice.

Threemile requests judicial notice of six documents related to CAFO permitting.[27] It seeks to establish the adjudicative fact that its CAFO subsidiaries operate pursuant to permits issued by the ODA,[28] but that fact cannot be "accurately and readily determined"[29] from the documents it has proffered.

Threemile's first CAFO permit document is CAFO NPDES General Permit #01-2016.[30] The document does not on its face say which CAFO it applies to,[31] and Threemile's declaration in

---

[23] ECF No. 59-1 at 3.

[24] ECF No. 59-2 at 3.

[25] *See* Plaintiffs' Omnibus Opposition to Defendants' Motion to Dismiss at 38.

[26] *Khoja*, 899 F.3d at 1000.

[27] ECF No. 58.

[28] ECF No. 56 at 22.

[29] Fed. R. Evid. 201(b).

[30] ECF No. 57-2.

[31] *See id.*

support of its motion to dismiss does not say either.[32] But even assuming that General Permit #01-2016 was in fact issued to Threemile's CAFO subsidiaries, it expired on February 28, 2021.[33] Thus, this document alone does not establish that Threemile is operating under an NPDES General Permit in 2024.

Threemile also requests judicial notice of three permit "Renewal Notices" for its CAFO subsidiaries.[34] These notices seem intended to establish that each CAFO subsidiary renewed General Permit #01-2016 and is therefore currently operating under an NPDES General Permit.[35] But the documents only establish that Threemile requested permit renewals, not that they were ever approved or finalized. The notices bear the signature of Greg Harris, Threemile's Director of Farming, and a stamp reading "REC'D FEB 22 2021."[36] There is no indication of who applied the "received" stamp or that the permit renewal requests were approved.[37]

Moreover, each renewal request is marked "AWNP/NMP is currently on file with ODA."[38] An Animal Waste Management Plan is a critical component of a CAFO permit,[39] but it is not apparent which AWNP is referred to in the renewal requests. Threemile's Exhibit 6 is an AWNP dated February 14, 2018.[40] But it is not clear that AWNP was ever approved.

Threemile describes its Exhibit 7 as "an ODA letter approving the Columbia River Dairy, LLC CAFO Animal Waste Management Plan,"[41] presumably a reference to the AWMP submitted

---

[32] *See id.*; Decl. of Misha Isaak ¶3, ECF No. 57.

[33] ECF No. 57-2 at 1.

[34] ECF No. 58 at 3; ECF Nos. 57-3 to 57-5.

[35] *See* ECF No. 58 at 3.

[36] ECF Nos. 57-3 to 57-5.

[37] *Id.*

[38] ECF Nos. 57-3 at 2, 57-4 at 2, 57-5 at 2.

[39] POM/Threemile at 22.

[40] ECF No. 57-6 at 1.

[41] ECF No. 57 ¶8.

as Exhibit 6. The letter notes that ODA received an AWMP on December 6, 2018, and rejected it "due to lack of information."[42] The letter also says ODA received a "new AWMP" on January 22, 2019, reviewed it, and deemed it "approvable pending a public notice."[43] But based on the date, it appears that Threemile seeks judicial notice of the 2018 AWMP that was *rejected* rather than the 2019 AWMP that was found "approvable."[44]

The approval letter goes on to say that "*[a]fter* the completion of the public notice and participation period required for your new AWMP, your facility *will be considered* for the permitting of 30,500 milking and dry cows."[45] There is no record in the documents of the result of any public notice and participation period or the final results of ODA's consideration of the AWMP.

Contrary to Threemile's suggestion in its request for judicial notice, the Court is not required to take judicial notice of documents simply because they are "public permit documents and environmental plans."[46] In fact, courts regularly *decline* to take judicial notice of environmental documents when they are subject to conflicting interpretations.[47]

In short, it cannot be "accurately and readily determined" from Threemile's CAFO permitting documents that its CAFOs are operating pursuant to ODA permits—the only fact for

---

[42] ECF No. 57-5 at 1.

[43] *Id.*

[44] *See* ECF No. 57-6 at 1.

[45] *Id.* (emphasis added).

[46] ECF No. 58 at 3.

[47] *See Western Watershed Project v. Abbey*, 719 F.3d 1035, 1044 n.4 (9th Cir. 2013) (approving a district court's refusal to take judicial notice of a draft management plan); *Vinagro v. Reitsma*, 260 F. Supp. 2d 425 (D.R.I. 2003) (refusing to take judicial notice of state DEQ guidelines where there was a dispute as to whether the guidelines actually established the facts for which they were offered).

which Threemile has offered them so far[48]—so the Court should not take judicial notice of them for any purpose. And it should certainly not take judicial notice of the scope of the alleged permits given the uncertainty over what those documents establish and the fact that analyzing their scope would require a detailed factual analysis inappropriate on a motion to dismiss.

In another case against a CAFO that allegedly polluted groundwater, the Eastern District of Washington refused to take judicial notice of documents very similar to the ones Threemile proffers here, including an NPDES permit and correspondence related to state permits.[49] The defendants wanted to use the documents to establish "the rights and obligations" they had under the permits, and to support their argument that they were not subject to RCRA because they were point sources subject to regulation under the CWA.[50] The court rejected this effort, holding that "[c]onsideration of these documents as a whole would take the Court's evaluation of the motion to dismiss away from the face of the Complaint" and "conflict with the Court's obligation at this stage to construe Plaintiffs' allegations in the light most favorable to Plaintiffs."[51] This Court should similarly decline to take judicial notice of Threemile's CAFO permit documents for any purpose, including the scope and content of the documents, whose applicability to Threemile has not even been established.

---

[48] ECF No. 58 at 3 ("These public documents are not offered to establish the truth of any specific fact or allegation. Instead, they are relevant to the fact that Oregon Department of Agriculture has established a regulatory framework and that Threemile is subject to this regulation.").

[49] *Comm. Ass'n for Restoration of Env't Inc. v. Wash. Dairy Holdings LLC*, 2019 WL13117758, at *3–4 (E.D. Wash. Oct. 24, 2019).

[50] *Id.* at *4.

[51] *Id.*

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the court deny Madison Ranches' request for judicial notice of documents containing "irrigation return flow" definitions (Madison Ranches's Exhibits 1–2) and Threemile's CAFO permit documents (Threemile's Exhibits 2–7). For the convenience of the Court, Plaintiffs have concurrently filed versions of Threemile's and Madison Ranches's motion to dismiss that are redacted to exclude references to the exhibits for which Plaintiffs oppose judicial notice.


Dated: this 2nd day of August, 2024          HAGENS BERMAN SOBOL SHAPIRO LLP

By:   */s/ Steve W. Berman*
        Steve W. Berman (*pro hac vice*)
Meredith S. Simons (*pro hac vice*)
steve@hbsslaw.com
merediths@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98134
(206) 623-7292

Abigail D. Pershing (*pro hac vice*)
abigailp@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO, LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
(213) 330-7150

John Heenan (*pro hac vice*)
john@lawmontana.com
HEENAN & COOK, PLLC
1631 Zimmerman Trail
Billings, MT, 59102
(406) 839-9091

Michael A. Bliven (OR Bar No. 942510)
mike@blivenlawfirm.com
BLIVEN LAW FIRM, PC
704 S. Main
Kalispell, MT 59901
(406) 755-6828

Robert F. Dwyer, III (OR Bar No. 984197)
rdwyer@blivenlawfirm.com
BLIVEN LAW FIRM, PC
202 North Main Street, Suite 1
Boardman, OR 97818
(406) 75-6828

*Attorneys for Plaintiffs and the Proposed Class*