UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| MICHAEL PEARSON, JAMES SUTER, SILVIA SUTER, and JEANNIE STRANGE, on behalf of themselves and all others similarly situated,<br><br>                      Plaintiffs,<br><br>  v.<br><br>PORT OF MORROW, LAMB WESTON HOLDINGS, INC., MADISON RANCHES, INC., THREEMILE CANYON FARMS, LLC, BEEF NORTHWEST FEEDERS, LLC, and JOHN DOES 1-10,<br><br>                      Defendants. | Case No.: 2:24-cv-00362-HL<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS BEEF NORTHWEST FEEDERS, LLC AND THREEMILE CANYON FARMS, LLC's JOINT SUPPLEMENTAL BRIEF REGARDING CAFO PERMITS** |

Plaintiffs Michael Pearson, James Suter, Silvia Suter, and Jeannie Strange ("Plaintiffs") hereby respond to the joint supplemental brief filed by Defendants Beef Northwest Feeders, LLC and Threemile Canyon Farms, LLC (together, "the CAFO Defendants") on November 8, 2024, ECF No. 94.

The central question concerning the CAFO Defendants is whether their discharges of high-nitrogen wastewater into groundwater are regulated by the Clean Water Act—and therefore excluded from the Resource Conservation and Recovery Act's ("RCRA") definition of "solid waste." In their Supplemental Brief, Defendants insist that they are required to obtain National Pollutant Discharge Elimination System ("NPDES") permits under the Clean Water Act. ECF No. 94 at 1–3. The implication is that their discharges to groundwater are subject to the Clean Water Act and therefore exempt from RCRA. But their arguments do nothing more than establish that CAFOs' discharges to *surface water* require NPDES permits, a fact Plaintiffs do not dispute. Plaintiffs' assertion that CAFOs are not required to obtain NPDES permits for discharges to *groundwater* is supported by the text of the Clean Water Act, Oregon regulations, and Oregon's CAFO NPDES General Permit itself. This confirms Plaintiffs' argument that the CAFO Defendants' discharges to groundwater are subject to RCRA, notwithstanding these Defendants' status as NPDES permittees. *See* ECF. No. 68 at 35-37.

A.  **The Clean Water Act Does Not Require NPDES Permits for Discharges to Groundwater.**

RCRA's definition of "solid waste" excludes "solid or dissolved materials in . . . industrial discharges which are point sources subject to permits under section 1342 of Title 33," the Clean Water Act's NPDES permit provision. 42 U.S.C.A. § 6903(27). The Clean Water Act prohibits "the discharge of any pollutant by any person" unless such a discharge is made in accordance with the terms of an NPDES permit. 33 U.S.C.A. §§ 1311(a), 1342(a).

The CAFO Defendants would like to end the analysis there. They argue that because they hold NPDES permits, *all* of their discharges—including the discharges to groundwater that form the basis of the Amended Complaint—are exempt from RCRA. *See* ECF No. 51 at 25; ECF No. 56 at 21. But "[d]efendants are not automatically exempt from RCRA liability simply by having an NPDES permit for certain discharges; '[t]hey must be *required* by the [CWA] to have a permit for the discharges *at issue*." *San Diego Coastkeeper v. Pick-Your-Part Auto Wrecking*, 2023 WL 4879832, at *15 (S.D. Cal. July 31, 2023) (quoting *Cmty. Ass'n for Restoration of Env. Inc. v. Wash. Dairy Holdings*, 2019 WL 13117758, at *7 (E.D. Wash. Oct. 24, 2019)) (second emphasis added). In other words, the fact that a CAFO has an NPDES permit covering its discharges to surface water does not mean that its discharges to groundwater are subject to the Clean Water Act. And they are not.

The Act specifically defines "discharge of a pollutant" to mean "any addition of any pollutant *to navigable waters* from any point source." 33 U.S.C.A. § 1362(12) (emphasis added). "Navigable waters" means "the waters of the United States." 33 U.S.C.A. § 1362(7). And "waters of the United States" means those waters that are "susceptible to use in interstate or foreign commerce," "[t]he territorial seas," "[i]nterstate waters," "[t]ributaries" of such waters, "[w]etlands" adjacent to such waters, or "[i]ntrastate lakes and ponds" that "are relatively permanent, standing or continuously flowing bodies of water with a continuous surface connection" to such waters. 40 C.F.R. § 120.2(a). Importantly, the term "waters of the United States" *does not include groundwater*. *See id.* Thus, the Clean Water Act does not require an NPDES permit for discharges to groundwater, and the CAFO Defendants' groundwater discharges are not exempt from RCRA's definition of solid waste. *See* 33 U.S.C.A. §§ 1311(a), 1342(a) 1362(7), (12).

The CAFO Defendants' arguments to the contrary are not persuasive. *First*, their argument that CAFOs are required to obtain NPDES permits only speaks to discharges to surface water. They assert that "coverage is mandatory for any CAFO that cannot guarantee zero discharge *to surface waters*." ECF No. 94 at 1 (emphasis added). They explain that a CAFO that ordinarily discharges only to groundwater might elect to be covered by an NPDES permit because it ensures compliance with the Clean Water Act in the event of an unexpected "discharge *to surface waters* . . . as a result of climatic events beyond their control." *See id.* at 3 (emphasis added). They argue that NPDES coverage is not voluntary because a CAFO that chose not to seek coverage under an NPDES permit would face "liability if and when otherwise properly designed and operated facilities result in a discharge *to surface waters* due to rain events exceeding design criteria." *Id.* (emphasis added). But an argument that discharges to surface water require NPDES permits does not establish that discharges to *groundwater* require NPDES permits.

The CAFO Defendants attempt to salvage their argument by asserting in a footnote that "waters of the United States" includes groundwater "when it is the functional equivalent of a direct discharge to surface water." ECF No. 94 at 2 n.1. They cite *County of Maui, Hawaii v. Hawaii Wildlife Fund*, 590 U.S. 165 (2020), but the *County of Maui* court did not redefine "waters of the United States." It held that the Clean Water Act requires a permit for discharges to groundwater when the addition of pollutants "through groundwater is the functional equivalent of a direct discharge from [a] point source into navigable waters." *Id.* at 169. As Plaintiffs explained at oral argument, determining whether a discharge to groundwater is the "functional equivalent of a direct discharge" to navigable waters requires an analysis of multiple fact-bound criteria, including:

> (1) transit time, (2) distance traveled, (3) the nature of the material through which the pollutant travels, (4) the extent to which the pollutant is diluted or chemically changed as it travels, (5) the amount of pollutant entering the navigable waters relative to the amount of the pollutant that leaves the point source, (6) the manner by or area in which the pollutant

enters the navigable waters, [and] (7) the degree to which the pollution (at that point) has maintained its specific identity.

*Id.* at 184–85. This type of fact-intensive inquiry is inappropriate for resolution on a motion to dismiss; *Maui* was decided on a motion for summary judgment. *Id.* at 172.

B.  **Oregon Law Does Not Require NPDES Permits for Discharges to Groundwater.**

Although Oregon requires CAFOs to obtain permits, it does not require NPDES permits specifically. CAFOs may obtain either an NPDES permit *or* a Water Pollution Control Facilities ("WPCF") permit. OAR 603-074-0014(2). The key difference between these permits is whether they cover discharges to navigable waters: an NPDES permit is required for anyone "discharg[ing] pollutants into navigable waters from a point source," OAR 340-045-0015(2), while a WPCF permit covers waste disposal systems "with no discharge to navigable waters." OAR 340-045-0010(32). Thus, if a CAFO discharged to groundwater only and not to navigable waters, it could obtain coverage under a WPCF permit. OAR 603-074-0014(2).

Relatedly, the text of the CAFO NPDES General Permit states that "[a]ny person who owns or operates a confined animal feeding operation (CAFO) that discharges to *surface water* of the state is required to obtain NPDES permit coverage," while "[a]ny person who owns or operates a CAFO that does not discharge to *surface water* of the state may *voluntarily elect* to be covered under this permit." ECF No. 57-2 at 6 (emphasis added); *see also id.* Table 1 (listing "type[s] of CAFO[s] discharging to *surface water* of the state" that "require coverage by NPDES General Permit #01") (emphasis added). Thus, the language of the General Permit itself indicates that NPDES permit coverage for groundwater discharges is voluntary under Oregon law.

C.  **The Court Should Reject the CAFO Defendants' Attempt to Introduce Facts Outside the Complaint.**

The CAFO Defendants use their Supplemental Brief to insert extraneous facts into the proceedings, asserting that "BNW and Threemile both operate in strict compliance with the CAFO

General Permit" and "[t]he absence of an enforcement action . . . means absence of permit violations." ECF No. 94 at 4. These statements are irrelevant to whether NPDES permits are required for CAFOs' discharges to groundwater. But setting that aside, the former statement involves facts outside the complaint and is improper on a motion to dismiss,[1] and the latter is simply not true. The absence of an enforcement action means that there is no enforcement action. That could be because there are no permit violations; it could also be because the agency has failed to enforce the permit.[2] Plaintiffs respectfully request that the Court disregard these irrelevant and improper statements.

Dated November 13, 2024

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ Steve Berman
Steve W. Berman (*pro hac vice*)
Meredith S. Simons (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98134
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
merediths@hbsslaw.com

Abigail D. Pershing (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
abigailp@hbsslaw.com

---

[1] It is also contradicted by publicly available sources that describe Threemile as a "chronic offender" that has repeatedly violated its CAFO permit. Kathy Hessler, *et al*, LEWIS & CLARK LAW SCHOOL, Report on the Oregon Department of Agriculture's Enforcement of the Clean Water Act's NPDES Program Related to CAFOs, at 55 (2012), https://law.lclark.edu/live/files/10807-2012-oda-clinic-report.

[2] In fact, a 2012 report on the Oregon Department of Agriculture's enforcement of CAFO NPDES permits found that ODA "has too few inspectors for the number of farms it monitors," has "fail[ed] to implement various inspection and monitoring requirements," and rarely brings enforcement actions against CAFOs, even for repeated permit violations. *Id.* at 31, 33–34, 45–50.

Michael A. Bliven, Oregon State Bar No. 942510
BLIVEN LAW FIRM, PC
704 S. Main
Kalispell, MT 59901
Telephone: (406) 755-6828
Facsimile:  (406) 755-6829
mike@blivenlawfirm.com

Robert F. Dwyer, III, Oregon State Bar No. 984197
BLIVEN LAW FIRM, PC
202 North Main Street, Suite 1
Boardman OR 97818
Telephone: (406) 755-6828
Facsimile:  (406) 755-6829
rdwyer@blivenlawfirm.com

John Heenan (*pro hac vice*)
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Telephone: (406) 839-9091
Facsimile:  (406) 839-9092
john@lawmontana.com

*Attorneys for Plaintiffs and the Proposed Class*