**KEVIN H. KONO**, OSB #023528
kevinkono@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon 97205-2771
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

**DAVID UBALDI**, *Admitted Pro Hac Vice*
davidubaldi@dwt.com
**M. SCOTT BROADWELL**, *Admitted Pro Hac Vice*
scottbroadwell@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
929 108th Avenue NE
Bellevue, Washington 98004
Telephone:  (425) 646-6100
Facsimile:  (425) 646-6199

Attorneys for Defendant
Beef Northwest Feeders, LLC

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| **MICHAEL PEARSON, JAMES SUTER, and SILVIA SUTER,** and **JEANNIE STRANGE,** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**PORT OF MORROW, LAMB WESTON HOLDINGS, INC., MADISON RANCHES, INC., THREEMILE CANYON FARMS, LLC, BEEF NORTHWEST FEEDERS, LLC,** and **JOHN DOES 1-10,**<br><br>Defendants. | Case No. 2:24-CV-00362-HL<br><br>**DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION** |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 3

    A.    Overview .................................................................................................. 4

    B.    The LUBGWMA Committee has spent decades investigating and determining solutions to groundwater nitrate impacts. ................................................. 6

    C.    EPA has taken an active role in the State's approach to LUBGWMA nitrate content. ................................................................................................... 7

    D.    State and local governments continue to take enforcement actions and fund mitigation efforts to address nitrates. ..................................................... 9

    E.    2024 Oregon Nitrate Reduction Plan ................................................... 11

III.  STANDARD OF REVIEW ............................................................................ 13

    A.    Standard of review of findings and recommendations. ........................ 13

    B.    Standard applicable to a motion for abstention ................................... 14

    C.    Standard Applicable to Motion to Dismiss for Failure to State a Claim. ............ 14

IV.   OBJECTIONS AND ARGUMENT ................................................................ 15

    A.    The Court should apply the primary jurisdiction doctrine and decline to exercise jurisdiction over Plaintiffs' claims because they are best left to the expert agencies already addressing the underlying issues. ........................................................ 15

        1.    There is no dispute that there is a need to resolve issues related to nitrates in groundwater. ........................................................................ 16

        2.    The environmental issues underlying Plaintiffs' claims have been placed within jurisdiction of federal and state administrative bodies. ................ 16

        3.    RCRA and the CWA subject CAFOs to a comprehensive regulatory scheme. ......................................................................................... 18

        4.    Regional scale groundwater contamination with a wide variety of contributors and challenging technical solutions requires expertise and uniformity in administration best left to the expert agencies already addressing the problems. ........................................................... 19

Page ii – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

4934-7024-3616v.5 0051834-000036

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

5.     The agencies and State are the only authorities that can provide an
efficient resolution. .................................................................................. 23

B.     Plaintiffs have failed to state claims for which relief may be granted. ................. 24

1.     Plaintiffs have failed to allege facts required to support a claim under
RCRA's citizen suit provision. ................................................................. 24

a.     Taking Plaintiffs' allegations as true, they have failed to show an
imminent and substantial endangerment to health or the
environment. ................................................................................. 24

b.     As a matter of law, BNW has not disposed of a solid waste. ....... 27

(1)     The F&R improperly rewrites the statutory exception from
the "solid waste" definition.................................................. 27

(2)     Plaintiffs' allegations, taken as true, show that BNW's
alleged discharges are the functional equivalent of
discharges to surface waters.............................................. 28

c.     Under the reasoning applied by the F&R, Plaintiffs' RCRA claim
should be dismissed against BNW for failure to allege BNW
*discarded* solid waste. ................................................................. 29

2.     Plaintiffs' allegations regarding CAFOs generally are insufficient to
support their numerous tort claims as against BNW. ............................. 30

a.     The FAC fails to state a claim for negligence.............................. 30

b.     Plaintiffs have alleged no facts against BNW to support a trespass
claim............................................................................................. 31

c.     Plaintiffs allege no facts against BNW to support a nuisance claim.
...................................................................................................... 32

V.     CONCLUSION........................................................................................................ 32

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................................................14

*Autobidmaster, LLC v. Alpine Auto Gallery, LLC,*
    2015 WL 2381611 (D. Or. May 19, 2015) ...........................................................................14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .............................................................................................................14

*Cal. Sportfishing Prot. All. v. City of W. Sacramento,*
    905 F. Supp. 792 (E.D. Cal. 1995) ...................................................................................2, 21

*Coll. Park Holdings, LLC v. Racetrac Petroleum, Inc.,*
    239 F. Supp. 2d 1322 (N.D. Ga. 2002) ................................................................................21

*Craig Lyle Ltd. P'ship v. Land O'Lakes, Inc.,*
    877 F. Supp. 476 (D. Minn. 1995) .......................................................................................21

*Davies v. Nat'l Coop. Refinery Ass'n,*
    963 F. Supp. 990 (D. Kan. 1997) ...............................................................17, 24, 25, 26

*Eagle Star Rock Prods., LLC v. PCC Structurals, Inc.,*
    2024 WL 4751519 (D. Or. Nov. 11, 2024) ....................................................................20, 21

*Flam v. Flam,*
    788 F.3d 1043 (9th Cir. 2015) .............................................................................................13

*Friends of Santa Fe Cnty. v. LAC Minerals, Inc.,*
    892 F. Supp. 1333 (D.N.M. 1995) ..................................................................................16, 19

*Inland Steel Co. v. E.P.A.,*
    901 F.2d 1419 (7th Cir. 1990) .............................................................................................27

*Interfaith Cmty. Org. v. PPG Indus., Inc.,*
    702 F. Supp. 2d 295 (D.N.J. 2010) ......................................................................................21

*Meghrig v. KFC W., Inc,*
    516 U.S. 479 (1996) .............................................................................................................24

*Price v. U.S. Navy,*
    39 F.3d 1011 (9th Cir. 1994) .........................................................................................24, 26

*Rehab. Support Servs., Inc. v. Town of Esopus, N. Y.*,
    226 F. Supp. 3d 113 (N.D.N.Y. 2016) ........................................................................... 14

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ............................................................................... 14, 15

*River Vill. W. LLC v. Peoples Gas Light & Coke Co.*,
    618 F. Supp. 2d 847 (N.D. Ill. 2008) ......................................................................... 16

*Savage v. Glendale Union High Sch.*,
    343 F.3d 1036 (9th Cir. 2003) ...................................................................................... 14

*Shaw v. Hawn*,
    56 F.3d 1128 (9th Cir. 1995) ....................................................................................... 13

*U.S. v. Gen. Dynamics Corp.*,
    828 F.2d 1356 (9th Cir. 1987) ..................................................................................... 15

*U.S. v. W. Pac. R.R. Co.*,
    352 U.S. 59 (1956) ........................................................................................................ 15

*United States v. Reyna-Tapia*,
    328 F.3d 1114 (9th Cir. 2003) (en banc) .................................................................. 13

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ..................................................................................... 14

*Wilson v. Amoco Corp.*,
    989 F.Supp. 1159 (D. Wyo. 1998) ............................................................................... 21

**State Cases**

*Laubach v. Industrial Indem. Co.*,
    286 Or. 217 (1979) ........................................................................................................ 32

*Martin v. Reynolds Metals Co.*,
    221 Or. 86 (1959) .......................................................................................................... 31

*Stroda v. State, By & Through Highway Comm'n*,
    22 Or. App. 403 (1975) ................................................................................................. 32

**Federal Statutes**

40 CFR § 30.16 (RCRA) ................................................................................................ *passim*

28 U.S.C. § 636(b)(1)(C) ........................................................................................... 13, 14

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main ᐧ (503) 778-5299 fax

33 U.S.C. § 1251 (Clean Water Act) ................................................................... *passim*

33 U.S.C. § 1342 ....................................................................................................27

33 U.S.C. § 1362(14) .............................................................................................27

42 U.S.C. § 300i .......................................................................................................7

42 U.S.C. § 6903(27) .............................................................................................27

42 U.S.C. § 6924(a) ...............................................................................................16

42 U.S.C. § 6928(a)(1) ..........................................................................................16

42 U.S.C. § 6972(b)(2)(C) .....................................................................................17

88 Stat. 1660 (SDWA) .......................................................................................4, 7

**State Statutes**

ORS 468B.150-468B.190 .......................................................................................6

ORS 468B.180 .........................................................................................................3

ORS 468B.184 .........................................................................................................4

**Rules**

Fed. R. Civ. P. 11 ....................................................................................................4

Fed. R. Civ. P. 12(b)(1) ........................................................................................14

Fed. R. Civ. P. 12(b)(6) ....................................................................................3, 14

Fed. R. Civ. P. 72(b)(3) ..................................................................................13, 14

Fed. R. Evid. 201(c)(2) .........................................................................................13

**Regulations**

OAR 340-012-0026(4) .............................................................................................9

4934-7024-3616v.5 0051834-000036

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon 97205-2771
(503) 241-2300 main · (503) 778-5299 fax

## MEMORANDUM OF LAW

Defendant Beef Northwest Feeders, LLC ("BNW") respectfully objects to Magistrate Judge Hallman's February 24, 2025 Findings and Recommendation ("F&R"). The F&R reached several of its recommendations in error, as set forth below. In addition, BNW joins with and incorporates by this reference the objections filed by the other defendants, Port of Morrow and Threemile Canyon Farms, LLC, Lamb Weston Holdings, Inc., and Madison Ranches, Inc.

## I.    INTRODUCTION

Plaintiffs have stated that they do not object to the F&R, and, to the extent that the Court does not dismiss or stay the entire case under the primary jurisdiction doctrine, BNW does not object to the F&R's recommendation to dismiss Plaintiffs' negligence per se claim, their Resource Conservation and Recovery Act ("RCRA") claim as to the "Defendant Farms," and the public nuisance claim as to Plaintiff Strange.[1] BNW does respectfully object to the rest of the F&R.

The Court should consider how its involvement might hamper the State's efforts to address a region-wide nitrate issue, decline to adopt the F&R, and instead enter an order dismissing or staying proceedings pursuant to the primary jurisdiction doctrine. Plaintiffs' First Amended Complaint ("FAC") seeks to involve the Court in a complex environmental remediation effort that requires region-wide collaboration and investment to address nitrate problems effectively while safeguarding industry, employment, and food supply chains that extend well beyond the State's borders. Yet this Court can only grant relief as to the named parties, a limited set of only *five* of innumerable alleged contributors to nitrate concentrations in groundwater across a vast geographic area with a diverse array of sources. The Court does not have jurisdiction over all potential sources and accordingly cannot fashion effective relief.

---

[1] BNW also does not object to the F&R's recommendation to grant Defendants' requests for judicial notice, and notes that Plaintiffs' did not oppose BNW's request for judicial notice.

In contrast, the expert agencies already involved have jurisdiction over *all* potential sources and are the correct (and only) venue that can address the issues. Plaintiffs have not cited to a single case applying RCRA to a geographic area spanning counties with an innumerable number of potential contributors, and BNW is unaware of any such case, likely because RCRA is not the correct vehicle for addressing contamination on this scale. In the alternative, if the Court does not decline to exercise jurisdiction under the primary jurisdiction doctrine, it should dismiss Plaintiffs' claims under RCRA and various tort theories for failure to state a claim.

Specifically:

1. The F&R's analysis of the primary jurisdiction doctrine renders the doctrine moot. Under the F&R, the bare existence of RCRA's citizen suit provision spelling out when a court does and does not have actual jurisdiction strongly weighs against a court ever applying the primary jurisdiction doctrine, and the F&R effectively limits the primary jurisdiction doctrine to circumstances where there can be no citizen suit in the first place. Under the F&R, primary jurisdiction applies only if the agencies invoke the jurisdictional bar under RCRA's citizen suit provision. In that instance, however, the Court would not have jurisdiction anyway because the Plaintiffs could not have filed their RCRA claims. By limiting the primary jurisdiction doctrine to the statutory exceptions to the ability to bring a citizen suit, the F&R ignores the fact that the primary jurisdiction doctrine only ever applies where the courts and agencies have concurrent jurisdiction. Further, the F&R sidesteps the significant and unique challenges of addressing claims arising from a regional-scale groundwater issue with a wide range of potential contributors, the majority of whom are not a party to this action and over whom the Court does not have jurisdiction.

2. The F&R incorrectly determines that Plaintiffs had pleaded an imminent and substantial endangerment (as required to state a claim under RCRA) where any alleged harm has already been mitigated.

Page 2 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon 97205-2771
(503) 241-2300 main · (503) 778-5299 fax

4934-7024-3616v.5 0051834-000036

3.      The F&R incorrectly construes the statutory exemption applicable to Concentrated Animal Feeding Operations ("CAFOs") subject to a National Pollutant Discharge Elimination System ("NPDES") permit.

4.      The F&R concludes that material is not discarded within the meaning of RCRA if any leakage or discharge was natural and expected, but in denying the motion to dismiss as to BNW, the F&R ignores that Plaintiffs allege CAFO "lagoons are actually *designed* to leak." FAC ¶ 67.  Taking Plaintiffs' allegations as true and applying the F&R's standard, the Court should dismiss Plaintiffs' RCRA claim against BNW for failure to allege an actionable discharge or discarding of solid waste.

5.      The F&R improperly relies on region-wide groundwater contamination as a sufficient allegation that BNW's alleged conduct (merely operating a CAFO) caused actual harm to these specific Plaintiffs, where the FAC does not and cannot allege any connection between any individual Plaintiff and BNW's alleged contribution of nitrates.

## II.      FACTUAL BACKGROUND

Plaintiffs' FAC arises from nitrates in groundwater within the Lower Umatilla Basin Groundwater Management Area ("LUBGWMA").  Taking the FAC's allegations as true for purposes of the Rule 12(b)(6) motion (as supplemented by judicially noticeable documents and documents the FAC incorporates by reference), groundwater within the Lower Umatilla Basin has contained elevated nitrate concentrations for decades.  FAC ¶¶ 46-47.  In response to the observed nitrate concentrations, the Oregon Department of Environmental Quality ("DEQ") designated the LUBGWMA in 1990.  ORS 468B.180; *see generally* LUBGWMA Committee, History:  Lower Umatilla Basin Groundwater Management Area, *available at* https://lubgwma.org/home (last accessed Mar. 13, 2025).  The LUBGWMA was established, as required by Oregon statute, to allow for the identification and implementation of practices to reduce nitrate loading and reduce groundwater nitrate concentrations below 7 mg/L.  *Id*.; FAC ¶ 48.  To accomplish this, the DEQ formed the LUBGWMA Committee, which represents a

Page 3 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

4934-7024-3616v.5 0051834-000036

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

broad range of interests within the basin and is composed of local residents, industry representatives, and governments. ORS 468B.184 requires DEQ to designate a lead agency—in this case the Oregon Department of Agriculture ("ODA")—and DEQ has recommended involvement by several additional agencies, including Morrow and Umatilla county and city planning agencies, DEQ, Oregon Health Authority ("OHA"), Oregon Water Resources Department ("OWRD"), and Oregon State University's ("OSU") agricultural research center. Umatilla and Morrow County Soil and Water Conservation Districts ("SWCDs") are also involved.[2]

BNW is a CAFO operating within the LUBGWMA. FAC ¶ 38; Figure 2. BNW operates under the CAFO General Permit issued by ODA. *Id.* ¶ 38. Although the F&R construe the FAC as alleging BNW applies animal waste to agricultural land as fertilizer, F&R at 51 (citing FAC ¶ 67), Plaintiffs do not actually make that allegation, nor could they consistent with Rule 11. The cited paragraph says only that "CAFOs typically" apply animal waste to land as fertilizer; it does not allege that BNW does so. FAC ¶ 67. Both the groundwater in the LUBGWMA and BNW's CAFO operations are subject to regulation by a diverse array of agencies, and Plaintiffs' FAC asks this Court to insert itself into decades of ongoing regulatory action and efforts by agencies with expertise to address complicated, technical groundwater and policy issues covering a huge geographical area.

### A.     Overview

A web of federal and state laws and agencies govern CAFOs and the LUBGWMA, with the Environmental Protection Agency ("EPA") administering the Federal Clean Water Act ("CWA") and Safe Drinking Water Act and delegating authority to the State under both statutes.

---

[2] DEQ, Second Lower Umatilla Basin Groundwater Management Area Local Action Plan ("LAP"), at 1 (Oct. 28, 2020), *available at* https://lubgwma.org/wp-content/uploads/2024/11/6de06-second-lubgwma-action-plan_final.pdf (last accessed Mar. 14, 2025).

Page 4 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

4934-7024-3616v.5 0051834-000036

Figure 1 immediately below presents a graphical overview of the overlapping regulatory authorities.



Figure 1

Page 5 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND
RECOMMENDATION
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax
4934-7024-3616v.5 0051834-000036

**B.** **The LUBGWMA Committee has spent decades investigating and determining solutions to groundwater nitrate impacts.**

Oregon Revised Statute 468B.180 requires DEQ to declare a Groundwater Management Area ("GWMA") when DEQ groundwater assessments reveal area-wide contamination problems at consistently high levels.  DEQ created the LUBGWMA in 1990 in response to elevated nitrates in groundwater samples.  The LUBGWMA consists of the northern portions of Morrow and Umatilla counties in the Umatilla basin.  DEQ established the LUBGWMA Committee in 1996 under the Oregon Groundwater Quality Protection Act of 1989, ORS 468B.150 to 468B.190.

The Committee is comprised of ten membership categories representing Morrow County; Umatilla County; city government; tribal government; science and research; industry and business; irrigated agriculture; livestock/dairy/CAFO; environmental non-profit organizations; and the general public.  One person from each of the ten categories serves as the primary voting member with the exception of the general public, which has two voting members.

The most recent LUBGWMA Local Action Plan ("LAP") was published on October 28, 2020.[3]  The purpose of the 2020 LAP was to identify and encourage voluntary action to reduce groundwater nitrate concentrations.  Specifically relevant to BNW, the LUBGWMA LAP set three goals for CAFOs operating within the LUBGWMA:

1.    Collect, contain, treat and/or store manure and process water at CAFOs in a manner that is protective of groundwater.

2.    Beneficially utilize nutrients at CAFOs and prevent leaching of nutrients to groundwater.

3.    Keep current with CAFO Best Management Practices and provide CAFO education outreach.

LAP at 63–65, § 3.4.3.

---

[3] LAP at 2, §§ 1.1.1 and 1.1.2, *available at* https://lubgwma.org/wp-content/uploads/2024/11/6de06-second-lubgwma-action-plan_final.pdf (last accessed Mar. 14, 2025).

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon 97205-2771
(503) 241-2300 main · (503) 778-5299 fax

**C.      EPA has taken an active role in the State's approach to LUBGWMA nitrate content.**

In 2020, nine organizations petitioned EPA requesting that EPA exercise its emergency authority under the Safe Drinking Water Act to address elevated nitrate concentrations in public water systems and groundwater in the Lower Umatilla Basin.[4]  EPA then met with Oregon regulatory agencies to ascertain the status of state involvement, understand the extent of impacted private wells, and determine the outreach that has been conducted.[5]  EPA acknowledged that each agency in the LUBWMWA was fulfilling its regulatory duties consistent with what was expected at the federal level:

> [E]ach of your agencies is participating in the LUBGWMA and have specific regulatory responsibilities for permitting, monitoring and ensuring compliance with regulatory standards, including Oregon Health Authority's role of overseeing regulated public water systems and implementing the Safe Drinking Water Act (SDWA).  Our review of the petition materials and discussions with your agencies indicate that OHA's oversight of public water systems under the SDWA is consistent with EPA's expectations of a state with primary enforcement authority.  We also recognize that the Oregon Departments of Agriculture and Environmental Quality have permits in place to prevent discharges of pollutants to waters of the state and to monitor discharges to groundwater from agricultural facilities, consistent with state law.  We also understand the GWMA is working on voluntary efforts to supplement those regulatory efforts, including the most recent development of the Second Action Plan.[6]

---

[4] Petition for Emergency Action Pursuant to the Safe Drinking Water Act § 1431, 42 U.S.C. § 300i, to Protect Citizens of the Lower Umatilla Basin in Oregon from Imminent and Substantial Endangerment to Public Health Caused by Nitrate Contamination of Public Water Systems and Underground Sources of Drinking Water (Jan. 16, 2020), *available at* https://www.epa.gov/system/files/documents/2022-12/Lower-Umatilla-Groundwater-SWDA-Petition-2020.pdf (last accessed Mar. 13, 2025).

[5] Letter from EPA to DEQ, ODA, and OHA (July 7, 2020), *available at* https://gaftp.epa.gov/region10/sites/lower-umatilla/03_EPA_ltr_to_OR_agencies.pdf (last accessed Mar. 13, 2025).

[6] *Id.* at 2.

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main • (503) 778-5299 fax

EPA requested additional information to understand the actions the State was taking or planned to take, and the state agencies responded on August 24, 2020.[7]  OHA followed up in 2021 with information about the number of LUBGWMA wells and provided EPA with a workplan to address exposures to nitrates in underground drinking water sources and private wells.[8]  EPA continues to work with the state agencies on the scope of the State response, stating its priority is to protect human health in the Lower Umatilla Basin by ensuring that all residents impacted or potentially impacted by nitrate contamination are (1) identified; (2) provided notice in all applicable languages regarding their potential exposure to elevated nitrate concentration and information regarding the associated health risks; and (3) provided the opportunity to obtain alternative drinking water until nitrate contamination in groundwater falls below 10 mg/L, the maximum contaminant level.[9]

The Oregon Legislature has since allocated $7 million to OHA and Oregon Department of Human Services to support outreach, education, water testing, drinking water treatment installation, and the LUBGWMA committee.  Morrow and Umatilla Counties entered an intergovernmental agreement to use EPA funds ($1.7M) to conduct a drinking water investigation to survey drinking water wells and determine which wells can be connected to

---

[7] Letter from DEQ, ODA, and OHA to EPA (Aug. 24, 2020), *available at* https://gaftp.epa.gov/region10/sites/lower-umatilla/04_OR_response_to_EPA_ltr.pdf (last accessed Mar. 14, 2025).

[8] Letter from OHA to EPA (Dec. 22, 2021), *available at* https://gaftp.epa.gov/region10/sites/lower-umatilla/06_OR_workplan_cover_ltr.pdf (last accessed Mar. 14, 2025).

[9] Letter from EPA to OHA, DEW, and ODA (June 6, 2022), *available at* https://gaftp.epa.gov/region10/sites/lower-umatilla/08_EPA_response_to_OR_workplan.pdf (last accessed Mar. 14, 2025).

Page 8 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

4934-7024-3616v.5 0051834-000036

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

public utilities.  A supplemental environmental project from the Port of Morrow has provided funding to OHA ($1.9M) for the public health response.[10]

### D.    State and local governments continue to take enforcement actions and fund mitigation efforts to address nitrates.

DEQ's enforcement policy goal is to protect public health and the environment through conference, conciliation, and persuasion to solicit compliance with environmental statutes and DEQ rules, permits, and orders.  If compliance is not attained following initial warning letters, pre-enforcement notification, or notice of permit violation, "DEQ [will subject] violators who do not comply … to increasing levels of enforcement until they come into compliance."  OAR 340-012-0026(4).  Towards that end, DEQ has been actively addressing LUBGWMA groundwater quality and has taken significant enforcement actions.  DEQ issued a Notice of Civil Penalty Assessment and Order ("Notice") on January 10, 2022 for wastewater disposal permit violations for land applying nitrogen in wastewater in amounts exceeding allowable limits and for failing to comply with monitoring requirements.[11]  DEQ issued an Amended Notice on June 17, 2022 assessing a total penalty of $2,100,351.[12]  And in a September 27, 2022 Notice of Civil Penalty and Order, DEQ issued a $127,800 fine for exceeding wastewater disposal nitrogen limitations.[13]

---

[10] *See* https://www.oregon.gov/gov/policies/Documents/LUBGWMA - EJC Council - Informational Materials.pdf (last accessed Mar. 14, 2025).

[11] DEQ Notice of Civil Penalty Assessment & Order, Case No. WQ/I-ER-2021-106 (Jan. 10, 2022), *available at* https://www.oregon.gov/deq/nr/011022morrow.pdf (last accessed Mar. 14, 2025).

[12] DEQ Am. Notice of Civil Penalty Assessment & Order, Case No. WQ/I-ER-2021-106 (June 17, 2022), *available at* https://www.oregon.gov/deq/nr/061622PortofMorrow.pdf (last accessed Mar. 14, 2025).

[13] DEQ Notice of Civil Penalty Assessment & Order, Case No. WQ/I-ER-2021-190 (Sept. 27, 2022), *available at* https://www.oregon.gov/deq/nr/092022LambWestonInc.pdf (last accessed Mar. 14, 2025).

Page 9 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION
4934-7024-3616v.5 0051834-000036
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

At the county level, Morrow County declared a 2022 local state of emergency after private well testing showed high levels of nitrates.[14]  The declaration allows Morrow County Emergency Management to better coordinate response activities, including providing outreach and alternative water sources.  Declaring a local state of emergency sets the stage for requesting state and/or federal assistance to augment local resources and capabilities.  Morrow County received a $1.7 million grant from EPA to conduct a drinking water investigation.[15]  During the March 13, 2024 joint meeting between Morrow and Umatilla County Commissioners, the counties entered into an intergovernmental agreement to investigate nitrates in the LUBGWMA.[16]  Using a portion of the EPA funding, Umatilla and Morrow Counties jointly commissioned a study to determine the extent of the nitrates and to identify areas where it may be feasible to connect to a public water system.[17]

At the state level, Oregon continues to direct resources towards addressing issues with LUBGWMA groundwater quality.  The Governor's office has engaged EPA, state agencies, and the LUBGWMA Committee to provide assistance to private water well owners with nitrate

---

[14] 2023 State Actions To-Date Lower Umatilla Basin Groundwater Management Area (LUBGWMA) at 2, *available at* https://www.oregon.gov/gov/policies/Documents/LUBGWMA%20-%20EJC%20Council%20-%20Informational%20Materials.pdf (last accessed Mar. 14, 2025).

[15] Travis Snell/Hermiston Herald, *Morrow, Umatilla counties get $1.7M for nitrate contamination solutions*, Northeast Oregon Now (Oct. 13, 2023), *available at* https://northeastoregonnow.com/counties-get-1-7-million-for-nitrate-contamination-solutions/ (last accessed Mar. 14, 2025).

[16] Joint Meeting of the Umatilla Cnty. Bd. of Comm'rs & Morrow Cnty. Bd. of Comm'rs (Mar. 13, 2024), *available at* https://morrowcoor.portal.civicclerk.com/event/1054/files/agenda/2290 (last accessed Mar. 15, 2025).

[17] Intergovernmental Agreement Morrow Cnty. & Umatilla Cnty. Drinking Water Investigation, *available at* https://morrowcoor.portal.civicclerk.com/event/1054/files/agenda/2287 (last accessed Mar. 14, 2025).

Page 10 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION
4934-7024-3616v.5 0051834-000036
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

contamination.[18]  The Legislature allocated $3 million to OHA through June 2025 to support outreach, education, water testing, and drinking water treatment installation.  The Oregon Department of Human Services received $4 million in legislative funding for water provisioning statewide in response to drought condition and for LUBGWMA Committee support.  The Port of Morrow has provided $1.9 million to OHA for a supplemental environmental project to address wastewater violations and to assist the public health response between December 2023 and June 2026.[19]

     **E.**     **2024 Oregon Nitrate Reduction Plan**

Most recently, the Governor, DEQ, ODA, OWR, and OHA released their jointly published Oregon Nitrate Reduction Plan for the Lower Umatilla Basin Groundwater Management Area ("Nitrate Reduction Plan").[20]  The Nitrate Reduction Plan illustrates the complexity of the issues Plaintiffs ask the Court to solve (with only five defendants before it) and further shows that the State, in partnership with EPA and others, is working on a solution.

The Nitrate Reduction Plan describes "an unprecedented collaborative effort that spans four state agencies working in cooperation with the U.S. Environmental Protection Agency (EPA), the Confederated Tribes of the Umatilla Indian Reservation (CTUIR), Morrow County, Umatilla County, city governments, businesses, residents and community groups."[21]  The Nitrate Reduction Plan includes "a plan to ensure that all residents in the LUBGWMA are aware of and

---

[18] 2023 State Actions to Date Lower Umatilla Basin Groundwater Management Area (LUBGWMA), *available at* https://www.oregon.gov/gov/policies/Documents/LUBGWMA%20-%20EJC%20Council%20-%20Informational%20Materials.pdf (last accessed Mar. 14, 2025).

[19] *Id.*

[20] Oregon Nitrate Reduction Plan for the Lower Umatilla Basin Groundwater Management Area (Sept. 20, 2024) *available at* https://www.oregon.gov/deq/wq/Documents/GWP-OregonNitrateReductionPlan-2024.pdf (last accessed Mar. 14, 2025).

[21] *Id.* at 9, 21-24.

Page 11 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon 97205-2771
(503) 241-2300 main · (503) 778-5299 fax

4934-7024-3616v.5 0051834-000036

able to access immediate, free testing (and retesting) of their private drinking water wells and

subsequent water delivery or treatment installations."[22]  The plan further details work "in

collaboration to identify and implement key strategies to reduce groundwater nitrate

concentrations to less than 7 mg/L."[23]

     Moreover, the Nitrate Reduction Plan recognizes and discusses the extremely complex

nature of the problem that Plaintiffs assert "does not require special expertise."[24]  That

conclusion would be a surprise to the expert agencies, given that they view the nitrate

contamination as a complex issue requiring long-term efforts to control the pollution sources:

> [I]t is important to emphasize that this is a complex problem with
> no simple or quick solutions.  Nitrate contamination is a problem
> for rural communities across Oregon and the entire nation.  [....]
> Cleaning up the area's groundwater nitrate contamination will take
> decades.  The most effective and feasible way to clean up
> groundwater contamination of this scale is to control the sources of
> pollutants so that, over time, clean water cycles into the
> groundwater system, diluting and eventually replacing
> contaminated water.[25]

The Nitrate Reduction Plan details short-term, medium-term, and long-term action items and is

exactly the kind of multi-agency, multi-pronged approach needed to address a regional issue with

a wide range of contributors and an even wider range of interested parties.

     The Governor echoed this approach in a response to a public interest group that

complained about a recent executive order allowing certain waste water discharges to continue

over the winter.[26]  The Governor acknowledged that there is no single cure for the longstanding

---

[22] *Id.* at 9.

[23] *Id.*

[24] Pls.' Omnibus Opp'n to Defs.' Mots. to Dismiss Pls.' First Am. Compl. (Doc. 68 at 11).

[25] Nitrate Reduction Plan at 9.

[26] Letter from Tina Kotek, Governor to Oregon Rural Action (Feb 27, 2025).  A copy of the letter is attached as Exhibit A.  BNW requests that the Court take judicial notice of the letter as a

Page 12 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

4934-7024-3616v.5 0051834-000036

nitrate issues and that collective, long-term efforts, and collaboration with EPA are necessary to address them:

> We all know the most effective approach to managing widespread groundwater contamination, like in the LUBGWMA, is to control and reduce the sources of pollutants. That is why I directed state agencies to work closely with the Environmental Protection Agency on a Nitrate Reduction Plan that will begin to control and reduce nitrate contamination in the region. There is not a single cure to addressing the long-term contamination challenges that predate my administration, and it will take everyone working together over decades to accomplish this task.

*Id.* The Governor further recognized the difficult policy decisions involved in crafting a response that will require a "balance protecting thousands of jobs in the region, the national food supply, and domestic well users."[27] Meanwhile, the Plaintiffs are asking this Court to itself craft a technical solution—a task that the Governor and the experts believe will take decades to accomplish and involves complex policy considerations that are more appropriately left to the expert agencies to address.

## III.    STANDARD OF REVIEW

### A.    Standard of review of findings and recommendations.

When a party objects to any portion of a Magistrate Judge's report of findings and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *accord* Fed. R. Civ. P. 72(b)(3); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *Flam v. Flam*, 788 F.3d 1043, 1047 (9th Cir. 2015). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations

---

matter of public record. *Shaw v. Hawn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995); Fed. R. Evid. 201(c)(2).

[27] *Id.*

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

4934-7024-3616v.5 0051834-000036

made by the magistrate judge.  The judge may also … recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1)(C); *accord* Fed. R. Civ. P. 72(b)(3).

**B.      Standard applicable to a motion for abstention.**

A "motion to dismiss based on an abstention doctrine is ... considered as a motion made pursuant to Rule 12(b)(1)."  *Rehab. Support Servs., Inc. v. Town of Esopus, N. Y.*, 226 F. Supp. 3d 113, 125 (N.D.N.Y. 2016) (cleaned up).  In resolving a factual attack on jurisdiction, the Court may review evidence beyond the complaint without converting the motion into one for summary judgment.  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  The Court need not presume the truthfulness of the plaintiff's allegations.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  However, even if the Court considers BNW's arguments under the primary jurisdiction doctrines under a 12(b)(6) scope of review, the Court may still properly rely on and take judicial notice of court filings, official government records, and publicly recorded documents without converting the motion into one for summary judgment. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

**C.      Standard Applicable to Motion to Dismiss for Failure to State a Claim.**

Fed. R. Civ. P. 12(b)(6) exists to weed out undeserving complaints before parties engage in discovery, particularly in class actions likely to generate significant discovery costs.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).  Plaintiffs must allege facts sufficient to allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth.  *Id*. A "shotgun pleading" using the omnibus term "defendants" to group defendants together in a multiple-defendant case without identifying what the particular defendants did wrong is impermissible.  *Autobidmaster, LLC v. Alpine Auto Gallery, LLC*, 2015 WL 2381611, at *15 (D. Or. May 19, 2015).  On a Rule 12(b)(6) motion, the Court may take judicial notice of court filings, official government records, government websites, and publicly recorded documents

Page 14 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND
RECOMMENDATION
4934-7024-3616v.5 0051834-000036

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

without converting the motion into one for summary judgment. *Reyn's Pasta Bella, LLC*, 442

F.3d at 746 n.6.

## IV.    OBJECTIONS AND ARGUMENT

### A.    The Court should apply the primary jurisdiction doctrine and decline to exercise jurisdiction over Plaintiffs' claims because they are best left to the expert agencies already addressing the underlying issues.

The F&R wrongly recommends rejecting the primary jurisdiction doctrine based on an

incorrect interpretation and application of the doctrine that fails to account for the extraordinary

complexity and geographic scope of the nitrate issues in the LUBGWMA.  Under the primary

jurisdiction doctrine, a court abstains from hearing claims "whenever enforcement of the claim

requires the resolution of issues which, under a regulatory scheme, have been placed within the

special competence of an administrative body; in such a case the judicial process is suspended

pending referral of such issues to the administrative body for its views." *U.S. v. W. Pac. R.R.

Co.*, 352 U.S. 59, 63-64 (1956).  In determining whether to apply the primary jurisdiction

doctrine, the Ninth Circuit considers factors including:  "(1) the need to resolve an issue that

(2) has been placed by Congress within the jurisdiction of an administrative body having

regulatory authority (3) pursuant to a statute that subjects an industry or activity to a

comprehensive regulatory scheme that (4) requires expertise or uniformity in administration."

*U.S. v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987).  While recognizing that

RCRA grants the Court jurisdiction over citizen suits, these factors require the application of the

doctrine and support the Court declining to exercise jurisdiction here.  Doing so would recognize

the immense technical and policy challenges involved in addressing nitrates in the LUBGWMA

and account for the extreme inequity in expecting five named defendants to tackle a regional

issue with an innumerable number of potential contributors over which neither Defendants nor

this Court (since they are not parties) have authority.

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

1.     **There is no dispute that there is a need to resolve issues related to nitrates in groundwater.**

As the F&R notes, no "party disputes that there is [an] immediate and serious need to address nitrate contamination in [the] LUBGWMA." F&R at 21. As discussed below, BNW does dispute that there is an imminent and substantial endangerment that is actionable under RCRA, but there is no dispute that nitrates impact the LUBGWMA require a resolution.

2.     **The environmental issues underlying Plaintiffs' claims have been placed within jurisdiction of federal and state administrative bodies.**

The F&R incorrectly determines that this factor does not support application of the primary jurisdiction doctrine, concluding that because Plaintiffs can bring a citizen suit, the issues have not been placed with an administrative body with regulatory authority. F&R at 21-24. As a starting point, there can be no question that administration and enforcement of RCRA has been placed with EPA. 42 U.S.C. §§ 6924(a), 6928(a)(1). "[T]he EPA has specifically been charged with the responsibility to develop and enforce regulations to implement the environmental laws passed by Congress." *River Vill. W. LLC v. Peoples Gas Light & Coke Co.*, 618 F. Supp. 2d 847, 854-55 (N.D. Ill. 2008). And, as the F&R notes, EPA has authorized Oregon to implement parts of RCRA as EPA's delegee. F&R at 23.

This case presents exactly the type of concurrent agency and court jurisdiction where the primary jurisdiction is appropriate. "[P]rimary jurisdiction abstention is appropriate when the agency and the court entertaining Plaintiffs' claims have concurrent jurisdiction, and the claims are properly cognizable in federal court, but the court believes it prudent to decline to exercise its jurisdiction in favor of the agency's expertise." *Friends of Santa Fe Cnty. v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1349 (D.N.M. 1995). Yet despite recognizing federal and state agency jurisdiction, the F&R recommends retaining court jurisdiction because RCRA includes an "expansive" citizen suit provision that, according to the F&R, Congress intended to mandate a court's exercise of jurisdiction unless a statutory bar to a citizen suit exists. F&R at 24-25. Under the F&R, courts cannot apply primary jurisdiction unless agencies invoke the

Page 16 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION
4934-7024-3616v.5 0051834-000036
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

jurisdictional bar or a statutory exception to the citizen suit provision otherwise applies. F&R at 24 ("Where, as here, state agencies have not commenced any of the actions set forth under the diligent prosecution bar, 42 U.S.C. § 6972(b)(2)(C), invoking primary jurisdiction would thwart Congress's intent to provide affected citizens a forum to litigate alleged RCRA violations."). Applying this rationale, a court could only decline to exercise jurisdiction under the primary jurisdiction doctrine if the court did not have jurisdiction in the first place. That reasoning effectively nullifies the doctrine of primary jurisdiction in citizen suit scenarios because there can never be a situation under RCRA where the doctrine could be applied.

BNW recognizes that the Court "must be cautious about refusing to exercise jurisdiction … lest it frustrate Congress'[s] scheme for vindicating important federal interests." *Davies v. Nat'l Coop. Refinery Ass'n*, 963 F. Supp. 990, 997 (D. Kan. 1997). But the primary jurisdiction doctrine is designed for—and has been applied to—circumstances just like those here, where both the agencies and the courts have jurisdiction but, for prudential reasons, the courts should decline to exercise that jurisdiction. As the *Davies* court held in considering application of the primary jurisdiction doctrine to a RCRA citizen suit brought to address contaminated groundwater, "[a]lthough RCRA clearly contemplates federal judicial intervention in such matters, in this case the court's involvement would likely cause further delay of the investigation of the site and, in view of [the state agency's] extensive involvement, would result in a substantial duplication of effort." *Id.* at 997. The fact that RCRA includes a citizen suit provision that grants the Court jurisdiction is not a reason for rejecting application of the primary jurisdiction doctrine; that fact is the only reason the primary jurisdiction may even apply at all. The issues underlying the FAC have been placed by Congress within the jurisdiction of an administrative body having regulatory authority (EPA), and this factor supports application of the primary jurisdiction doctrine to dismiss or stay the case.

Page 17 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

4934-7024-3616v.5 0051834-000036

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon 97205-2771
(503) 241-2300 main · (503) 778-5299 fax

### 3. RCRA and the CWA subject CAFOs to a comprehensive regulatory scheme.

The F&R relies on this same erroneous reasoning regarding the existence of a citizen suit provision to conclude that there is no comprehensive regulatory scheme. F&R at 24-25. But there can be no question that EPA (and the state or Oregon by way of delegation) have been granted authority pursuant to a statute that subjects the Defendants' industries and activities to a comprehensive regulatory scheme. The State of Oregon entrusts primary oversight over environmental contamination to DEQ, and it is within that agency's mission to conduct the type of assessment and require the type of remedial activities that Plaintiffs demand. DEQ has the expertise and specialized knowledge to address these issues, and that expertise is precisely to what the primary jurisdiction doctrine is meant to defer. Not only does DEQ possess the requisite expertise, the agency has been investigating and administering the LUGWMA for decades, including issuing significant civil penalties totaling over $2 million. Efforts reach further than just DEQ, with continuing involvement by EPA, the LUBGWMA committee, county level investigations and mitigation efforts, and significant funding allocated by the Oregon Legislature to provide assistance to water users in the LUBGWMA. The technical and policy issues are complex and rightly have involved participants at all levels of government along with local communities and industries in the study and development of solutions.

Acknowledging the Nitrate Reduction Plan but not accounting for it or the full regulatory scheme in play, the F&R summarily concludes that "this factor does not warrant application of the primary jurisdiction doctrine because the statute establishes that citizen suits are part of its regulatory scheme." F&R at 25. The breadth of that statement leaves no room for primary jurisdiction *ever* to apply in a RCRA case, rendering the primary jurisdiction doctrine moot. If Congress had not provided a citizen suit provision, this Court would have no jurisdiction over Plaintiffs' claims to begin with, and there would be no reason to discuss the primary jurisdiction doctrine at all. As noted above, primary jurisdiction abstention is only relevant at all "when the agency and the court entertaining Plaintiffs' claims have concurrent jurisdiction." *Friends of*

Page 18 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION
4934-7024-3616v.5 0051834-000036

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon 97205-2771
(503) 241-2300 main · (503) 778-5299 fax

*Santa Fe Cnty.*, 892 F. Supp. at 1349.  Yet, under the F&R, the simple existence of the citizen

suit provision defeats primary jurisdiction, no matter the level of the agencies' involvement (up

to action that statutorily bars a citizen suit altogether).  The fact that RCRA provides the Court

jurisdiction cannot be used to bypass the primary jurisdiction doctrine, especially since the

claims are directed towards remediation of regional impacts to groundwater that are subject to

comprehensive regulation by EPA and the other myriad agencies involved in the Nitrate

Reduction Plan, enforcement actions, and other regulatory actions described above.[28]

> **4.      Regional scale groundwater contamination with a wide variety of contributors and challenging technical solutions requires expertise and uniformity in administration best left to the expert agencies already addressing the problems.**

In concluding that the "requires expertise or uniformity in administration" factor does not

support primary jurisdiction abstention, F&R at 25-27, the F&R improperly discounts the

complexity of the issues.  BNW does not question that courts are frequently required to consider

and rule on complex technical issues, including statutory and tort environmental claims, but the

circumstances of this case are unique.  The F&R fails to confront the literal impossibility of

engineering a remediation where innumerable sources of nitrate contamination fall outside the

Court's jurisdiction and would be uncontrolled.  The scope and complexity of the technical

issues and underlying policy concerns related to nitrate impacts in the LUBGWMA provide the

model case for application of the primary jurisdiction doctrine, and the issues Plaintiffs present

are best left to the expert agencies already involved to address.

The LUBGWMA covers a geographic area of approximately 550 square miles in Morrow

and Umatilla counties.[29]  The State of Oregon has documented nitrates within the LUBGWMA

since 1990, with the most common sources identified as agricultural fertilizer, manure, septic

---

[28] *See*, *e.g.*, Nitrate Reduction Plan at 21-25 (discussing the collaborative governance structure).

[29] Nitrate Reduction Plan at 12.

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

systems, and wastewater.[30]  Sources include an estimated 161,000 acres of agricultural

production; 13 permitted CAFOs; livestock grazing ranging from large, irrigated pastures used

for year-round or rotational grazing to small rural properties; 22,000 acres in the DEQ land

application wastewater irrigation program, including cities and other commercial parties who are

not parties to this litigation; and human waste, animal waste, and lawn or garden fertilizers from

rural residential properties.[31]  As the Nitrate Reduction Plan states "[t]he affected area and

volume of contaminated groundwater in the Lower Umatilla Basin alluvial aquifer *are extensive*

*and present considerable challenges when determining the viability of new [remediation]*

*technologies*."[32]

      The F&R cites and relies heavily on *Eagle Star Rock Prods., LLC v. PCC Structurals,*

*Inc.*, 2024 WL 4751519 (D. Or. Nov. 11, 2024), in deciding that Plaintiffs' case "ultimately

presents RCRA and state law claims that this Court is competent to resolve" and "that the

technical aspects of this action do not favor application of the primary jurisdiction doctrine."

F&R at 21, 23,25,26, 52 & 60.  In stark contrast to the complexities of the regional impacts

concerning the 550 acres at issue in the LUBGWMA, *Eagle Star* involved the disposal of

approximately 17-tons of soil allegedly contaminated with industrial chemicals (polychlorinated

biphenyls or PCBs) that had been used as clean fill in order to back-fill a sand and gravel mine

pit.  *Eagle Star*, 2024 WL 4751519, at *2.  The court in *Eagle Star* determined that complexity

of the modest area at issue in that case did not justify application of the primary jurisdiction

doctrine, recognizing that the claims only involved "the contamination of a limited number of

discrete properties" and were not "'esoteric or complex.'"  *Id.* at *5 (citation omitted).

In addition, unlike in this case where the agencies are deeply and actively involved in addressing

---

[30] *Id.*

[31] *Id.* at 32, 56, 58, 72

[32] *Id.* at 80 (emphasis added).

Page 20 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND
RECOMMENDATION
4934-7024-3616v.5 0051834-000036

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

the issues, in *Eagle Star*, the agencies had "largely resolved their roles in this matter," *id.*, when it came to the court, mitigating any concerns with uniform resolutions.

The approach in *Eagle Star* is consistent with other RCRA cases discussed in the motion briefing for the prospect that courts are *generally* well positioned to consider and rule on RCRA claims where the scope is limited:

- In *College Park Holdings*, the court considered claims brought by a landowner against a former owner and operator of a single fuel service station. *Coll. Park Holdings, LLC v. Racetrac Petroleum, Inc.*, 239 F. Supp. 2d 1322, 1324-25 (N.D. Ga. 2002).

- In *Interfaith Community Organization*, the court was faced with claims brought by environmental groups against the former operator of a single chrome production facility. *Interfaith Cmty. Org. v. PPG Indus., Inc.*, 702 F. Supp. 2d 295, 298 (D.N.J. 2010).

- In *California Sportfishing Protection Alliance*, the court considered claims against a city alleging violations of a wastewater treatment plant NPDES permit. *Cal. Sportfishing Prot. All. v. City of W. Sacramento*, 905 F. Supp. 792, 795 (E.D. Cal. 1995).

- In *Craig Lyle Ltd. Partnership*, the court considered a RCRA citizen suit brought by landowners arising from releases from a single underground storage tank. *Craig Lyle Ltd. P'ship v. Land O'Lakes, Inc.*, 877 F. Supp. 476, 478 (D. Minn. 1995).

- In *Wilson*, the court considered claims related to impacts in a wider geographic area that was still less than five percent of the area at issue here. *Wilson v. Amoco Corp.*, 989 F.Supp. 1159, 1163-69 (D. Wyo. 1998).

In each case, the issues were attributable to a single facility and did not implicate regional scale contamination arising from regional scale uses such as those present here.

In comparison and to illustrate the exponential difference in scale in this case, the Court need only look at the relief Plaintiffs request. Plaintiffs' RCRA claim asks this Court to interfere with and effectively override decades of effort by the expert agencies. Plaintiffs seek "an order … compelling Defendants to conduct any assessment and remedial action activities necessary to

Page 21 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION
4934-7024-3616v.5 0051834-000036

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

eliminate the endangerment, ***which at a minimum would include remediating the soil and***

***ground water*** to those cleanup standards described under Oregon law and regulations, and to

obtain a government certification from DEQ and any other government agency with jurisdiction

over the contaminants certifying that the assessment and remedial action satisfy applicable

standards." FAC ¶¶ 47, 48; Prayer for Relief ¶ B at 43-44 (emphasis added). An order granting

the requested relief would necessarily require BNW to implement an undefined remedial action

plan over a sizeable geographic area, much of which is not under its control. The State of

Oregon entrusts primary oversight over environmental contamination to DEQ, and it is within

that agency's mission to conduct the type of assessment and require the type of remedial

activities that Plaintiffs demand. DEQ has the expertise and specialized knowledge to address

these issues, and that expertise is precisely what the primary jurisdiction doctrine is meant to

defer to.

 Not only does DEQ possesses the requisite expertise, the agency has already been

investigating and administering the site for decades, including issuance of significant civil

penalties amounting to over $2 million. Efforts reach further than just DEQ, with continuing

involvement by EPA, the LUBGWMA committee, county level investigations and mitigation

efforts, and significant funding allocated by the Oregon Legislature to provide assistance to

water users in the LUBGWMA. The technical and policy issues are complex and rightly have

involved participants at all levels of government along with local communities and industries in

the study and development of solutions.

 Furthermore, the Plaintiffs are seeking relief from Defendants—remediation of

groundwater—that the Court cannot provide. The LUBGWMA has numerous and varied

sources of nitrate contamination. Agencies recognize that

> [c]leaning up the area's groundwater nitrate contamination will
> take decades. Once contamination gets into groundwater, it
> remains for a long time and is difficult to remove. The most
> effective and feasible approach to managing widespread

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon 97205-2771
(503) 241-2300 main · (503) 778-5299 fax

groundwater contamination, such as that in the LUBGWMA, is to control and reduce the sources of pollutants.[33]

Even if all Defendants—including BNW—were to collectively halt all operations and begin to treat groundwater (as requested by the Plaintiffs), there are still other innumerable other parties over whom the Court does not have jurisdiction—because they are not named or parties to this action—that can and will continue to contribute nitrates to the LUBGWMA. Imagine the Defendants sucking nitrates out of one side of the LUBGWMA while nonparties on the other side of the LUBGWMA are pumping nitrates back in. Remediating groundwater pursuant to a Court order would be futile because the Court lacks the jurisdiction to regulate all contributors in the basin, whereas the agencies do have jurisdiction over all necessary parties and are the right forum to address Plaintiffs' RCRA claims.

     **5.**     **The agencies and State are the only authorities that can provide an efficient resolution.**

The F&R recognizes "that efficiency is the deciding factor in determining whether to invoke primary jurisdiction." F&R at 20 (*citing Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015)). The F&R errs, however, in determining that the idea that there is "no current proceeding or enforcement action that would allow Plaintiffs to seek the relief that they could seek under RCRA in this proceeding," F&R at 27, milatates against applying primary jurisdiction. To the contrary, and as discussed above, the expert agencies and State are the only authorities that can provide the requested relief, namely remediation of the LUBGWMA. The Court has only five alleged contributors before it and cannot exercise authority over any other parties. And in order to reach any judicial resolution, the Court would need to insert itself into a decades long process. Litigation serves only to increase costs with no progress towards the ultimate goal of remediating nitrates in the LUBGWMA. The Court should decline to adopt the F&R's recommendation regarding the primary jurisdiction doctrine and should decline to exercise jurisdiction.

---

[33] Nitrate Reduction Plan at 27, §4.1.

4934-7024-3616v.5 0051834-000036    DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

B.    **Plaintiffs have failed to state claims for which relief may be granted.**

1.    **Plaintiffs have failed to allege facts required to support a claim under RCRA's citizen suit provision.**

a.    **Taking Plaintiffs' allegations as true, they have failed to show an imminent and substantial endangerment to health or the environment.**

In deciding that the FAC adequately pleaded an imminent and substantial endangerment, the F&R did not consider or address the fact that, taking the allegations as true, the Plaintiffs have alleged that any risk to health is already mitigated. "An endangerment can only be 'imminent' if it 'threatens to occur immediately.'" *Meghrig v. KFC W., Inc*, 516 U.S. 479, 485 (1996) (citation omitted). Even where contamination is not disputed, "endangerment must be substantial or serious, and there must be some necessity for the action" to obtain relief under RCRA. *Price v. U.S. Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994). Here, the Plaintiffs' alleged endangerment has been mitigated by Oregon's installation of filtration systems in about 40 homes and provision of bottled water to those homes where a filtration system is insufficient to bring nitrate concentrations within safe levels. FAC ¶ 53. Each Plaintiff has been relying on bottled water. *Id.* ¶¶ 18, 25, 31.

The F&R relies on the conclusion that RCRA "broadly permits relief that ameliorates present harms or obviates the risk of future imminent harms," and Plaintiffs' broad allegations as to the health impacts of nitrates to determine that Plaintiffs had adequately pleaded imminent and substantial endangerment, F&R at 54-55 (internal quotation marks and citation omitted), but ignores Plaintiffs' allegations showing that mitigation is already in place. As cited and discussed in the motion briefing but unaddressed by the F&R, *Davies v. Nat'l Coop. Refinery Ass'n* addresses a situation analogous to the facts alleged in this matter and is instructive. In that case, the court considered landowners' claims related to contaminated groundwater arising from refinery operations. 963 F. Supp. at 991. The landowners discovered contaminated groundwater in their wells as early as 1968. *Id.* at 992. The Kansas Department of Health and Environment was notified and began its involvement in 1984. *Id.* Although the court abstained under the

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

primary jurisdiction doctrine, in deciding to abstain the court "considered the nature of the threat posed by the contamination" and further determined that the claim did not establish facts of imminent and substantial endangerment. *Id.* at 999.

In *Davies*, the extent and health effects of contamination were not in dispute. The court accepted "as true the analysis of plaintiff's expert that the carcinogenic health risk to individuals exposed to benzene in water from plaintiffs' older and newer wells is, respectively, 650 and 219 times greater than acceptable." *Id.* at 999. The court nonetheless found that there was no imminent and substantial threat because the plaintiffs were aware of the danger and had already taken measures to prevent the risks:

> Although this clearly suggests that the resulting threat from exposure to this groundwater would be substantial, it does not establish or address the likelihood that any person will actually be exposed to it. Here, ***plaintiffs have been warned of the danger and are able to occupy the property without serious risk to their health by using an alternative water supply***.

*Id.* (emphasis added). As the court noted, the plaintiffs were able to occupy their property without a threat to their health. "The fact that they must use bottled water instead of groundwater is undoubtedly an inconvenience and an economic burden," but it is not the type of injury for which RCRA provides an adequate remedy. *Id.* Nor had plaintiffs established an imminent and substantial threat to the environment. While a portion of the aquifer had been contaminated for almost 20 years, the court noted that "by all accounts, [the aquifer] will remain contaminated for some time to come regardless of whether remedial action is undertaken immediately." *Id.* As such, "[t]he evidence [was] noticeably lacking … concerning the present or future threat of further damage to the environment from the existing soil and groundwater contamination." *Id.* Absent specific facts to show the likelihood that the pollution would immediately migrate to new areas, there was no substantial and imminent endangerment to the aquifer. *Id.* at 999-1000.

4934-7024-3616v.5 0051834-000036    DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

As in *Davies*, and as the F&R fails to account for, Plaintiffs here have failed to allege facts to show a threat of an imminent and substantial endangerment to health or the environment under RCRA. Taking Plaintiffs' allegations as true, nitrates were first observed in the area at least as of the mid-1990s. FAC ¶ 47. DEQ declared a Groundwater Management Area in 2001. *Id.* ¶ 48. As in *Davies*, Plaintiffs make allegations related to contamination that has been investigated for decades and for which there is no simple answer. Nevertheless, and without trying to minimize the issue, impacts to health are being mitigated. No change to health conditions is threatened to occur immediately. As Plaintiffs allege, each is relying on bottled water, which while inconvenient and a burden, is a harm that RCRA does not address. *Davies*, 963 F. Supp. at 999. State and local officials are encouraging residents to test their wells for nitrates, with state and federal funding approved for this purpose. FAC ¶ 51. And the State is providing filtration and bottled water to impacted homes. *Id.* ¶ 53.

Plaintiffs also have not alleged facts to show an imminent and substantial endangerment to the environment. There are known and widespread groundwater impacts leading to identification of a Groundwater Management Area, but Plaintiffs have not alleged facts to show that action by this Court is necessary to prevent impacts outside the Groundwater Management Area. The FAC thus fails to allege facts sufficient to establish an imminent and substantial endangerment to health or the environment or that there is "some necessity for the action." *Price*, 39 F.3d at 1019. The Court should dismiss Plaintiffs' RCRA claim.

Page 26 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

4934-7024-3616v.5 0051834-000036

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon 97205-2771
(503) 241-2300 main · (503) 778-5299 fax

           **b.**      **As a matter of law, BNW has not disposed of a solid waste.**

           **(1)**      **The F&R improperly rewrites the statutory exception from the "solid waste" definition.**

In recommending rejection of BNW's argument that its alleged discharges fall within the NPDES permit exclusion from "solid waste," the F&R and cases it relies on read language into RCRA that is simply not there.[34]  Under RCRA, "solid waste" means:

> [A]ny garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities, ***but does not include … industrial discharges which are point sources subject to permits under section 1342 of title 33***….

42 U.S.C. § 6903(27) (emphasis added).  By its plain terms, a solid waste excludes any industrial discharge that is a point source subject to permits under Section 1342 of title 33.  Section 1342 of title 33, in turn, is the section of the CWA establishing the NPDES permit system.  33 U.S.C. § 1342.  Despite this, the F&R reads "'industrial discharges which are point sources subject to permits under section 1342 of Title 33'" as limited to "discharges as to which the Clean Water Act requires permit coverage."  F&R at 40 (quoting 42 U.S.C. § 1342).  That is not what the definition of "solid waste" says, and this Court cannot rewrite the statutory definition.

The CWA NPDES program requires a permit for any point source that discharges pollutants to navigable waters.  33 U.S.C. § 1342.  A point source means "any discernible, confined and discrete conveyance, including but not limited to … ***concentrated animal feeding operation***[*s*] … from which pollutants are or may be discharged."  33 U.S.C. § 1362(14)

---

[34] The F&R cites *Inland Steel Co. v. E.P.A.*, 901 F.2d 1419, 1423 (7th Cir. 1990), for the idea that the NPDES exception to the definition of solid waste does not create a "regulatory hole" and that a permit must be "required" for the exception to apply.  *See* F&R at 40.  No party cited *Inland Steel*, which itself cited no direct authority for its conclusion and involved the unique circumstance of a company arguing that deep injection wells with no evidence of leakage were industrial discharges in an effort to avoid RCRA liability for *other* inactive solid waste management units.  *Inland Steel*, 901 F.2d at 1421-22.  The F&R erred in relying on selected statements in *Inland Steel* without analyzing the context or the statutory language itself.

Page 27 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

4934-7024-3616v.5 0051834-000036

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

(emphasis added).  As such, CAFOs are point sources requiring NPDES permits and are excluded from the definition of "solid waste."  By definition, discharges from CAFOs subject to NPDES permits are not "solid wastes."

The F&R concludes that CAFO discharges to groundwater are not excluded because, while BNW is covered by a NPDES permit that addresses discharges to groundwater, BNW is "not required by *the CWA* to have a permit for such discharges."  F&R at 42 (emphasis in original).  Yet the plain text of the RCRA solid waste definition does not include any such language.  The statute does not include the limitation that the F&R applies, making the statutory exemption only applicable to the extent of any discharge to waters of the United States.  By the statute's plain terms, discharges from point sources subject to the NPDES program, such as those Plaintiffs allege BNW makes, are excluded from RCRA.

> **(2)    Plaintiffs' allegations, taken as true, show that BNW's alleged discharges are the functional equivalent of discharges to surface waters.**

Furthermore, the F&R acknowledges that the CWA NPDES program extends to groundwater where discharges to groundwater are the functional equivalent of discharges to surface waters.  F&R at 42.  Yet the F&R incorrectly determines that the Court cannot resolve the functional equivalence on the face of the Complaint.  *Id.*  DEQ has found that in the Umatilla Basin, "there is a good communication between the groundwater and surface water.  Groundwater in the shallow aquifer flows towards the Columbia and Umatilla rivers where it is discharged from the groundwater system to become stream flow."[35]  And as the Plaintiffs themselves allege, "[t]he soil in the area is largely coarse-grained and highly permeable, facilitating rapid percolation to the water table."  FAC ¶ 64.  Plaintiffs further allege that BNW's contributions in the far western edge of the LUBGWMA, FAC at 12, Figure 2, have managed to

---

[35] LAP at § 2.1.5 (Oct. 28, 2020) *available at* https://lubgwma.org/wp-content/uploads/2024/11/6de06-second-lubgwma-action-plan_final.pdf (last accessed Mar. 14, 2025).

Page 28 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION
4934-7024-3616v.5 0051834-000036
DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

migrate across the whole of the LUBGWMA so as to trespass on Plaintiffs' properties in Boardman and Hermiston, far from BNW's CAFO.  FAC ¶¶ 13, 21, 27; Figures 2 & 3.  Plaintiffs cannot, on the one hand, allege sufficient migration of contaminants from BNW's operations so as to physically trespass on properties across two counties, and on the other hand, argue that migration is insufficient to impact surface waters.  Even were the solid waste exclusion not applicable and evident on the face of the statute, and even if the statute required coverage under the CWA for the specific discharge, taking the facts as Plaintiffs allege them shows that discharges to groundwater are the functional equivalent of discharges to surface water, and the exemption applies.  Indeed, in finding Plaintiffs' allegations of imminent and substantial endangerment sufficient, the F&R itself says "Plaintiffs detail how the hydrological conditions in LUBGWMA allow nitrates to spread widely once they reach the water table."  F&R at 55 (citing FAC ¶ 64).  Internal consistency requires finding either that BNW's alleged discharges to groundwater are the functional equivalent of discharges to surface water and thus within the exception to "solid waste" or to find that the allegations are insufficient to show any BNW discharge invaded any interest sufficient to sustain Plaintiffs' tort claims (as discussed below).

> **c.    Under the reasoning applied by the F&R, Plaintiffs' RCRA claim should be dismissed against BNW for failure to allege BNW *discarded* solid waste.**

As applied by the F&R, a substance "that is released into the environment as a natural, expected consequence of a product's intended use has not necessarily been discarded, and therefore is not automatically 'solid waste' under RCRA's definition of the term."  F&R at 49 (emphasis omitted) (internal quotations and citation omitted).  The F&R dismissed RCRA claims against the Defendant Farms because, while Plaintiffs alleged that the Defendant Farms applied nitrogen to soil above agronomic rates, such overuse was natural and expected.  F&R at 51.  Under that reasoning, Plaintiffs' RCRA claim against BNW should likewise be dismissed.

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

Plaintiffs allege that BNW is a CAFO and that "[m]anaging and disposing of large quantities of nitrogen-laden animal waste is an unavoidable part of a CAFO's everyday operating procedures." FAC ¶ 67. Plaintiffs further allege:

> CAFOs typically manage the enormous amounts of animal waste they produce by storing it in 'lagoons' or other facilities and then applying it to nearby agricultural lands as fertilizer. In addition to leaching after the waste is applied to nearby farms, nitrates also leach directly from CAFO manure lagoons and other waste storage facilities. In fact, even when 'properly' constructed according to standards set by [the USDA] and in compliance with Oregon requirements for storage of CAFO wastes, lagoons are actually *designed* to leak.

*Id.* (emphasis in original). Taking Plaintiffs' allegations as true, disposal is "unavoidable" and storage in lagoons creates leaks by design.[36] Any such disposal is accordingly "natural and expected" and is no different than the natural and expected overuse of nitrogen that Plaintiffs allege with regard to the Defendant Farms. Just as the F&R determined that Plaintiffs failed to state a claims against the Defendant Farms, the F&R's reasoning likewise requires dismissal of Plaintiffs' RCRA claim as against BNW for failure to state a claim.

### 2. Plaintiffs' allegations regarding CAFOs generally are insufficient to support their numerous tort claims as against BNW.

Each of Plaintiffs' tort claims requires Plaintiffs to show causation, and the F&R err by finding Plaintiffs' general allegations regarding BNW sufficient to show a causal connection between BNW's alleged conduct and any impact on or harm to Plaintiffs. Each of the following tort claims should be dismissed for failure to state a claim.

### a. The FAC fails to state a claim for negligence.

The F&R concludes that Plaintiffs alleged all Defendants contributed to nitrate contamination of single aquifer. F&R at 58. In short, Plaintiffs allege that (1) the Plaintiffs are exposed to nitrates; (2) nitrates are harmful and create imminent and substantial endangerment;

---

[36] BNW does not agree or concede that its lagoons are designed to leak, but the allegations taken as true support dismissal under the F&R's logic.

Page 30 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon 97205-2771
(503) 241-2300 main · (503) 778-5299 fax

4934-7024-3616v.5 0051834-000036

and (3) BNW (and the other named Defendants) added nitrates to groundwater. Therefore, according to Plaintiffs, BNW has negligently damaged Plaintiffs. FAC ¶¶ 42-46, 59. Even under federal pleading standards, Plaintiffs must make a plausible allegation of a causal connection between BNW's conduct and each Plaintiff's claimed harm. Plaintiffs do not do so; they make only general allegations regarding CAFOs. FAC ¶ 66-68. In fact, the FAC shows the improbability of any conclusion that BNW's activities impacted Plaintiffs, all residents of Boardman and Hermiston, far from BNW's CAFO. FAC ¶¶ 13, 21, 27; Figures 2 & 3. Even assuming the truth of Plaintiffs' allegations, they are insufficient to support any finding that BNW caused these Plaintiffs any harm.

**b.     Plaintiffs have alleged no facts against BNW to support a trespass claim.**

The F&R accepts that allegations of contribution to multi-county regional scale groundwater contamination is somehow sufficient to state a claim for trespass. F&R at 65-66. Trespass can occur in the form of gases, particulates, pollutants, fumes, smoke, and odors, but to state a trespass claim, Plaintiffs must still show that one of those things from each Defendant invaded their property. *Martin v. Reynolds Metals Co.*, 221 Or. 86, 94 (1959). While the FAC alleges facts sufficient to support a conclusion that Plaintiffs' properties are impacted by nitrates, the FAC provides no facts supporting an inference that *BNW* invaded Plaintiffs' property. To the contrary, the FAC shows the improbability of any conclusion that BNW's activities impacted Plaintiffs' property, given the relative locations of the Plaintiffs and BNW's CAFO. FAC ¶¶ 13, 21, 27; Figures 2 & 3. Accepting Plaintiffs' allegations as true, an allegation that BNW contributed to a regional scale groundwater problem is insufficient to support an inference that BNW trespassed on Plaintiffs' specific properties. Plaintiffs' trespass claim accordingly should be dismissed as against BNW.

4934-7024-3616v.5 0051834-000036

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main ᐧ (503) 778-5299 fax

       **c.**     **Plaintiffs allege no facts against BNW to support a nuisance claim.**

The Court should decline to accept the F&R and dismiss Plaintiffs' private and public nuisance claims against BNW for the same reason the Court should dismiss the trespass claim. The F&R accepts that alleged contribution to a regional scale groundwater problem demonstrates substantial and unreasonable interference. F&R at 67. But for liability to attach to BNW, Plaintiffs must allege (and ultimately prove) that BNW interfered with their properties. *Stroda v. State, By & Through Highway Comm'n*, 22 Or. App. 403, 409-10 (1975) (disapproved on other grounds by *Laubach v. Industrial Indem. Co.*, 286 Or. 217, 222 n.4 (1979)). Plaintiffs make no such allegation, and as stated above, the FAC shows the improbability of any conclusion that BNW's activities impacted Plaintiffs' properties. FAC ¶¶ 13, 21, 27; Figures 2 & 3.

## V.    CONCLUSION

For the foregoing reasons, the Court should decline to adopt the F&R (except as to those portions where the F&R recommend granting portions of BNW's motion, if the Court does not dismiss or stay under the primary jurisdiction doctrine). The Court should instead decline to exercise jurisdiction under the primary jurisdiction doctrine and either dismiss or stay Plaintiffs' claims. The expert agencies are the proper forum for investigation and remediation of nitrates in the LUBGWMA. Alternatively, the Court should dismiss Plaintiffs' claims against BNW for failure to state a claim. With respect to RCRA, Plaintiffs have failed to allege an imminent and substantial endangerment under RCRA, cannot overcome the statutory exemption for CAFOs, and under the reasoning of the F&R, cannot allege that BNW has discarded wastes. Finally, Plaintiffs' general allegations regarding CAFOs without any allegations specific to BNW cannot support Plaintiffs array of tort claims, all of which require actual invasion of Plaintiffs' properties by BNW as opposed to by contaminated groundwater generally.

Page 32 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

4934-7024-3616v.5 0051834-000036

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

DATED this 17th day of March 2025.

**DAVIS WRIGHT TREMAINE** LLP

By  s/ Kevin H. Kono
       **KEVIN H. KONO**, OSB #023528
       kevinkono@dwt.com
       560 S.W. Tenth Avenue, Suite 700
       Portland, Oregon 97205-2771
       Telephone: (503) 241-2300

       **DAVID UBALDI**, *Admitted Pro Hac Vice*
       davidubaldi@dwt.com
       **M. SCOTT BROADWELL**, *Admitted Pro Hac Vice*
       scottbroadwell@dwt.com
       929 108th Avenue
       Bellevue, Washington 98004
       Telephone:  (425) 646-6100

       Attorneys for Defendant Beef Northwest Feeders, LLC

Page 33 – DEFENDANT BEEF NORTHWEST FEEDERS, LLC'S OBJECTIONS TO FINDINGS AND
RECOMMENDATION
4934-7024-3616v.5 0051834-000036

DAVIS WRIGHT TREMAINE LLP
560 S.W. Tenth Avenue, Suite 700
Portland, Oregon  97205-2771
(503) 241-2300 main · (503) 778-5299 fax

TINA KOTEK
GOVERNOR

February 27, 2025

Oregon Rural Action
P.O. Box 1231
La Grande, OR 97850

RE:  Letter Regarding Executive Order 25-02

Dear Oregon Rural Action and Community Partners:

Thank you for your letter outlining concerns around the implications of Executive Order 25-02. As I stated when I signed the order, I did not make the decision to issue an emergency declaration lightly.  I believe we must balance protecting thousands of jobs in the region, the national food supply, and domestic well users in the short period of time the order is effective during an unusually wet winter.

That said, I have been very clear that every Oregonian should have safe, healthy drinking water, and that the water contamination experienced in the region is unacceptable and must be fixed.

Over the past two years, I have directed state agencies to work diligently with our local and federal partners to address the nitrate levels in the groundwater in the Lower Umatilla Basin Groundwater Management Area (LUBGWMA).  Since then, the state has provided free testing to all domestic well owners in the LUBGWMA and conducted a large-scale, door-to-door canvas to reach homeowners in the region, providing information about high levels of nitrate in drinking water and free testing resources.

We all know the most effective approach to managing widespread groundwater contamination, like in the LUBGWMA, is to control and reduce the sources of pollutants.  That is why I directed state agencies to work closely with the Environmental Protection Agency on a Nitrate Reduction Plan that will begin to control and reduce nitrate contamination in the region.  There is not a single cure to addressing the long-term contamination challenges that predate my administration, and it will take everyone working together over decades to accomplish this task.

In the last several years, the Port of Morrow has worked more closely and intentionally with the Oregon Department of Environmental Quality (DEQ), sticking to a permit compliance schedule that is a critical part of the long-term strategy to reduce nitrate contamination in the region. Industries at the Port of Morrow took voluntary measures to reduce wastewater in the basin headed into this non-growing season, and this will be the last winter when land application will occur due to the upgrades that the Port of Morrow is currently making and the updated schedule that DEQ has required.

Exhibit A

Page 1 of 2

Oregon Rural Action and Community Partners
February 27, 2025
Page 2

I remain committed to working with everyone in the region to develop long-needed solutions.  I have also been very clear in my expectation that all entities involved in the creation and reuse of wastewater in the Lower Umatilla Basin work with federal, state, and local partners towards our shared goal of reducing the nitrate groundwater contamination in the basin.  This remains unchanged.

Remediating the groundwater contamination in the basin will take decades.  We must be focused on connecting households to public water systems or community wells.  Morrow and Umatilla Counties are instrumental in this work, partnering with our federal delegation to obtain resources from the Drinking Water State Revolving Fund to support public water system extensions.

I want residents who have been impacted by this water contamination to know that the state and our partners have been working with urgency to deliver solutions.  Free testing and retesting, treatment options, and water delivery will continue to be provided by the State of Oregon to all residents in the LUBGWMA whose water tests higher than 10mg/L of nitrate – at no cost to residents.

Thank you for all you do and for your continued advocacy on this important issue.

Sincerely,

Governor Tina Kotek

cc:   Food and Water Watch
      Columbia Riverkeeper
      Rogue Climate
      Coalición Fortaleza
      APANO
      Latino Network
      Friends of Family Farmers
      Oregon Wild
      Plaza de Nuestra Comunidad
      Farmworker Housing Development
          Corporation
      Evolve Workforce Development &
          Multifamily Housing
      Capaces Leadership Institute
      Oregon Just Transition Alliance
      The Next Door Inc.

      Pineros y Campesinos Unidos del
          Noroeste (PCUN)
      Blue Mountains Biodiversity Project
      Center for Biological Diversity
      Center for Food Safety
      Beyond Toxics
      Verde
      Western Organization of Resource
          Councils
      Greater Hells Canyon Council
      Disaster & Climate Resilience,
      Oregon Synod of the ELCA
      Mitch Wolgamott
      Jim Doherty