Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
SNELL & WILMER L.L.P.
601 SW Second Avenue, Suite 2000
Portland, OR 97204
(503) 624-6800

John F. Stoviak (*pro hac vice*)
SAUL EWING LLP
1200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087
(610) 251-5056
john.stoviak@saul.com

James A. Morsch (*pro hac vice*)
SAUL EWING LLP
161 North Clark Street, Suite 4200
Chicago, IL 60601
(312) 876-7866
jim.morsch@saul.com

Kayleigh T. Keilty (*pro hac vice*)
SAUL EWING LLP
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
(410) 332-8919
kayleigh.keilty@saul.com

Erin Westbrook (*pro hac vice*)
SAUL EWING LLP
33 South Sixth Street, Suite 4750
Minneapolis, MN 55402
(612) 225-2946
erin.westbrook@saul.com

*Attorneys for Defendant*
*Threemile Canyon Farms, LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PENDLETON DIVISION

| | |
|---|---|
| MICHAEL PEARSON, ROSA CAVASOS, JEFFREY FLEMING, JON HALEY, JAMES SUTER, SILVIA SUTER, and JACKIE BLODGETT on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PORT OF MORROW; LAMB WESTON HOLDINGS, INC.; MADISON RANCHES, INC.; THREEMILE CANYON FARMS, LLC; PORTLAND GENERAL ELECTRIC COMPANY; and COLUMBIA RIVER PROCESSING, LLC,<br><br>Defendants. | Case No.: 2:24-cv-00362-SI<br><br><br>**THREEMILE CANYON FARMS, LLC'S MOTION TO DISMISS AND/OR STRIKE CIVIL CONSPIRACY ALLEGATIONS, TO DISMISS CLAIMS FOR LACK OF STANDING, AND TO DISMISS RCRA AND NEGLIGENCE PER SE CLAIMS** |

THREEMILE'S MOTION TO DISMISS

**TABLE OF CONTENTS**

Page

LR 7-1 CERTIFICATION ............................................................................................... 1

MOTION............................................................................................................................ 1

I.    INTRODUCTION ................................................................................................... 1

II.   LEGAL STANDARD.............................................................................................. 3

III.  BACKGROUND FACTS......................................................................................... 3

IV.   LEGAL ARGUMENT............................................................................................. 5

      A.    Plaintiffs' Complaint Fails to Adequately Allege Civil Conspiracy. .................... 5

            1.    Plaintiffs Fail To Allege The Purpose Of The Conspiracy Was To
                  Cause Harm.................................................................................................. 6

            2.    Plaintiffs Fail To Allege A Meeting Of The Minds Between The
                  Defendants. .................................................................................................. 8

      B.    All Plaintiffs Other Than the Suters Lack Standing Against Threemile. .............. 9

      C.    Plaintiffs Still Fail to State a RCRA Claim Against Threemile............................ 11

            1.    Threemile's Irrigated Farm Operations Do Not Involve Disposal of
                  "Solid Waste.".............................................................................................. 12

            2.    Threemile's CAFO Operations Do Not Involve Disposal of "Solid
                  Waste."......................................................................................................... 13

      D.    Plaintiffs Have Failed to Remedy the Deficiencies Previously Identified
            by the Court Regarding Their Negligence Per Se Claims. ................................... 16

            1.    Negligence Per Se For Violation Of ORS 468b.025(1)(B). ...................... 17

            2.    Negligence Per Se For Violation Of ORS 468b.025(2)............................. 19

      E.    The Court Should Dismiss Plaintiffs' Medical Monitoring Claim....................... 20

V.    CONCLUSION...................................................................................................... 22

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................3, 20

*Barraza v. C.R. Bard Inc.*, 322 F.R.D. 369 (D. Ariz. 2017) ........................................22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................2, 3

*Bernard v. Myers*, CV-11-608-HZ, 2011 WL 5025880 (D. Or. Oct. 20, 2011)............................20

*Brown v. Elec. Arts, Inc.*, 724 F.3d 1235 (9th Cir. 2013) ................................................3

*Ctr. for Biological Diversity v. US. Forest Serv.*, 80 F.4th 943 (9th Cir. 2023) ...........................11

*Dauven v. U.S. Bancorp.*, 3:13-CV-844-AC, 2014 WL 2949310 (D. Or. Mar. 19, 2014).............8

*Dean v. DJO, LLC*, CIV. 09-1193-AA, 2010 WL 1999295 (D. Or. May 17, 2010)........................7

*Duncan v. Northwest Airlines, Inc.*, 203 F.R.D. 601 (W.D. Wash. 2001)....................................22

*Eagle Star Rock Prods. LLC v. PCC Structurals, Inc.*, 756 F. Supp. 3d 1062 (D. Or. 2024) ......11

*Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502 (9th Cir. 2013) .....................13, 15

*Flint v. DJO*, LLC, No. CIV. 09-1393-AA, 2010 WL 1999302 (D. Or. May 17, 2010) ........5, 6, 7

*Hamilton v. Silven, Schmeits & Vaughan*, 2013 WL 2318809 (D. Or. May 28, 2013).................20

*King v. Deutsche Bank AG*, 04-1029-HU, 2005 WL 8177092 (D. Or. Sept. 12, 2005)..................8

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)........................9

*Martinez v. Newsom*, 46 F.4th 965 (9th Cir. 2022).........................................................9

*Meghrig v. KFC W, Inc.*, 516 U.S. 479 (1996).............................................................11

*Miller v. District of Columbia Water & Sewer Authority*, 2018 WL 4762261 (D.D.C. Oct. 2, 2018).............................................................................21, 22

*Noel v. Hall*, CIV. 99-649-AS, 2000 WL 251709 (D. Or. Jan. 18, 2000) ....................................5

*Potter v. Dark Horse Comics, Inc.*, 3:16-CV-02090-SB, 2017 WL 5711436 (D. Or. Sept. 19, 2017)...........................................................................17, 18

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004)......................................13, 14, 15

*Steinmetz v. A.H. Robins, Co., Inc.*, CV 75-716, 1981 WL 768631 (D. Or. Aug. 27, 1981) ..........5

*Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433 (2017) ...........................................................9

*Wademan v. Concra*, 13 F. Supp. 2d 295 (N.D.N.Y. 1998) .......................................................21

*Werlein v. United States*, 746 F. Supp. 887 (D. Minn. 1990) .....................................................22

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180 (9th Cir. 2001) .................................22

**STATE CASES**

*Bliss v. S. Pac. Co.*, 212 Or. 634 (1958) .......................................................................................6

*Bonds v. Landers*, 279 Or. 169 (1977) ..........................................................................................5

*Granewich v. Harding*, 329 Or. 47 (1999) ....................................................................................9

*Lawver v. Lawvor*, 86 Or. App. 721 (1987) ...............................................................................8, 9

*Lowe v. Philip Morris USA, Inc.*, 344 Or. 403 (2008) ...........................................................20, 21

*McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242 (Ill. 1999) ...................................9

*Moody v. Oregon Cmty. Credit Union*, 371 Or. 772 (2023) ...........................................16, 17, 18

*Osborne v. Fadden*, 225 Or. App. 431 (2009) ..............................................................................5

*Paul v. Providence Health System–Oregon*, 351 Or. 587 (2012) ..............................................20

*Shahtout ex rel. Shahtout v. Emco Garbage Co.*, 298 Or. 598, (1985) ................................17, 18

*Tualatin Riverkeepers v. Oregon Dept. of Envt'l. Quality*,
    235 Or. App. 132 (2010) .........................................................................................................18

*Yanney v. Koehler*, 147 Or. App. 269 (1997) .....................................................................5, 6, 7, 8

**FEDERAL STATUTES**

Fed. R. Civ. P. 12(b)(6) .......................................................................................................1, 2, 3, 5

Resource Conservation and Recovery Act ("RCRA") ......................................................... passim

Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) ..............................................................................10

**STATE STATUTES**

ORS 468B.025 ..................................................................................................................... passim

ORS 468B.050 ...............................................................................................................2, 17, 18, 19

ORS 468B.053 ......................................................................................................................2, 17, 18

THREEMILE'S MOTION TO DISMISS - iii

## LR 7-1 CERTIFICATION

Undersigned counsel hereby certify that they conferred in good faith with Plaintiffs' counsel and did not resolve this motion.

## MOTION

Pursuant to Fed. R. Civ. P. 12(b)(6), Threemile hereby moves to dismiss and/or strike Plaintiffs' civil conspiracy allegations, dismiss all claims by Plaintiffs other than the Suters for lack of standing, and dismiss Plaintiffs' RCRA and negligence per se claims. This motion is based on the following memorandum of points and authorities, matters subject to judicial notice, the Court's file, and such additional evidence or argument as may be offered in support of the motion.[1]

## I.    INTRODUCTION

This case concerns allegedly elevated nitrate levels in portions of the Lower Umatilla Basin, an issue regulators have been studying and addressing for decades. Plaintiffs' Corrected Second Amended Complaint ("SAC") nevertheless attempts to convert a groundwater-management issue into a sweeping tort and statutory action against a diverse group of defendants with different operations, subject to different regulatory regimes and different alleged conduct. As to Defendant Threemile Canyon Farms, LLC ("Threemile"), Plaintiffs assert two primary theories: first, that Threemile's irrigated farming and dairy operations allegedly contributed to nitrate contamination in the basin; and second, that Threemile supposedly joined a civil conspiracy with other defendants engaged in unrelated activities. Plaintiffs then layer onto those implausible theories a series of statutory and negligence-based claims—including claims under the Resource Conservation and Recovery Act ("RCRA") and negligence per se under Oregon law—without pleading the kind of defendant-specific facts required to plausibly connect Threemile to any

---

[1] Authorities are hyperlinked to Westlaw sources for the Court's convenience.

particular plaintiff's alleged injury.

Rule 12 prevents precisely that type of pleading from forcing defendants and the Court into costly and unfocused litigation. Plaintiffs' civil conspiracy allegations fail because Oregon law requires both a meeting of the minds and that the primary purpose of the alleged conspiracy be to cause injury to another - elements Plaintiffs do not plausibly plead. Without a civil conspiracy, no plaintiff other than the Suters pleads facts to establish standing against Threemile. Further, Plaintiffs' RCRA claim fails for the reasons this Court has already explained: RCRA liability requires plausible allegations that a defendant disposed of "solid waste," meaning "discarded material," that present an imminent and substantial endangerment. ECF No. 118 at 22–24. The SAC still does not plausibly allege that Threemile discarded material within the meaning of the statute.

Plaintiffs' negligence per se theories similarly fail. This Court previously held that Plaintiffs' earlier complaint failed to state claims for negligence per se under ORS 468B.025(1)(b) and ORS 468B.025(2) because Plaintiffs did not identify the specific water-quality standards allegedly violated and failed to plausibly allege that the statutory exemptions in ORS 468B.050 or ORS 468B.053 did not apply. ECF No. 98 at 63; ECF No. 118 at 41. The SAC does not cure those deficiencies, and, most notably as to Threemile, fail to identify any permit condition that Threemile allegedly violated. Instead, the SAC relies on the same conclusory allegations this Court previously found insufficient.

Because Plaintiffs were already given an opportunity to cure these pleading defects and did not do so, their claims against Threemile should not proceed further. The Court should dismiss the challenged claims and deny further leave to amend.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) exists to weed out undeserving complaints before the parties engage in costly discovery, which is of particular concern in class actions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570 ). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although plaintiffs are not required to plead detailed factual allegations, they must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009). Although the Court must construe all factual allegations in the light most favorable to the non-moving party, it is not required to make "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013) (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557).

## III.    BACKGROUND FACTS

Defendant Threemile Canyon Farms is a limited liability corporation, with its principal place of business in Oregon. SAC ¶ 59. Threemile owns approximately 88,000 acres of land in Morrow County, Oregon, of which approximately 39,500 acres are irrigated agricultural land. SAC ¶ 59. Other acres are used for concentrated animal feeding and dairy operations (CAFOs). SAC ¶ 137. Plaintiffs allege that Threemile's irrigated agricultural operations contribute to nitrate pollution. SAC ¶ 4. Plaintiffs also generally allege that Threemile discards the waste generated by its dairy operations in ways that pollute groundwater. SAC ¶ 5. The only Plaintiffs who are alleged

Page 3 — THREEMILE'S MOTION TO DISMISS

to have wells downgradient from Threemile are James and Silvia Suter who allegedly own a home in Boardman, Oregon and allegedly rely on a private well for their water. SAC ¶ 44.

Plaintiffs initially filed this suit in February 2024 (ECF No. 1), filed an amended complaint on April 5, 2024 (ECF No. 17), and filed the operative SAC on January 16, 2026. ECF Nos. 126, 130. They allege that Threemile, along with the Port of Morrow, Lamb Weston Holdings, Inc., Madison Ranches, Inc., Portland General Electric Company, and Columbia River Processing, LLC, ("Tillamook") have participated in a civil conspiracy that is responsible for contributing to nitrate contamination in Morrow and Umatilla counties. SAC ¶ 4. Specifically, Plaintiffs allege that "Defendants Tillamook, PGE, Lamb Weston, the Port of Morrow, and Madison Ranches have cooperated in the objective of disposing of high-nitrate wastewater generated by the Port of Morrow's tenants" as evidenced by their "lease agreements with the Port of Morrow." SAC ¶¶ 189–190. Plaintiffs allege that Lamb Weston and Madison Ranches cooperate because Lamb Weston pumps the wastewater it does not send to the Port of Morrow to Madison Ranches. SAC ¶ 191. And Plaintiffs allege that Threemile and Tillamook have cooperated "in the objective of producing milk to supply Tillamook's Boardman Facility" as evidenced by Tillamook's statements that the manure from Threemile's dairy operations is land-applied to its crops. SAC ¶ 193.

Plaintiffs further bring claims under the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(A)(1)(B); negligence; negligence per se for violation of ORS 468B.025(1)(b); negligence per se for violation of ORS 468B.025(2); trespass; private nuisance; and inverse condemnation. *See generally* SAC. Plaintiffs bring class allegations under Rule 23[2], bringing this action "on behalf of all individuals who rent or own property that is supplied with water by wells

---

[2] Threemile contemporaneously filed a Rule 12(f) Motion to Strike Class Allegations asserted against it. That motion addresses the threshold defects in Plaintiffs' attempt to proceed on a class basis against Threemile.

Page 4 — THREEMILE'S MOTION TO DISMISS

that are located downgradient of Farms 1, 2, 3, 4 and 5; Lamb Weston; Madison Ranches; and/or Threemile."[3] SAC ¶¶ 186, 200. Plaintiffs also seek relief in the form of medical monitoring "for people in the area to help scientists and the medical community promote early detection and advances in the treatment of diseases caused by exposure to excess nitrates." SAC ¶ 13.

## IV.    LEGAL ARGUMENT

### A    Plaintiffs' Complaint Fails to Adequately Allege Civil Conspiracy.[4]

Under Oregon law, a civil conspiracy is "'a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means.'" *Osborne v. Fadden*, 225 Or. App. 431, 436 (2009) (quoting *Yanney v. Koehler*, 147 Or. App. 269, 273 (1997)). Civil conspiracy is not a separate tort or basis for recovery but, rather, a theory of mutual agency under which a conspirator becomes jointly liable for the tortious conduct of his or her coconspirators. *Id.* To establish a civil conspiracy, a party must plead and ultimately prove: "(1) Two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Id.* Further, "[t]he primary purpose of a civil conspiracy must be to cause injury to another." *Noel v. Hall*, CIV. 99-649-AS, 2000 WL 251709, at *10 (D. Or. Jan. 18, 2000) (quoting *Yanney*, 147 Or. App. at 275); *Bonds v. Landers*, 279 Or.

---

[3] As explained in Threemile's Rule 12(f) Motion to Strike, the only Plaintiffs "downgradient" of its property are the Suters, and a canyon separates Threemile and the Suters from the rest of the LUBGWMA.

[4] The Court should either dismiss the civil conspiracy allegations under Rule 12(b)(6), *see Flint v. DJO*, LLC, No. CIV. 09-1393-AA, 2010 WL 1999302, at *2 (D. Or. May 17, 2010) (dismissing civil conspiracy claims for failure to state a claim) or strike the allegations under Rule 12(f), *see, e.g.*, Fed. R. Civ. P. 12(f) (permitting the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter"); *see also Steinmetz v. A.H. Robins, Co., Inc.*, CV 75-716, 1981 WL 768631, at *4 (D. Or. Aug. 27, 1981) (striking civil conspiracy allegations).

169, 174 (1977).

Plaintiffs' SAC fails to state a claim for two reasons: First, the SAC fails to allege sufficient facts to support a conclusion that the primary purpose of the alleged conspiracy was to harm Plaintiffs; and second the SAC fails to allege sufficient facts to support a conclusion that Defendants reached a "meeting of the minds" regarding the purported conspiracy.

### 1.    Plaintiffs Fail To Allege The Purpose Of The Conspiracy Was To Cause Harm.

Under Oregon law, "the primary purpose of a civil conspiracy must be to cause injury to another." *Yanney*, 147 Or. App. at 275; *see also Bliss v. S. Pac. Co.*, 212 Or. 634, 641 (1958). Stated differently, if the purpose of the alleged group of co-conspirators is merely to further their "own fair interest or advantage, *and not* the injury of another, its members are not liable for any injury which is merely incidental" and no civil conspiracy exists. *Bliss*, 212 Or. at 641 (emphasis added).

In this case, Plaintiffs have merely alleged that "Defendants have participated in a civil conspiracy to engage in economic activity using methods that pollute groundwater in the LUBGWMA." SAC ¶ 188. The "primary purpose" of the alleged civil conspiracy, as alleged in the SAC, was to dispose of either "high-nitrate wastewater" or "high-nitrogen manure." SAC ¶¶ 188–193. Even assuming, for the purposes of this argument, that these allegations are true, they fail to sufficiently allege a civil conspiracy under Oregon law. Specifically, Plaintiffs fail to allege that the *purpose* of the conspiracy was to cause them harm or injury.

The deficient allegations in the SAC mirror those found to be insufficient by the court in *Flint v. DJO, LLC*, CIV. 09-1393-AA, 2010 WL 1999302 (D. Or. May 17, 2010) (applying Oregon law). In *Flint*, the plaintiff alleged that a manufacturer and distributor of a pain pump entered into a civil conspiracy to promote the use of pain pumps for orthopedic use, in violation of Food and

Page 6 — THREEMILE'S MOTION TO DISMISS

Drug Administration ("FDA") regulations. *Id.* at *1–2. Specifically, the complaint alleged that the manufacturer and the distributor knew that the FDA had rescinded its approval for the use for which the defendants promoted the pumps but that, despite this knowledge, they acted with the common goal of selling pain pumps to orthopedic surgeons to "profit" from those. *Id.* at *2.

The court granted the motion to dismiss, concluding that these allegations failed to sufficiently allege a civil conspiracy. *Id.* at *2–3. The court explained that, while defendants may have conspired to violate FDA regulations, and in doing so disregarded the risks of their actions to patients such as plaintiff, the facts did not "suggest or imply" that the manufacturer and distributor entered into a conspiracy that had the *purpose of causing harm to plaintiff* and those similarly situated. *Id.* at *2. The court also noted that an allegation of "conscious disregard of risk . . .does not suffice to allege a theory of civil conspiracy as a basis for joint liability." *Id.* The court also concluded that any amendment to the complaint would be futile because, even with all inferences construed in plaintiff's favor, the *facts did not suggest or imply that the manufacturer and the distributor entered into a conspiracy with the intent or purpose of causing harm to plaintiff and others similarly situated. Id.*

So too here. At most, Plaintiffs' allegations here allude to an alleged conspiracy between Defendants to dispose of "high-nitrate wastewater" or "high-nitrogen manure." SAC ¶¶ 188–193. Even assuming for the purposes of this argument that these allegations are true, Plaintiffs did not (and could not in good faith) allege that Defendants conspired to dispose of "high-nitrate wastewater" or "high-nitrogen manure" *with the purpose of causing injury or harm to Plaintiffs. See Dean v. DJO, LLC*, CIV. 09-1193-AA, 2010 WL 1999295, at *2 (D. Or. May 17, 2010) (dismissing conspiracy claim where the purpose of the "conspiracy" was to make a profit—not to cause harm to the plaintiff); *Yanney*, 147 Or. App. at 275  (affirming dismissal of conspiracy claim

where "the primary purpose of that agreement was not to injure plaintiffs"). Therefore, even assuming the allegations are correct, Plaintiffs have still failed to allege a necessary element of civil conspiracy under Oregon law. *See Dauven v. U.S. Bancorp.*, 3:13-CV-844-AC, 2014 WL 2949310, at *16 (D. Or. Mar. 19, 2014), *report and recommendation adopted as modified*, 3:13-CV-00844-AC, 2014 WL 2949329 (D. Or. June 30, 2014) (dismissing claim because plaintiffs failed to allege "necessary elements" of their civil conspiracy claim including "that the purpose of the conspiracy . . . was to cause harm or injure them").

### 2. Plaintiffs Fail To Allege A Meeting Of The Minds Between The Defendants.

Plaintiffs' civil conspiracy claim also fails because Plaintiffs have failed to sufficiently allege a meeting of the minds. *See, e.g.*, *Yanney*, 147 Or. App. 269 at 275. A necessary element of a civil conspiracy is a meeting of minds on the object or course of action. *King v. Deutsche Bank AG*, 04-1029-HU, 2005 WL 8177092, at *12 (D. Or. Sept. 12, 2005), *report and recommendation adopted*, CV04-1029, 2006 WL 8459228 (D. Or. Feb. 1, 2006); *Lawver v. Lawvor*, 86 Or. App. 721, 726 (1987).

Here, plaintiffs fail to allege *any* facts that *all* defendants had a meeting of the minds on the object or course of action such that all defendants should be liable for the alleged torts of the others. *See* SAC ¶ 188 ("All Defendants are. . . liable to all members of the class for damages suffered as a result of the conspiracy."). Instead, Plaintiffs attempt to tie each defendant to one other defendant to allege a meeting of the minds between all defendants as to a single objective. This is improper. Threemile cannot be held liable for the conduct of Port of Morrow, Lamb Weston Holdings, Inc., Madison Ranches, Inc., or the Portland General Electric Company, just because it allegedly entered into a commercial agreement to supply its customer, Tillamook, with milk from its cows. Plaintiffs must allege a knowing agreement between Threemile and each of the other

defendants to a conspiracy whose purpose is to tortiously injure the plaintiffs, not to achieve some legitimate commercial purpose for the defendant itself. *See e.g.*, *Granewich v. Harding*, 329 Or. 47, 50 (1999) (purpose of civil conspiracy is to allow conspirators to be held "jointly liable for another's tortious conduct."); *see also Lawver*, 86 Or. App. at 726 (vague and conclusory allegations insufficient to plead meeting of minds); *see also McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999) ("Accidental, inadvertent, or negligent participation in a common scheme does not amount to conspiracy."). Put simply, to be held liable under a civil conspiracy theory, Plaintiffs must allege a meeting of the minds to cause harm as to *all* co-conspirators together. They have failed to do so.

### B    All Plaintiffs Other Than the Suters Lack Standing Against Threemile.

Without an alleged civil conspiracy to tie allegations against other Defendants to Threemile, no plaintiff other than the Suters has alleged facts to establish standing against Threemile. To have standing to sue a particular defendant, a plaintiff must have experienced an injury in fact that is fairly traceable to the challenged action of that defendant. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Where there are multiple plaintiffs, standing "is not dispensed in gross." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017); *see also Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022). A purported class action does not change this analysis. "'That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Martinez*, 46 F.4th at 870 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). Thus, a named plaintiff who has not suffered any injury from a particular defendant lacks standing to sue that defendant. *Id.*

Only the Suters allege injury fairly traceable and redressable by Threemile. Plaintiffs' entire theory of causation is based on being "downgradient" from alleged contamination: "Defendants' dumping has contaminated Plaintiffs' and Class members' water, causing substantial harm to Plaintiffs and other Class members whose water is drawn from areas downgradient of Defendants' dumping sites." SAC ¶ 163; *see also* SAC ¶ 200 ("Plaintiffs bring this action on behalf of themselves and, under Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, as a class action on behalf of all individuals who rent or own property that is supplied with water by wells that are located downgradient of Farms 1, 2, 3, 4 and 5; Lamb Weston; Madison Ranches; and/or Threemile."). But according to Plaintiffs' own allegations, *only the Suters* are downgradient from Threemile, meaning only the Suters could even *possibly* be impacted by Threemile's operations. *See* SAC ¶¶ 173-175. Plaintiffs implicitly acknowledge that the remaining Plaintiffs, while downgradient of the other defendants, are not downgradient of Threemile. *See* SAC p. 45 ("Plaintiffs Pearson, Cavasos, Fleming, and Haley draw their water from areas downgradient of the Port's dumping sites"); p. 46 ("Plaintiff Blodgett draws her water from areas downgradient of Madison Ranches's dumping sites.").

Plaintiffs' own allegations make clear that all plaintiffs other than the Suters lack standing as to Threemile. Because those plaintiffs are not downgradient of Threemile, nothing this Court could Order *as to Threemile* could redress Plaintiffs' alleged injury. Plaintiffs' proposed subclasses underscore this point: they allege that the Suters should serve as class representatives for "all persons who rent or own property that is supplied with water by wells that are located downgradient of Threemile." SAC ¶ 200 n.32. They do not identify any other plaintiffs who could serve as class representatives in claims against Threemile. *Id.* As a result, no plaintiffs other than the Suters have standing to pursue any claims against Threemile, and the Court should dismiss all

claims except for those made by the Suters as to Threemile.

### C       Plaintiffs Still Fail to State a RCRA Claim Against Threemile.

"RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste .... 'so as to minimize the present and future threat to human health and the environment.'" *Meghrig v. KFC W, Inc.*, 516 U.S. 479, 483 (1996) (quoting 42 U.S.C. § 6902(b)). To survive a motion to dismiss, a plaintiff must plausibly allege:

> ( 1) that the defendant "has contributed to the past or is contributing to the present handling, treatment, transportation, or disposal" of certain material; (2) that this material constitutes "solid waste" under RCRA; and (3) that the solid waste "may present an imminent and substantial endangerment to health or the environment."

ECF No. 118 at 22–23 (citing *Cal. River Watch*, 39 F.4th at 629). "To establish the 'contribution' element of a RCRA claim, a plaintiff must allege that the defendant was 'actively involved in or [has] some degree of control over the waste disposal process.'" *Eagle Star Rock Prods. LLC v. PCC Structurals, Inc.*, 756 F. Supp. 3d 1062, 1080 (D. Or. 2024) (alteration in original) (*quoting Ctr. for Biological Diversity v. US. Forest Serv.*, 80 F.4th 943, 950 (9th Cir. 2023)).

> RCRA defines "solid waste" as:

> any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under section 1342 of title 33 ....

ECF No. 118 at 22–23 (citing 42 U.S.C. § 6903(27)).

Mindful of these standards, the Court held that Plaintiffs failed to allege a viable RCRA claim against Threemile and the other Farm Defendants in the prior iteration of their complaint. Undeterred, Plaintiffs persist in including those defendants in the RCRA claim (Count I) of their SAC. Plaintiffs allege Threemile has violated RCRA two ways. First, Plaintiffs allege that

"Threemile generates, stores, and disposes of animal waste from the cattle it raises in its CAFOs as part of its dairy empire." SAC ¶ 214(b). Second, Plaintiffs allege that Threemile "transport[s] and dispose[s] of high nitrogen fertilizer by applying it to their fields." SAC ¶ 214(c). In its prior Order, this Court concluded that Plaintiffs had failed to state a RCRA claim against the CAFO Defendants and the Farm Defendants. ECF No. 118 at 22. The SAC does not cure the deficiencies the Court identified against Threemile for either its CAFO operations or its Farm operations. Plaintiffs still fail to plausibly allege that Threemile has disposed of "solid waste" within the meaning of RCRA.

### 1.     Threemile's Irrigated Farm Operations Do Not Involve Disposal of "Solid Waste."

RCRA regulates the treatment, storage, and disposal of waste. It does not transform ordinary agricultural nutrient management into federal waste disposal. The Court previously declined to extend RCRA liability to the Farm Defendants on comparable allegations. ECF No. 118 at 22. The SAC does not meaningfully distinguish Threemile's irrigated farming practices from those the Court has already found insufficient to state a RCRA claim.

Specifically, the SAC alleges RCRA liability based on Threemile's alleged "dispos[al] of high-nitrogen fertilizer by applying it to [its] fields." *See* ECF No. 130 at ¶ 214(c). But as the Court emphasized in its prior opinion, material must be "discarded" to qualify as "solid waste." ECF No. 118 at 24. Even in the face of allegations of over-application, "fertilizer is not a "discarded" material under RCRA's definition of solid waste because it is applied to crops for its beneficial use and therefore is still wanted by the consumer." *Id.* at 26 (citing Judge Hallman's Findings & Recommendation and finding no clear error).

As Judge Hallman explained in his recommendation that the Court dismiss the RCRA claim as to the Farm Defendants:

Page 12 — THREEMILE'S MOTION TO DISMISS

"A dispute as to whether Defendant Farms' alleged over-use of nitrogen was appropriate or resulted in negative environmental consequences is not the same as a dispute over whether that over-use was natural and expected. *See Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 516 (9th Cir. 2013). Plaintiffs have failed to plead any facts that would plausibly demonstrate that Defendant Farms application—even over-use—of nitrogen was unnatural or unexpected. Plaintiffs have therefore failed to state a claim that Defendant Farms discarded or disposed of nitrogen laden materials." ECF 98 at 51.

No party objected to this part of Judge Hallman's Findings & Recommendation, and this Court found no clear error. Plaintiffs' SAC fails to fix the issues identified by Judge Hallman. As a result, the allegations regarding RCRA violations due to Threemile's farm operations are insufficient to sustain their RCRA claim. *See* SAC ¶ 214(c).

### 2. Threemile's CAFO Operations Do Not Involve Disposal of "Solid Waste."

Plaintiffs also again attempt to assert a RCRA claim based on manure generated by Threemile's dairy operations. But the SAC still fails to plausibly allege the threshold requirement that Threemile disposed of "solid waste." As this Court previously explained, something can be "solid waste" only if it is "discarded material," meaning material that has been abandoned, thrown away, or otherwise relinquished. ECF No. 118 at 24.

The SAC alleges productive use of manure as fertilizer, *see, e.g.*, SAC ¶ 139-140, which, under the statute, cannot be the abandonment of unwanted waste. *See, e.g.*, *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1045 (9th Cir. 2004) (citing legislative history, which stated that "[a]gricultural wastes which are returned to the soil as fertilizers or soil conditioners are not considered discarded materials in the sense of this legislation"). As the Court previously recognized, materials that remain part of an ongoing agricultural process are not "discarded" within the meaning of RCRA. ECF No. 118 at 24.

The Ninth Circuit's decision in *Safe Air for Everyone v. Meyer* reinforces this principle. There, the court held that Kentucky bluegrass residue left on fields and burned as part of the

farming cycle was not "solid waste" under RCRA because it was reused by farmers in a continuous agricultural process that provided multiple benefits, including returning nutrients to the soil and improving crop production. 373 F.3d at 1043–46. Because the residue remained part of an ongoing farming operation and continued to provide value to the farmers who generated it, it was not "discarded material." *Id.* at 1045–46. The court emphasized that RCRA's legislative history confirms that "agricultural wastes which are returned to the soil as fertilizers or soil conditioners are not considered discarded materials in the sense of this legislation." *Id.* at 1046.

The SAC's own allegations place Threemile's manure management squarely within that framework. Plaintiffs allege that the dairy effluent is applied to cropland in part because it is nitrogen rich. SAC ¶ 139. Under *Safe Air*, such reuse in a continuous agricultural process is the opposite of discard.

Plaintiffs attempt to avoid this conclusion by alleging that Threemile land-applies manure "year-round, including during the non-growing season," and asserting that waste applied during that period is applied "purely for disposal purposes." ECF No. 130 at ¶ 138. But this is just an allegation of over-application by another name, and the Court already concluded that alleged over-application of fertilizer is insufficient under RCRA. *See* ECF No. 118 at 26. The SAC offers no factual allegations explaining why manure applied during that period is no longer used for its nutrient value. Instead, Plaintiffs simply assert that such application must be disposal. But RCRA's definition of "solid waste" does not turn on whether nutrients are applied at the optimal time of year. It turns on whether the material has been discarded or, in other words, whether it has "served its intended purpose and is no longer wanted by the consumer." *Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 515 (9th Cir. 2013) (cleaned up); *see also* ECF No. 118 at 24.

Page 14 — THREEMILE'S MOTION TO DISMISS

Other courts addressing agricultural fertilizers have rejected precisely the theory that alleged overapplication constitutes "solid waste" under RCRA. In *Oklahoma v. Tyson Foods, Inc.*, the court held that poultry litter applied to farmland does not become RCRA "solid waste" merely because one nutrient component exceeds agronomic demand. No. 05-CV-329-GKF-PJC, 2010 WL 653032, at *6–7 (N.D. Okla. Feb. 17, 2010). The court explained that a material "does not necessarily become a solid waste within the meaning of RCRA when it is applied to the normal beneficial usage for which the product was intended merely because some aspect of the product is not fully utilized." *Id.* at *6. Even where phosphorus content exceeded agronomic needs, the poultry litter remained a beneficial fertilizer because it continued to provide nutrients useful for crop production. *Id.* at *7. The incomplete utilization of one nutrient component, the court concluded, does not magically transform fertilizer into discarded waste.

The same reasoning applies here. Plaintiffs' theory would effectively convert routine nutrient management disputes into federal waste-disposal claims whenever a plaintiff alleges that fertilizer was applied at the wrong time or in excessive quantities. At most, Plaintiffs allege that the effluent was applied in quantities they believe exceeded crop uptake for nitrogen. *See, e.g.*, ECF No. 130 at ¶ 138. But under *Tyson Foods*, incomplete utilization of a single nutrient component does not render fertilizer "discarded." Because the SAC itself alleges that the effluent is applied for its nutrient value, Plaintiffs' allegations confirm that the material remains part of an ongoing agricultural process rather than a "discarded material." *See Safe Air*, 373 F.3d at 1045–46.

Plaintiffs also allege "[o]n information and belief" that Threemile has discharged manure or wastewater through "leaks, spills, and overflows from storage lagoons." SAC ¶ 142. But the SAC offers virtually no factual support for that claim. Instead, Plaintiffs cite a single example from

Page 15 — THREEMILE'S MOTION TO DISMISS

2004 in which Oregon Department of Agriculture inspectors reportedly observed evidence of overflow from two emergency ponds. Id. Plaintiffs then speculate that "[g]iven Threemile's continued violations of its permit, there is reason to believe that leaks, spills, and overflows have continued through the present." *Id*. That allegation is not plausible. RCRA liability requires plausible allegations that a defendant "has contributed to the past or is contributing to the present" handling or disposal of solid waste that may present an imminent and substantial endangerment. ECF No. 118 at 22–23.[5] Under both this Court's prior analysis and the relevant case law, Plaintiffs' allegations simply do not plausibly establish disposal of "solid waste."

**D      Plaintiffs Have Failed to Remedy the Deficiencies Previously Identified by the Court Regarding Their Negligence Per Se Claims.**

This Court ruled that Plaintiffs' First Amended Complaint (FAC) failed to state a claim for negligence per se for violation of ORS 468B.025(1)(B) or ORS 468B.025(2). That ruling provides the governing framework for evaluating whether the SAC sufficiently alleges these claims. ECF No. 98 at 63. Negligence per se is not a separate, independent type of negligence claim; rather, negligence per se is "simply shorthand for a negligence claim in which the standard of care is expressed by a statute or rule." *Moody v. Oregon Cmty. Credit Union*, 371 Or. 772, 781 (2023) (citation omitted). But a statute or rule will only supplant the standard of care when it "so fixes the legal standard of conduct that there is no question of due care left for a factfinder to determine." *Shahtout ex rel. Shahtout v. Emco Garbage Co.*, 298 Or. 598, 601 (1985). The statute must be sufficiently specific such that it "provides advance warning of the specific conduct that is

---

[5]  Allegations of two isolated overflow incidents from more than twenty years ago do not plausibly support the inference that leaks, spills, or overflows are occurring today. The SAC identifies no recent incidents, inspections, enforcement actions, or monitoring data suggesting ongoing leaks, spills, or overflows. Nor does it allege that the alleged 2004 overflows were insufficiently remedied at the time, caused contamination in any Plaintiff's well, or created a continuing condition that presently impacts groundwater.

Page 16 — THREEMILE'S MOTION TO DISMISS

prohibited." *Moody*, 371 Or. at 799.

Plaintiffs bring claims of negligence per se based on alleged violations of two statutory provisions: ORS 468B.025(1)(B) and 468B.025(2).  Because Plaintiffs have failed to allege facts plausibly alleging negligence per se under either of those statutes, Plaintiffs' claims fail. And because this Court has previously concluded Plaintiffs claims were deficient, and Plaintiffs failed to remedy those deficiencies, leave to amend should be denied. *See Potter v. Dark Horse Comics, Inc.*, 3:16-CV-02090-SB, 2017 WL 5711436, at *4 (D. Or. Sept. 19, 2017), *report and recommendation adopted*, 3:16-CV-02090-SB, 2017 WL 5710441 (D. Or. Nov. 27, 2017) (recommending dismissal with prejudice where plaintiff "was given an opportunity to cure the deficiencies identified in his original complaint and failed to do so").

### 1.    Negligence Per Se For Violation Of ORS 468b.025(1)(B).

Plaintiffs first raise a claim of negligence per se for violation of ORS 468B.025(1)(b). That statute states that "[e]xcept as provided in ORS 468B.050 or 468B.053, no person shall . . . [d]ischarge any wastes into the waters of the state if the discharge reduces the quality of such waters below the water quality standards established by rule for such waters by the Environmental Quality Commission." ORS 468B.025(1)(b).

This Court previously determined that the FAC failed to state a claim for negligence per se for violation of ORS 468B.025(1)(b) for two reasons: (1) Plaintiffs failed to allege the specific water quality standards established by rule, and (2) Plaintiffs failed to allege that Defendants' discharges were not subject to the exemptions listed in the statute—either because they had a permit, ORS 468B.050, or because their unpermitted discharges were otherwise exempt, ORS 468B.053. ECF No. 98 at 63; ECF No. 118 at 41 (finding no clear error after noting that neither party objected to this ruling). Here, Plaintiffs' SAC likewise fails to allege that Defendants'

Page 17 — THREEMILE'S MOTION TO DISMISS

discharges were not subject to one of the exemptions listed in ORS 468B.025(1)(b) and should be dismissed for that reason.[6] *See* SAC at ¶¶ 228–36.

Indeed, because of its exceptions, it is unclear how Plaintiffs could establish that ORS 468B.025(1)(b) "so fixes the legal standard of conduct that there is no question of due care left for a factfinder to determine." *Shahtout*, 298 Or. at 601. The first exception in ORS 468B.025(1)(b), which excepts from the statute discharges made pursuant to a permit issued under ORS 468B.050, has been determined *not to* require that "permits issued . . . contain provisions mandating compliance with water quality standards." *Tualatin Riverkeepers v. Oregon Dept. of Envt'l. Quality*, 235 Or. App. 132, 140 (2010). With that, ORS 468B.025(1)(b) appears to be inapplicable to any Defendant subject to a permit. At a minimum, the conflicting language cannot fairly be read to "provide[] advance warning of the specific conduct that is prohibited." *Moody*, 371 Or. at 799. For this reason, Plaintiffs have failed, again, to plead with particularity how Defendants violated ORS 468B.025(1)(b), and their negligence per se claim based on the statute fails.

Moreover, the Court should dismiss this claim with prejudice because Plaintiffs were "given an opportunity to cure the deficiencies identified in [their] original complaint and failed to do so" and "the allegations in the amended complaint suggest that Plaintiff is unable to remedy the deficiencies that the Court already brought to [their] attention." *See Potter*, 2017 WL 5711436, at *4. Specifically, the Court identified that Plaintiffs needed to allege that Defendants were not subject to one of the exceptions listed in ORS 468B.025(1)(b). ECF No. 98 at 63. Plaintiffs did not cure that deficiency.

---

[6] Additionally, Plaintiffs have failed to add much by way of particularity of *how* each Defendants' discharge reduced the quality of waters below the standards articulated by the Environmental Quality Commission. *See* ECF No. 98 at 63. Rather, Plaintiffs rely on the conclusory allegations that "Defendants' activities have made the nitrate problem worse." SAC ¶ 82.

### 2.    Negligence Per Se For Violation Of ORS 468b.025(2)

Plaintiffs also assert negligence per se under ORS 468B.025(2), that statute states that "[n]o person shall violate the conditions of any waste discharge permit issued under ORS 468B.050." SAC ¶¶ 237–42. Judge Hallman previously determined that Plaintiffs' FAC failed to state a claim for negligence per se for violation of ORS 468B.025(2) because Plaintiffs failed to allege "with particularity that either Port of Morrow's or Lamb Weston's alleged permit violations were a breach of the standard of care established by that statute." ECF No. 98 at 64. Plaintiff failed to correct these deficiencies in the SAC. *Compare* FAC ¶¶ 75–91, 129–133, *with* SAC ¶¶ 99–110, 237–242.

First, the Court should dismiss Plaintiffs' negligence per se claim for violation of ORS 468B.025(2) to the extent that claim is brought against Threemile. The SAC fails to allege with any particularity how Threemile has breached the standard of care established by 468B.025(2). Rather, Plaintiffs appear to only make allegations against the Port and Lamb Weston: "As explained above, the Port and Lamb Weston have repeatedly violated their waste discharge permits. As such, *these Defendants* have violated ORS 468B.025(2)." SAC ¶ 239. Because Plaintiffs do not allege that Threemile has violated any specific condition of its discharge permits, or even identify any specific waste discharge permit issued to Threemile, this claim fails.

Second, should the Court find that Plaintiffs' claim is properly brought against all Defendants, the SAC does not articulate with any more particularity that the Port and Lamb Weston's alleged permit violations breached the standard of care established by ORS 468B.025(2). Rather, Plaintiffs rely on the addition of a citation to the statute to bolster their claims asserting that "the Port and Lamb Weston have repeatedly violated their waste discharge permits" and therefore "these Defendants have violated ORS 468B.025(2)." SAC ¶ 239. But Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bernard v. Myers*, CV-

Page 19 — THREEMILE'S MOTION TO DISMISS

11-608-HZ, 2011 WL 5025880, at *4 (D. Or. Oct. 20, 2011) (quoting *Iqbal*, 129 S.Ct. at 1949–50). Because Defendants have not meaningfully supplemented their negligence per se claim, but for the addition of the citation of the statute, Plaintiffs have failed to allege with particularity their negligence per se claim based on ORS 468B.025(2).

**E       The Court Should Dismiss Plaintiffs' Medical Monitoring Claim.**

As an initial matter, this Court has already addressed Plaintiffs' request for medical monitoring in its prior Order. In adopting Judge Hallman's Findings and Recommendation, the Court held that "Judge Hallman recommends that the Court dismiss without prejudice Plaintiffs' requested relief of medical monitoring. No party objected, and the Court finds no clear error." ECF No. 118 at 49. Plaintiffs nevertheless again seek the establishment of a "medical monitoring program" for class members who draw water from private wells. SAC ¶ 186. That request again fails as a matter of law and should be dismissed because medical monitoring is not recoverable under any of Plaintiffs' asserted claims, including negligence, negligence per se, or the RCRA.

First, under Oregon law, medical monitoring damages are not recoverable in negligence actions absent a present physical injury. The Oregon Supreme Court has made clear that the "threat of future harm, by itself, is insufficient as an allegation of damage in the context of a negligence claim." *Lowe v. Philip Morris USA, Inc.*, 344 Or. 403, 410 (2008); *see also Paul v. Providence Health System–Oregon*, 351 Or. 587, 594 (2012) (same). Consistent with that rule, courts applying Oregon law have held that "[m]edical monitoring damages are not recoverable in Oregon without some present symptoms." *Hamilton v. Silven, Schmeits & Vaughan*, No. 2:09-CV-1094-SI, 2013 WL 2318809, at *10 (D. Or. May 28, 2013).

The Oregon Supreme Court's decision in *Lowe* is particularly instructive. There, the plaintiff sought medical monitoring against a cigarette manufacturer, alleging exposure to hazardous substances and a significantly increased risk of developing lung cancer. 344 Or. at 407.

Page 20 — THREEMILE'S MOTION TO DISMISS

The court rejected the claim, holding that an increased risk of future injury, standing alone, does not constitute a compensable injury and therefore cannot support recovery of medical monitoring costs. *Id.* at 414–15. The court explained that the "present economic harm" of monitoring costs is not itself sufficient to sustain a negligence claim absent a present physical injury. *Id*.

The same defect exists here. Plaintiffs do not allege any present physical injury. Instead, they claim only that they face a "increased risk" of illness due to alleged nitrate exposure. *See, e.g.*, SAC ¶ 194. Under Oregon law, that allegation is insufficient to support recovery of medical monitoring costs. *See Lowe*, 344 Or. at 411.

Second, Plaintiffs cannot obtain medical monitoring relief under RCRA. RCRA's citizen-suit provision authorizes only prospective injunctive relief to address "imminent and substantial endangerment," not monetary damages. 42 U.S.C. § 6972(a)(1)(B). Courts have repeatedly recognized that RCRA is not designed to provide compensation for the lingering effects of past conduct. *See Miller v. District of Columbia Water & Sewer Authority*, 2018 WL 4762261, at *11 (D.D.C. Oct. 2, 2018), aff'd, 790 F. App'x 218 (D.C. Cir. 2019) (explaining that RCRA does not provide "compensation or other remedial relief for the potential lingering effects of past injurious conduct"). Nor does the statute authorize private plaintiffs to recover damages such as medical monitoring costs. *See Wademan v. Concra*, 13 F. Supp. 2d 295, 305 (N.D.N.Y. 1998)( ("RCRA does not create a right for a private citizen to collect damages such as medical monitoring costs. In fact, the Supreme Court has held that RCRA, unlike CERCLA, does not even create the right to collect damages for past clean-up costs incurred by private citizens.")

Plaintiffs cannot avoid these statutory limitations by repackaging a claim for damages as a request for "medical monitoring." Courts have rejected similar attempts to recast environmental claims for monetary relief as equitable monitoring remedies, recognizing that such efforts reflect

Page 21 — THREEMILE'S MOTION TO DISMISS

a "fundamental misunderstanding" of the remedies available under RCRA. *Miller*, 2018 WL 4762261, at *11; *see also Werlein v. United States*, 746 F. Supp. 887, 895 (D. Minn. 1990) (concluding that a medical monitoring fund to reimburse screening costs "simply is not an injunctive remedy").

Finally, federal courts evaluating medical monitoring claims have emphasized that relief structured as a fund to pay for medical testing or treatment is fundamentally monetary in nature. *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1196–97 (9th Cir. 2001) (holding that a proposed medical monitoring program seeking the creation of a fund and payment of future medical expenses constituted primarily monetary relief rather than injunctive relief). Courts within the Ninth Circuit have repeatedly followed that principle when evaluating medical monitoring requests. *See, e.g., Duncan v. Northwest Airlines, Inc.*, 203 F.R.D. 601, 610 (W.D. Wash. 2001) (finding proposed monitoring fund to be monetary relief); *Barraza v. C.R. Bard Inc.*, 322 F.R.D. 369, 378–79 (D. Ariz. 2017) (same).

Because medical monitoring relief is unavailable under Oregon negligence law and cannot be recovered under RCRA, Plaintiffs' request for medical monitoring fails as a matter of law. The Court should therefore dismiss Plaintiffs' request for medical monitoring relief in its entirety.

## V.    CONCLUSION

For the foregoing reasons, the Corrected Second Amended Complaint still fails to state a claim for civil conspiracy, fails to plausibly allege a violation of the Resource Conservation and Recovery Act against Threemile Canyon Farms, LLC, and fails to cure the deficiencies this Court previously identified with respect to Plaintiffs' negligence per se claims. Despite being afforded an opportunity to amend, Plaintiffs' new pleading largely repeats the same conclusory allegations that the Court has already found insufficient.

Accordingly, the Court should dismiss with prejudice: (a) Plaintiffs' claims for civil conspiracy (or in the alternative strike the conspiracy allegations); (b) Plaintiffs' regurgitated RCRA claim against Threemile Canyon Farms, LLC; and (c) Plaintiffs' negligence per se claims to the extent asserted against Threemile.

DATED this 17th day of March, 2026.

SNELL & WILMER L.L.P.

/s/ Clifford S. Davidson
Clifford S. Davidson, OSB No. 125378
Drew L. Eyman, OSB No. 163762

SAUL EWING LLP

John F. Stoviak (*pro hac vice*)
SAUL EWING LLP
1200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087
(610) 251-5056
john.stoviak@saul.com

James A. Morsch (*pro hac vice*)
SAUL EWING LLP
161 North Clark Street, Suite 4200
Chicago, IL 60601
(312) 876-7866
jim.morsch@saul.com

Kayleigh T. Keilty (*pro hac vice*)
SAUL EWING LLP
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
(410) 332-8919
kayleigh.keilty@saul.com

Erin Westbrook (*pro hac vice*)
SAUL EWING LLP
33 South Sixth Street, Suite 4750
Minneapolis, MN 55402
(612) 225-2946
erin.westbrook@saul.com

*Attorneys for Defendant*
*Threemile Canyon Farms, LLC*

4931-6676-5720