Deana S. Stein (*pro hac vice* admitted)
Vincent J. Michalec (*pro hac vice* application forthcoming)
Jane Wiertel (*pro hac vice* application forthcoming)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, OH 44114-2378
(216) 363-4500
dstein@beneschlaw.com
vmichalec@beneschlaw.com
jwiertel@beneschlaw.com

Martha Payne (OSB85239)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
225 Escondido
Lincoln City, OR 97367
(541) 961-7802
mpayne@beneschlaw.com

*Attorneys for Third-Party Defendant Shearer's Foods, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PENDLETON DIVISION**

| | |
|---|---|
| MICHAEL PEARSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PORT OF MORROW, et al.,<br><br>Defendants.<br><br>LAMB WESTON HOLDINGS, INC.,<br><br>Third-Party Plaintiff,<br>v.<br><br>J.R. SIMPLOT COMPANY, LLC and SHEARER'S FOODS, LLC,<br><br>Third-Party Defendants. | Case No.: 2:24-CV-00362-SI<br><br>**THIRD-PARTY DEFENDANT SHEARER'S FOODS, LLC'S OMNIBUS MOTION TO DISMISS LAMB WESTON HOLDINGS, INC.'S AMENDED THIRD-PARTY COMPLAINT, JOINDER OF PLAINTIFFS' MOTION TO STRIKE (ECF 260-1), AND ALTERNATIVE MOTION TO SEVER OR TRY SEPARATELY** |

## I. LR-7-1(A) CERTIFICATION

Pursuant to Local Rule 7-1(A), counsel for Third-Party Defendant Shearer's Foods, LLC ("Shearer's") met and conferred with counsel for Third-Party Plaintiff Lamb Weston Holdings, Inc. ("Lamb Weston") regarding the content of this motion. Counsel did not reach a resolution on the below motion.

## II. MOTION

Third-Party Defendant Shearer's respectfully moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Third-Party Plaintiff Lamb Weston's Amended Third-Party Complaint (the "ATPC") against Shearer's. Lamb Weston fails to sufficiently plead its apportionment and contribution claims against Shearer's and the underlying causes of action from which Lamb Weston seeks relief are time-barred against Shearer's by the statute of limitations and statute of repose under Oregon law. Further, Lamb Weston asserts its contribution claim prematurely and is thus not entitled to relief. For these reasons, Lamb Weston's ATPC against Shearer's should be dismissed in its entirety. Shearer's also joins, while supplementing with its own arguments and authorities, Plaintiffs' Motion to Strike Lamb Weston's ATPC and hereby incorporates by reference all facts, arguments, and authorities therein as if fully set forth in this motion.

Alternatively, Shearer's respectfully moves this Court pursuant to Federal Rule of Civil Procedure 14(a)(4), to sever Lamb Weston's third-party claims against Shearer's from Plaintiffs Michael Pearson, Jeffrey Fleming, James Suter, Silvia Suter, and Jessie Mohedano's (collectively, "Plaintiffs") claims against Defendants Port of Morrow (the "Port"), Lamb Weston, Madison Ranches, Inc., ("Madison Ranches"), Threemile Canyon Farms, LLC ("Threemile"), Portland

General Electric Company ("PGE"), and Columbia River Processing, LLC ("Columbia River") (collectively, "Defendants") to prevent confusion, prejudice, and delay for all parties.

A memorandum in support of Third-Party Defendant's Motion and a proposed Order are attached.

Dated: October 9, 2026 Respectfully submitted,

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ Deana S. Stein*
Deana S. Stein (*pro hac vice* admitted)
Vincent J. Michalec (*pro hac vice* application forthcoming)
Jane Wiertel (*pro hac vice* application forthcoming)
127 Public Square, Suite 4900
Cleveland, OH 44114-2378
(216) 363-4500
dstein@beneschlaw.com
vmichalec@beneschlaw.com
jwiertel@beneschlaw.com

Martha Payne (OSB85239)
225 Escondido
Lincoln City, OR 97367
(541) 961-7802
mpayne@beneschlaw.com

*Attorneys for Third-Party Defendant Shearer's Foods, LLC*

Deana S. Stein (*pro hac vice* admitted)
Vincent J. Michalec (*pro hac vice* application forthcoming)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, OH 44114-2378
(216) 363-4500
dstein@beneschlaw.com
vmichalec@beneschlaw.com
jwiertel@beneschlaw.com

Martha Payne (OSB85239)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
225 Escondido
Lincoln City, OR 97367
(541) 961-7802
mpayne@beneschlaw.com

*Attorneys for Third-Party Defendant Shearer's Foods, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PENDLETON DIVISION**

| | |
|---|---|
| MICHAEL PEARSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PORT OF MORROW, et al.,<br><br>Defendants.<br><br>LAMB WESTON HOLDINGS, INC.,<br><br>Third-Party Plaintiff,<br>v.<br><br>J.R. SIMPLOT COMPANY, LLC and SHEARER'S FOODS, LLC,<br><br>Third-Party Defendants. | Case No.: 2:24-CV-00362-SI<br><br>**MEMORANDUM IN SUPPORT OF THIRD-PARTY DEFENDANT SHEARER'S FOODS, LLC'S OMNIBUS MOTION TO DISMISS LAMB WESTON HOLDINGS, INC.'S AMENDED THIRD-PARTY COMPLAINT, JOINDER OF PLAINTIFFS' MOTION TO STRIKE (ECF 260-1), AND ALTERNATIVE MOTION TO SEVER OR TRY SEPARATELY** |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 4

III. LAW AND ARGUMENT ..... 7

A. Legal Standard ..... 7

B. Lamb Weston's Claims Fail Because Lamb Weston Does Not Plead Any Elements of the Alleged Causes of Action. ..... 9

1. Lamb Weston's Claims for Apportionment and Contribution Based on the Underlying Negligence Claim Fail Under Oregon Law. ..... 11

2. Lamb Weston's Claims for Apportionment and Contribution Based on the Underlying Claims of Negligence Per Se in Violation Of Or. Rev. Stat. § 468B.025(1)(b) and 468B.025(2) Fail Under Oregon Law. ..... 12

3. Lamb Weston's Claims for Apportionment and Contribution Based on the Underlying Claim of Trespass Fail Under Oregon Law. ..... 14

4. Lamb Weston's Claims for Apportionment and Contribution Based on the Underlying Claim of Private Nuisance Fail Under Oregon Law. ..... 15

C. Lamb Weston's Apportionment Claim is Barred By the Statute of Limitations and Statute of Repose. ..... 17

1. Statute of Limitations. ..... 17

2. Statute of Repose. ..... 19

D. Lamb Weston's Contribution Claim Must Be Dismissed Because It Is Not Ripe For Adjudication. ..... 20

E. Shearer's Joins and Supplements Plaintiffs' Motion to Strike Under Rule 14(a)(4). ..... 21

F. In the Alternative, the Court Should Sever Lamb Weston's Third-Party Claims Against Shearer's to Prevent Confusion, Prejudice, and Undue Delay. ..... 23

IV. CONCLUSION ..... 26

CERTIFICATE OF COMPLIANCE ..... 28

CERTIFICATE OF SERVICE ..... 29

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abney-Revard, Inc. v. Associated Materials Inc.*,
No. CV 05-528-PK., 2007 WL 1467302 (D. Or. May 17, 2007) ....................................3, 21

*Adnan v. Whole Foods Mkt. Pac. Nw., Inc.*,
No. CV 10-44-MO, 2010 WL 1335144 (D. Or. Mar. 30, 2010) ....................................2, 18

*Arkema Inc. v. Anderson Roofing Co., Inc.*,
719 F. Supp. 2d 1318 (D. Or. 2010) ....................................3, 21

*Ashcroft v. Iqbal*,
556 U.S. 662, 679 (2009) ....................................7

*Behroozi v. New Albertson's, Inc.*,
No. 2:11-cv-00579-JCM-NJK, 2014 U.S. Dist. LEXIS 153288 (D. Nev. Oct. 24, 2014) ....................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................7

*Blazevich v. Mass. Mut. Life Ins. Co.*,
No. 5:25-cv-01319-SPG-MAA, 2026 U.S. Dist. LEXIS 183445 (C.D. Cal. Mar. 12, 2026) ....................................22

*Butler v. Unified Life Ins. Co.*,
CV 17-50-BLG-SPW, 2020 WL 1164863 (D. Mont. Mar. 11, 2020) ....................................8

*Cereghino v. Boeing Co.*,
826 F. Supp. 1243 (D. Or. 1993) ....................................15, 16

*Cordova v. FedEx Ground Package Sys., Inc.*,
104 F. Supp. 3d 1119 (D. Or. 2015) ....................................7

*Eagle Star Rock Prods. LLC v. PCC Structurals, Inc.*,
756 F. Supp. 3d 1062 (D. Or. 2024) .................................... *passim*

*Encuentra v. Church & Dwight Co.*,
No. 23-cv-02051-H-SBC, 2024 WL 1684897 (S.D. Cal. Apr. 17, 2024) ....................................2, 9, 10

*F.T.C. v. Cap. City Mortg. Corp.*,
186 F.R.D. 245 (D.D.C. 1999) ....................................21, 22

*Frady v. Portland Gen. Elec. Co.*,
55 Or. App. 344, 637 P.2d 1345 (1981)....................15

*Gaston v. Parsons*,
318 Or. 247, 864 P.2d 1319 (1994)....................18

*Gronn v. Rogers Constr., Inc.*,
221 Or. 226, 350 P.2d 1086 (1960)....................16

*Hay v. Oregon Dep't of Transp.*,
301 Or. 129 (1986)....................15

*Hogan v. United States*,
No. 3:23-cv-00765-AB, 2024 WL 4471680 (D. Or. Oct. 9, 2024)
....................2, 18, 20, 23

*Int'l Nickel, Inc. v. Rudie Wilhelm Warehouse Co.*,
No. CIV. 98-1319-KI., 1999 WL 375605 (D. Or. Apr. 29, 1999)....................8

*Lasley v. Combined Transp., Inc.*,
351 Or. 1, 261 P.3d 1215 (2011)....................1

*Mark v. State ex rel. Dep't of Fish & Wildlife*,
191 Or. App. 563, 84 P.3d 155 (2004)....................15, 16

*Marshall v. PricewaterhouseCoopers, LLP*,
371 Or. 536, 539 P.3d 766 (2023)....................3, 19

*McAlpine v. Multnomah Cnty.*,
131 Or. App. 136, 883 P.2d 869 (1994)....................12

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008)....................8

*Miller v. Goodyear Tire & Rubber Co.*,
434 F. Supp. 3d 877, 884 (D. Or. 2020)....................12

*Moody v. Or. Cmty. Credit Union*,
371 Or. 772, 542 P.3d 24 (2023)....................11, 12

*Nails v. Case & Dusterhoff, LLP*,
No. 3:25-cv-00263-AN, 2025 WL 691314 (D. Or. Mar. 4, 2025)....................19

*Pinal Creek Grp. v. Newmont Mining Corp.*,
218 F.R.D. 652 (D. Ariz. 2003)....................23, 26

*Raymond v. S. Pac. Co.*,
259 Or. 629, 488 P.2d 460 (1971)....................16

*Riverside All of US or None v. City of Riverside*,
No. 5:23-cv-01536-SPG-SP, 2024 WL 5317261 (C.D. Cal. Nov. 22, 2024)............................9

*S. Pac. Transp. Co. v. City of Portland*,
75 Or. App. 149, 706 P.2d 1000 (1985)............................................................3, 20, 21

*Schwartz v. Christiana Tr.*,
2016 WL 3512441 (D. Or. June 2, 2016) ....................................................................4

*Shasta View Irrigation Dist. v. Amoco Chems. Corp.*,
329 Or. 151, 986 P.2d 536 (1999) ............................................................................19

*Smith v. Wallowa Cnty*,
145 Or. App. 341, 929 P.2d 1100 (1996)....................................................................15

*Stewart v. Am. Int'l Oil & Gas Co.*,
845 F.2d 196 (9th Cir. 1988) ....................................................................................8

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
No. C 10-3724 CW, 2013 WL 6671774 (N.D. Cal. Dec. 18, 2013)..........................................8

*United States v. One 1977 Mercedes Benz*, *450 SEL, VIN 11603302064538*,
708 F.2d 444 (9th Cir. 1983) ....................................................................................8

*Verizon Nw., Inc. v. Main St. Dev., Inc.*,
693 F. Supp. 2d 1265 (D. Or. 2010) .........................................................................14

**Statutes**

42 U.S.C. § 6972(a)(1)(B) ............................................................................................6

Or. Rev. Stat. § 12.080(3) .......................................................................................2, 18

Or. Rev. Stat. § 12.080(4) .......................................................................................2, 18

Or. Rev. Stat. § 12.020(1) ..........................................................................................18

Or. Rev. Stat. § 12.110(1) .......................................................................................2, 18

Or. Rev. Stat. § 12.115(1) ....................................................................................3, 19, 20

Or. Rev. Stat. § 31.600.........................................................................................1, 7, 11

Or. Rev. Stat. § 31.600(2) ..........................................................................................20

Or. Rev. Stat. § 31.600(2)(c).......................................................................................18

Or. Rev. Stat. § 31.800........................................................................................7, 11, 25

Or. Rev. Stat. § 31.800(1) ....... 16

Or. Rev. Stat. § 31.800(2) ....... 20

Or. Rev. Stat. § 468B.025(1)(b) ....... *passim*

Or. Rev. Stat. § 468B.025(2) ....... *passim*

Or. Rev. Stat. § 468B.050 ....... 13, 14

**Other Authorities**

Practice in Third-Party Actions—Pleading, 6 *Fed. Prac. & Proc. Civ.* § 1453 § 1453 (3d ed.) ....... 9

6 *Fed. Prac. & Proc.* § 1446 (1971 ed.) ....... 8

Fed. R. Civ. P. 12(b)(6) ....... 7, 8, 16

Fed. R. Civ. P. 14(a)(1) ....... 21

Fed. R. Civ. P. 14(a)(2)(A) ....... 8

Fed. R. Civ. P. 14(a)(4) ....... *passim*

Fed. R. Civ. P. 15(a) ....... 21

## MEMORANDUM IN SUPPORT

## I. INTRODUCTION

Third-Party Plaintiff Lamb Weston Holdings, Inc. ("Lamb Weston") attempts to escape its own alleged liability to Plaintiffs Michael Pearson, Jeffrey Fleming, James Suter, Silvia Suter, and Jessie Mohedano (collectively, "Plaintiffs") and the proposed Class Members[1] in Morrow and Umatilla Counties seeking relief from the alleged groundwater contamination impacting their drinking water (the "Underlying Action"). (*See generally* Plaintiffs' Third Amended Complaint ("TAC")). To do so, Lamb Weston first filed a Third-Party Complaint ("TPC") against Doe Third-Party Defendants. Following Plaintiffs' Motion to Strike (ECF 240-1), Lamb Weston amended its Third-Party Complaint ("ATPC") to implead two specific third-party defendants: (1) J.R. Simplot Company, LLC, ("J.R. Simplot") and (2) Shearer's Foods, LLC ("Shearer's") (collectively, the "Third-Party Defendants") for claims of apportionment and contribution, while "reserv[ing]" its right to amend its ATPC to further assert claims under RCRA. (*See* ATPC ¶ 32.). But Lamb Weston's ATPC, and particularly its allegations against Shearer's, fails to properly state a claim.

*First*, Lamb Weston's ATPC contains only four factual allegations against Shearer's that lack the specificity required under the Federal Rules of Civil Procedure to successfully plead causes of action for apportionment and contribution. (*See* ATPC ¶¶ 17–20.) If Lamb Weston properly pled its apportionment claim under Or. Rev. Stat. § 31.600 against the Third-Party Defendants, the jury in the Underlying Action would have to assess the fault between the parties and "apportion [Plaintiffs'] damages" between Lamb Weston, Shearer's, and the other Defendants. *Lasley v. Combined Transp., Inc.*, 351 Or. 1, 13, 261 P.3d 1215 (2011). But Lamb Weston has

[1] Although Plaintiffs allege Class Allegations in their Third Amended Complaint, the Court has not certified the class as of the time of this filing.

failed to allege even one element of each cause of action underlying its apportionment claim. Rather, Lamb Weston pleaded, "[i]f the conduct described by Plaintiffs…gives rise to tort liability to Defendants as Plaintiffs allege (see Plaintiffs' claims in the TAC…), then each Third-Party Defendant also is liable in tort…and must bear its proportionate share of any fault or liability." (ATPC ¶ 26). This "if me, then them" pleading is plainly insufficient. These insufficiencies are terminal to Lamb Weston's contribution claims under Oregon law as well. (ATPC ¶¶ 28–31.) Third-party plaintiffs are still required to fully plead all elements of a claim against a third-party defendant and cannot merely rely on the allegations of the underlying complaint. *See Encuentra v. Church & Dwight Co.*, No. 23-cv-02051-H-SBC, 2024 WL 1684897, * 6–8 (S.D. Cal. Apr. 17, 2024).

*Second*, the underlying causes of action to Lamb Weston's apportionment claim are barred against Shearer's under the statute of limitations and the statute of repose. Under Oregon law, claims of negligence and negligence per se are subject to a two-year statute of limitations. Or. Rev. Stat. § 12.110(1); *see also Adnan v. Whole Foods Mkt. Pac. Nw., Inc.*, No. CV 10-44-MO, 2010 WL 1335144, *2 (D. Or. Mar. 30, 2010). Claims of trespass and nuisance are subject to a six-year statute of limitations. Or. Rev. Stat. § 12.080(3)–(4). Lamb Weston alleges Shearer's and its predecessors land-applied nitrogen-bearing wastewater between 1997 and 2022,[2] but Lamb Weston only alleges facts that could support a claim that Shearer's land-applied wastewater with such elevated nitrate levels that could possibly give rise to liability from 2001-2010. Oregon law does not allow a third-party plaintiff to assert apportionment claims against a third-party defendant when the underlying claims against a party are time-barred. *Hogan v. United States*, No. 3:23-cv-

[2] The Shearer's plant at issue in the TPC closed in 2022, more than two years before this action was commenced, and over four years before Lamb Weston impleaded Shearer's. Presumably, that is why Lamb Weston limits its allegations to conduct ceasing by 2022.

00765-AB, 2024 WL 4471680, *4 (D. Or. Oct. 9, 2024). Further, under Or. Rev. Stat. § 12.115(1), a plaintiff cannot commence claims of negligent injury to a person or property "more than 10 years from the date of the act or omission complained of." *See Marshall v. PricewaterhouseCoopers, LLP*, 371 Or. 536, 538, 539 P.3d 766 (2023). Because Lamb Weston fails to allege that Shearer's land application practices caused increased groundwater nitrate levels after 2010, its apportionment claim is barred by the statutes of limitation and repose. Thus, even amending the ATPC will not afford Lamb Weston relief for these claims.

*Third*, Lamb Weston's contribution claim is, admittedly, premature. (*See* (ATPC ¶ 31.)); *see also S. Pac. Transp. Co. v. City of Portland*, 75 Or. App. 149, 152, 706 P.2d 1000 (1985); *Arkema Inc. v. Anderson Roofing Co., Inc.*, 719 F. Supp. 2d 1318, 1327 (D. Or. 2010) (citing *Abney-Revard, Inc. v. Associated Materials Inc.,* No. CV 05–528–PK., 2007 WL 1467302, *1 (D. Or. May 17, 2007)). Under Oregon law, an action for contribution is premature, "until the person seeking contribution has discharged the common liability." *S. Pac. Transp.*, 75 Or. App. at 152. Lamb Weston's claim is "not ripe" under Oregon law because its liability has not yet been determined in the Underlying Action. (ATPC ¶ 31.)

Even if this Court does not find dismissal of Lamb Weston's ATPC appropriate in this case, it should strike Lamb Weston's third-party claims under Federal Rule of Civil Procedure 14(a)(4). Shearer's joins and supplements Plaintiffs' Motion to Strike (ECF 260-1), filed on August 17, 2026, and hereby incorporates by reference all facts, arguments, and authorities therein as if fully set forth in this motion.

Alternatively, the Court should sever or try separately the Underlying Action from this one. Federal Rule of Civil Procedure Rule 14(a)(4) permits severance of third-party claims to prevent confusion, prejudice, or delay, and failure to sever Lamb Weston's third-party claims will result

in all three. *See Behroozi v. New Albertson's, Inc.*, No. 2:11-cv-00579-JCM-NJK, 2014 U.S. Dist. LEXIS 153288, at *5 (D. Nev. Oct. 24, 2014). *First*, litigating Lamb Weston's claims will create confusion because new, adjacent issues will be added to the dispute, derailing current case progress and detracting from Plaintiffs' Underlying Action. *Second*, it would prejudice both Shearer's and Plaintiffs to proceed with Lamb Weston's third-party claims. Shearer's is being thrown into litigation with significant uncertainty surrounding its liability, and Plaintiffs have already litigated the Underlying Action for nearly two-and-a-half years. In fact, the other parties to this litigation are so far into this case, a motion for summary judgment has been filed by certain defendants before Shearer's has even answered the ATPC. *Third*, it would result in significant and unreasonable delay not to sever Lamb Weston's third-party claims, for Shearer's will have to play "catch-up" to build its defenses, review the current discovery, and pursue its own supplemental discovery. Accordingly, the Court should sever Lamb Weston's third-party claims against Shearer's.

## II. BACKGROUND

Lamb Weston's ATPC contains a mere four-paragraph factual background alleging facts related to Shearer's. (*See* ATPC ¶¶ 17–20.) However, the Court should have a full understanding of the factual background from the more than two years of litigation thus far, so Shearer's relies on Plaintiffs' TAC (which Lamb Weston references in its ATPC against the Third-Party Defendants) to describe the facts below.[3] (*See* ATPC ¶ 26.) Based on Plaintiffs' TAC, the Underlying Action and this Action appear to be premised on the following facts:

[3] "On a motion to dismiss, the court may consider documents that are incorporated by reference into a plaintiff's complaint." *Schwartz v. Christiana Tr.*, 2016 WL 3512441, *3 (D. Or. June 2, 2016), *report and recommendation adopted*, 2016 WL 3512069 (D. Or. June 27, 2016), *aff'd,* 700 F. App'x 696 (9th Cir. 2017). Lamb Weston refers to Plaintiffs' TAC throughout the ATPC and, thus, the Court may consider the allegations contained therein on this motion. (*See* ATPC ¶ 26.)

The Lower Umatilla Basin Groundwater Management Area ("LUBGWMA") spans 562 square miles in northern Morrow and Umatilla Counties and received its name from the Oregon Department of Environmental Quality ("DEQ") based on the high levels of nitrate pollution in the groundwater. (TAC ¶ 7.) Nitrates are a by-product of nitrogen waste that has undergone a "microbial process" in the soil after disposal. (*Id.* ¶ 144.) Nitrates then "leach[] into groundwater, which then "moves downgradient from areas of high water pressure to low water pressure." (*Id.* ¶ 6.) Consumption of high levels of nitrates—in excess of 10mg/L—is harmful to human health and could lead to cyanosis, asphyxia, reproductive complications, kidney and spleen disorders, respiratory issues, and susceptibility to various cancers among other complications. (*Id.* ¶¶ 53–55.) Beginning in the mid-1990s, exposure to nitrates became of concern in the LUBGWMA's groundwater as nitrate concentrations increased. (*See id.* ¶ 68.) Groundwater well samples revealed nearly 30 percent of the LUBGWMA groundwater exceeded Oregon's 7 mg/L threshold of nitrate concentrations. (*Id.* ¶ 68.) Since then, the nitrate concentrations spread further throughout the LUBGWMA and increased in levels. (*See id.* ¶¶ 68–69.) A study conducted in 2015 and 2016 revealed that 48 percent of 255 wells tested exceeded 10 mg/L, and two thirds of the wells exceeded Oregon's 7 mg/L threshold. (*Id.* ¶ 69.) By the end of 2025, 4,500 residential wells had been tested, revealing that at least 31 percent tested for nitrates exceeding the hazardous limit. (*Id.* ¶ 71.)

Plaintiffs and proposed Class Members live in the LUBGWMA, with some having resided there for nearly three decades. (*Id.* ¶¶ 16, 26, 31, 38.) Each Plaintiff previously relied on private wells for household water, but over time their water exceeded safe nitrate concentration levels. (*Id.* ¶¶ 16, 18, 27, 31, 40.) Accordingly, Plaintiffs use bottled water for drinking and other household purposes. (*Id.* ¶¶ 21, 28, 35, 41.) This, Plaintiffs allege, causes great inconvenience, cost, and

concerns for their health. (*Id.* ¶¶ 23, 29, 36, 42.) As such, Plaintiffs filed suit against Port of Morrow (the "Port"), Lamb Weston, Madison Ranches, Inc., ("Madison Ranches"), Threemile Canyon Farms, LLC ("Threemile"), Portland General Electric Company ("PGE"), and Columbia River Processing, LLC ("Columbia River") (collectively, "Defendants") based on their "activities" "introducing large quantities of nitrogen-heavy waste" in the LUBGWMA area. (*Id.* ¶¶ 69, 76.)

Specifically, Lamb Weston operates a potato-processing facility and owns farmland in Umatilla County where it "land-applies" wastewater with high nitrogen levels generated by its potato-processing operations. (*Id.* ¶¶ 99–100.) Although Lamb Weston has a DEQ permit to operate a wastewater treatment facility where it stores and later disposes of the wastewater, Lamb Weston has violated its permit at least 90 times since 2015, dumping more than 220 tons of excess nitrates into nearby farmland in the LUBGWMA. (*Id.* ¶¶ 104–05.) Lamb Weston also applies excess fertilizer to its farmland, further contributing to the nitrate pollution. (*Id.* ¶ 110.) Plaintiffs' TAC alleges six causes of action against all Defendants: a RCRA citizen-suit claim under 42 U.S.C. § 6972(a)(1)(B) (Count I), negligence (Count II), negligence per se under Or. Rev. Stat. § 468B.025(1)(b) (Count III), negligence per se under Or. Rev. Stat. § 468B.025(2) (Count IV), trespass (Count V), and private nuisance (Count VI).

Even after their three amended complaints, Plaintiffs did not implead Shearer's in the Underlying Action. (*See generally* TAC.) Over two years after Plaintiffs initiated the Underlying Action, however, Lamb Weston filed this Action against Shearer's. (ATPC at 9.) Lamb Weston explains that Shearer's Snack Alliance site was located "adjacent to the Umatilla River, and upgradient of portions of the class area." (*Id.* ¶ 18.) During its seasonal operations between 1997 and 2022, Shearer's and its predecessors generated wastewater from its potato washing, peeling, slicing, waste elimination, and starch recovery. (*Id.* ¶¶ 17, 19.) Between 2001 and 2010

specifically, Lamb Weston asserts that annual wastewater application volumes ranged from 28.6 to 40 million gallons, with annual nitrogen loadings ranging from 34,784 to 55,544 pounds. (*Id.* ¶ 19.) Further, Lamb Weston alleges that nitrogen concentrations in the groundwater at the Shearer's Snack Alliance site ranged from 0.7 mg/L to 128 mg/L, but Lamb Weston fails to specify a timeframe for this data. (*Id.*) Based on the scant, aforementioned facts, and Shearer's alleged engagement "in the generation, handling, storage, treatment, transportation, land application, or disposal of nitrogen-bearing wastewater, waste, or materials within or adjacent to the LUBGWMA," Lamb Weston asserts its claims of apportionment under Or. Rev. Stat. § 31.600 (Count I) and contribution under Or. Rev. Stat. § 31.800 (Count II) should Lamb Weston be found liable in the Underlying Action.[4] (*Id.* ¶¶ 21–31.) But as will be shown below, these factual allegations are insufficient as a matter of law.

## III. <u>LAW AND ARGUMENT</u>

### A. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Eagle Star Rock Prods. LLC v. PCC Structurals, Inc.*, 756 F. Supp. 3d 1062, 1075-76 (D. Or. 2024). The purpose of this requirement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted) (cleaned up). The complaint's allegations must allow the court to "infer more than the mere possibility of misconduct." *Cordova v. FedEx Ground Package Sys., Inc.*, 104 F. Supp. 3d 1119, 1126 (D. Or. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

[4] Lamb Weston also "reserves the right to amend this Third-Party Complaint to assert a claim against any or all Third-Party Defendants under RCRA." (ATPC ¶ 32.). Shearer's does not address Lamb Weston's reservation of the right to amend beyond this footnote as it is not a pleaded claim.

Dismissal under Rule 12(b)(6) is appropriate when the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Eagle Star,* 756 F. Supp. 3d at 1076 (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). A court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* (citation and quotations omitted).

Fed. R. Civ. P. 14(a)(2)(A) allows a third-party defendant to "assert any defense against the third-party plaintiff's claim under Rule 12." Specifically, a third-party plaintiff must sufficiently plead that the third-party defendant's liability impacts the outcome of the underlying action and is secondary to such action. *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199 (9th Cir. 1988). A third-party claim will not survive a Rule 12 motion if it only arises from the same set of facts as the underlying action. *See id.* at 200 (citing 6 *Fed. Prac. & Proc.* § 1446 at 257 (1971 ed.)).

Further, Fed. R. Civ. P. 14(a)(4) provides that "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately." The Court exercises its "sound discretion" when deciding whether to dismiss a third-party defendant under Rule 14. *Int'l Nickel, Inc. v. Rudie Wilhelm Warehouse Co.,* No. CIV. 98-1319-KI., 1999 WL 375605 (D. Or. Apr. 29, 1999); *see also United States v. One 1977 Mercedes Benz*, *450 SEL, VIN 11603302064538*, 708 F.2d 444, 452 (9th Cir. 1983). Severance under Rule 14(a)(4) is appropriate to avoid potential confusion to the jury, prejudice to the parties, and undue delays. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-3724 CW, 2013 WL 6671774, *3 (N.D. Cal. Dec. 18, 2013); *see also Butler v. Unified Life Ins. Co.*, CV 17-50-BLG-SPW, 2020 WL 1164863, *2 (D. Mont. Mar. 11, 2020).

Here, dismissal of Lamb Weston's ATPC is warranted. Alternatively, the Court should strike, sever, or try separately Lamb Weston's claims against Shearer's, as the relevant factors support.

**B. Lamb Weston's Claims Fail Because Lamb Weston Does Not Plead Any Elements of the Alleged Causes of Action.**

Lamb Weston's claims for apportionment and contribution must fail because it attempts to—but cannot—rely on Plaintiffs' TAC to survive the pleading standard under the Federal Rules of Civil Procedure. A third-party plaintiff is required to fully plead all of the elements of a claim against a third-party defendant and cannot solely rely on the allegations of the original plaintiff's complaint. *See Riverside All of US or None v. City of Riverside*, No. 5:23-cv-01536-SPG-SP, 2024 WL 5317261, *3 (C.D. Cal. Nov. 22, 2024); *Encuentra v. Church & Dwight Co., Inc.*, No. 23-cv-02051-H-SBC, 2024 WL 1684897, *7 (S.D. Cal. Apr. 17, 2024); *see also* § 1453 Practice in Third-Party Actions—Pleading, 6 Fed. Prac. & Proc. Civ. § 1453 (3d ed.) ("A third-party complaint is subject to the pleading requirements of Rule 8 and must set forth a short and plain statement of the claim showing that defendant is entitled to relief from the third party."). When a third-party plaintiff fails to sufficiently plead factual allegations showing how the third-party plaintiff is liable based on the plaintiff's pleaded facts, the court may dismiss the complaint. *See Riverside*, 2024 WL 5317261, at * 3. To illustrate, in *Encuentra*, the third-party plaintiff failed to plead "essential element[s]" of its claims against the third-party defendant, including its claims for apportionment and contribution. *Encuentra*, 2024 WL 1684897, at *7. Instead, the third-party plaintiff merely alleged the third-party defendant "[was] the responsible party for the events at issue." *Id.* The court ruled this allegation insufficient to plead the third-party plaintiff's claims and dismissed the third-party complaint. *Id.*

Here, the Court should dismiss Lamb Weston's ATPC because, as in *Encuentra*, Lamb Weston fails to plead the essential elements of its two third-party claims. Rather, Lamb Weston only alleges the following:

- Shearer's Snack Alliance site (formerly known as the Snakcorp site) was a potato chip and cheese puff processing plant and wastewater treatment facility that operated seasonally and generated wastewater from potato washing, peeling, slicing, waste elimination, and starch recovery.

- Shearer's Snack Alliance site is located northeast of Madison Ranches, adjacent to the Umatilla River, and upgradient of portions of the class area.

- Between 1997 and 2022, Shearer's and its predecessors' process water was land applied at the facility's land application site on approximately 301 acres of cropland. Between 2001 and 2010, annual wastewater application volumes ranged from approximately 28.6 to 40 million gallons, and annual nitrogen loadings over that same time ranged from 34,784 to 55,544 lbs. Nitrogen concentrations in groundwater at the site range approximately from 0.7 mg/L to 128.2 mg/L.

- The DEQ has concluded that operations at this site had impacted groundwater quality based on nitrate levels at the site.

- If the conduct described by Plaintiffs…gives rise to tort liability to Defendants as Plaintiffs allege (see Plaintiffs' claims in the TAC Negligence, Negligence Per Se for Violation of ORS 468B.025(1)(b), Negligence Per Se for Violation of ORS 468B.025(2), Trespass and Private Nuisance), then each Third-Party Defendant also is liable in tort…and must bear its proportionate share of any fault or liability.

(ATPC ¶¶ 17–20, 26). Nowhere in its 11-page ATPC does Lamb Weston plead how Shearer's is a tortfeasor under any of the underlying claims outside of these general, conclusory statements. Because Lamb Weston seeks apportionment and contribution for Plaintiffs' claims of negligence, negligence per se, trespass, and private nuisance as against itself, Lamb Weston is required to plead the elements of each of these four underlying torts to establish Shearer's potential liability. But

Lamb Weston fails to properly allege the elements for each of the claims for which it seeks apportionment under Or. Rev. Stat. § 31.600 or contribution under Or. Rev. Stat. § 31.800, so its third-party complaint must be dismissed.

1. <u>Lamb Weston's Claims for Apportionment and Contribution Based on the Underlying Negligence Claim Fail Under Oregon Law.</u>

Under Oregon law, a plaintiff must allege the following for its negligence claim to survive a motion to dismiss:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Eagle Star*, 756 F. Supp. 3d at 1094 (quoting *Moody v. Or. Cmty. Credit Union*, 371 Or. 772, 784, 542 P.3d 24 (2023)). Here, Lamb Weston fails to allege how Shearer's conduct satisfies any of the five negligence elements under Oregon law. (*See generally* ATPC ¶¶ 17–20, 26.) This is because in its ATPC, Lamb Weston only pleads four short paragraphs pertaining to Shearer's and then a handful of conclusory allegations that basically assert that Shearer's is liable because it also land-applied wastewater purportedly rich in nitrogen, but nothing else. That alone is not tortious, nor grounds for liability to the Plaintiffs.

In stark contrast, Plaintiffs' TAC alleges sufficient facts to survive a motion to dismiss, specifically regarding its negligence claims. In their TAC, Plaintiffs allege that Lamb Weston caused a foreseeable risk of harm through its land-application processes, because "without first removing nitrogen from [its] waste," Lamb Weston would "pump[] [the water] from its processing facility to area farms and spray[] it onto the land." (TAC ¶ 101.) The TAC also alleges that Lamb Weston creates additional nitrate contamination from its application of excess fertilizer to its

farmland. (*Id.* ¶ 110.) Lamb Weston has been previously identified as "negligent" by the DEQ for its 90+ permit violations and the 220 tons of excess nitrates it dumped to nearby farmland. (*Id.* ¶ 105.) Lamb Weston's allegations against Shearer's pale in comparison to Plaintiffs' TAC, for the ATPC fails to specifically allege how any of Shearer's actions caused a foreseeable risk to the Plaintiffs. Thus, without more, Lamb Weston's apportionment and contribution claims based on Plaintiffs' underlying negligence claim cannot survive.

2. Lamb Weston's Claims for Apportionment and Contribution Based on the Underlying Claims of Negligence Per Se in Violation Of Or. Rev. Stat. § 468B.025(1)(b) and 468B.025(2) Fail Under Oregon Law.

Lamb Weston's claims for apportionment and contribution against Shearer's premised on the underlying negligence per se claims against Lamb Weston under Or. Rev. Stat. § 468B.025(1)(b) and § 468B.025(2) must also fail because Lamb Weston fails to plead how Shearer's alleged statutory violations caused Plaintiffs' harm. To state a claim of negligence per se, plaintiff must allege:

> (1) defendants violated a statute; (2) that plaintiff was injured as a result of that violation; (3) that plaintiff was a member of the class of persons meant to be protected by the statute; and (4) that the injury plaintiff suffered is of a type that the statute was enacted to prevent.

*Miller v. Goodyear Tire & Rubber Co.,* 434 F. Supp. 3d 877, 884 (D. Or. 2020) (quoting *McAlpine v. Multnomah Cnty.*, 131 Or. App. 136, 144, 883 P.2d 869 (1994)). Negligence per se "is a doctrine that affects the standard of care in a negligence action." *Eagle Star,* 756 F. Supp. 3d at 1094. Thus, "to make out a claim of negligence per se and take advantage of a presumption of negligence arising from a statutory violation, a plaintiff must show not only that the statute sets out an applicable standard of care, but also that the plaintiff has an existing negligence claim." *Moody*, 371 Or. at 782.

Lamb Weston fails to properly allege that Shearer's actions violated Or. Rev. Stat. § 468B.025(1)(b) and § 468B.025(2), and that those alleged violations resulted in harm to Plaintiffs. Section 468B.025(1)(b) provides that "no person shall…[d]ischarge any wastes into waters of the state if the discharge reduces the quality of such waters below the water quality standards established by rule for such waters by the Environmental Quality Commission." Lamb Weston alleges that Shearer's and its predecessors land-applied between 1997 and 2022—an action that in itself is not tortious—and that during the 2001–2010 timeframe, "annual wastewater application volumes ranged from approximately 28.6 to 40 million gallons," and "[n]itrogen concentrations in groundwater at the site range approximately from 0.7 mg/L to 128.2 mg/L." (ATPC ¶ 19.) But Lamb Weston fails to sufficiently plead how Shearer's alleged land application contributed to increased nitrogen concentrations during the 2001–2010 timeframe in violation of the statute. And even if it did, Lamb Weston's claim still fails because it does not allege any injury to the Plaintiffs, unlike the Plaintiffs' TAC. (*See* TAC ¶ 215.) Plaintiffs, on the other hand, allege in their TAC that they have been injured because the Defendants' violations "forc[ed] Plaintiffs and Class members who rely on private wells to either continually expose themselves to an unacceptably high risk of severe illness or rely on expensive and/or cumbersome alternative drinking water sources." (*Id.*) Without more, Lamb Weston's claim is deficient.

Lamb Weston's allegations for negligence per se under Or. Rev. Stat. § 468B.025(2) fare no better. Under Or. Rev. Stat. § 468B.025(2), "[n]o person shall violate the conditions of any waste discharge permit issued under ORS 468B.050." Again, Lamb Weston does not allege how Shearer's violated the statute. In fact, Lamb Weston's ATPC makes no reference to any discharge permits in its allegations against Shearer's that Shearer's could have possibly violated. (*See* ATPC ¶¶ 17–20, 21–27.) Further, Lamb Weston's ATPC fails to connect Shearer's alleged violations to

Plaintiffs' harm. Whereas in the TAC, Plaintiffs allege Lamb Weston has a Water Pollution Control Facilities Permit, pursuant to Or. Rev. Stat. § 468B.050, which allows Lamb Weston to operate a wastewater treatment facility at 78153 Westland Road, Hermiston, Oregon 97838. (TAC ¶ 104.) Plaintiffs further allege that Lamb Weston has violated its permit at least 90 times since 2015, and that "DEQ has referred to Lamb Weston's decision to allow unpermitted nitrogen onto farmland in the LUBGWMA as 'negligent,' saying the company 'failed to take reasonable care to avoid the foreseeable risk of committing the violation.'" (*Id.* ¶¶ 105-06.) As a result, "Plaintiffs have been injured" because "Defendants' conduct has rendered private wells unfit for use" and Plaintiffs and Class Members would have to "continually expose themselves to an unacceptably high risk of severe illness or rely on expensive and/or cumbersome alternative drinking water sources." (*Id.* ¶ 221.) These allegations are striking compared to those in Lamb Weston's ATPC, which fails to show how any of Shearer's land-application—which is not inherently tortious—caused any such violation of Or. Rev. Stat. § 468B.025(2).

Accordingly, Lamb Weston has not sufficiently pleaded the elements of a negligence per se claim and, thus, any apportionment and contribution claims premised on a negligence per se claim against Shearer's must be dismissed.

3. <u>Lamb Weston's Claims for Apportionment and Contribution Based on the Underlying Claim of Trespass Fail Under Oregon Law.</u>

Under Oregon law, trespass is an "actionable invasion of a possessor's interest in the exclusive possession of land." *Eagle Star*, 756 F. Supp. 3d at 1096. To survive a motion to dismiss, the plaintiff must allege that the defendant, without authorization or consent from the plaintiff, intentionally and physically intruded on plaintiff's property causing damage. *Id.* (quoting *Verizon Nw., Inc. v. Main St. Dev., Inc.*, 693 F. Supp. 2d 1265, 1278 (D. Or. 2010)). "A trespass is intentional if the acts setting in motion the invasion were done with the knowledge that a trespass

would result and not that the acts were done for the specific purpose of causing a trespass or injury." *Cereghino v. Boeing Co.,* 826 F. Supp. 1243, 1247 (D. Or. 1993) (citation and quotations omitted). Intentional trespass claims regarding groundwater contamination have failed when the plaintiff cannot establish the defendants intended the contaminants to migrate into the groundwater or that the defendants knew the disposal would result in such contamination. *See id.* Here, Lamb Weston fails to allege any facts that Shearer's intended the nitrogen contamination to pollute the Plaintiffs' groundwater or that Shearer's knew the alleged contamination would result from its actions. (*See* ATPC ¶¶ 17–27.) This differs from Plaintiffs' TAC where Plaintiffs allege Lamb Weston is "aware that nitrate contamination is a significant issue in the LUBGWMA," due to its support of the Water for Eastern Oregon nonprofit, which "seeks science-based solutions to the nitrate contamination problem." (TAC ¶ 108.) Lamb Weston merely relies on its conclusory allegation that if its conduct "gives rise to tort liability" then Shearer's "is also liable in tort under the same theories." (ATPC ¶ 26.) Thus, as above, Lamb Weston's apportionment and contribution claims arising from the underlying trespass claim asserted by Plaintiff must be dismissed.

4. Lamb Weston's Claims for Apportionment and Contribution Based on the Underlying Claim of Private Nuisance Fail Under Oregon Law.

"A private nuisance is an unreasonable non-trespassory interference with another's private use and enjoyment of land." *Mark v. State ex rel. Dep't of Fish & Wildlife,* 191 Or. App. 563, 572–73, 84 P.3d 155 (2004). To determine whether something constitutes a private nuisance, it must be considered whether there was a "'substantial and unreasonable interference with plaintiffs' enjoyment of their property." *Id.* at 573 (quoting *Smith v. Wallowa Cnty,* 145 Or. App. 341, 346, 929 P.2d 1100 (1996)); *see also Hay v. Oregon Dep't of Transp.*, 301 Or. 129, 135 (1986). Further, "the plaintiff must allege defendant's actions were intentional, negligent, reckless or an abnormally dangerous activity." *Frady v. Portland Gen. Elec. Co.,* 55 Or. App. 344, 347, 637 P.2d 1345 (1981)

(citing *Raymond v. S. Pac. Co.*, 259 Or. 629, 634, 488 P.2d 460 (1971)). A nuisance is intentional "if the defendant acts for the purpose of causing the invasion or if he knows that it is resulting or is substantially certain to result from his conduct." *Cereghino,* 826 F. Supp. at 1247 (quoting *Gronn v. Rogers Constr., Inc.,* 221 Or. 226, 231, 350 P.2d 1086 (1960)). Like its claim for trespass, Lamb Weston fails to allege any facts even suggesting that Shearer's intended for its land application of nitrate-rich wastewater to pollute the groundwater flowing onto Plaintiffs' land or that Shearer's knew the alleged contamination would result from its actions. (*See* ATPC ¶¶ 17–27.) Lamb Weston's ATPC also lacks any allegation indicating a "substantial and unreasonable interference with [Plaintiffs'] enjoyment of their property[,]" as required under Oregon law. *Mark*, 191 Or. App. at 573 (citation and quotations omitted). But Plaintiffs' TAC, on the other hand, alleges that "Defendants' disposal of wastewater, excess fertilizer, and animal waste has substantially and unreasonably interfered with Plaintiffs' and the Class's use and enjoyment of their land." (TAC ¶ 231.)

Again, Lamb Weston simply relies on its conclusory allegation that if its conduct "gives rise to tort liability" then Shearer's "is also liable in tort under the same theories." (ATPC ¶ 26.) As before, such sparse allegations are insufficient to overcome a Rule 12(b)(6) motion to dismiss, and Lamb Weston's apportionment or contribution claims premised on private nuisance must be dismissed.

1. <u>Independently, Lamb Weston's Contribution Claim Cannot Survive Rule 12(b)(6).</u>

Under Oregon law, a claim for contribution exists when "two or more persons become jointly or severally liable in tort for the same injury to person or property." Or. Rev. Stat. § 31.800(1). Contribution, however, can only exist "in favor of a tortfeasor who has paid more than a proportional share of the common liability, and the total recovery of the tortfeasor is limited

to the amount paid by the tortfeasor in excess of the proportional share." *Id.* at (2). While Lamb Weston's claim for contribution is unripe, as admitted and described below, (*see* Section III(D); *see also* ATPC ¶ 31), Lamb Weston *also* fails to allege facts sufficient to establish that Lamb Weston and Shearer's are jointly and severally liable for any injury to the Plaintiffs. Lamb Weston simply fails to plead how Shearer's' conduct is grounds for liability to Plaintiffs for their alleged harms. Thus, separate and apart from Lamb Weston's failure to plead Shearer's liability for any of the underlying tort claims asserted against Lamb Weston by Plaintiff, Lamb Weston also fails to plead the basic elements of contribution and, for this additional reason, the contribution claim should be dismissed.

* * *

As the Port of Morrow succinctly summarized in its pending summary judgment motion, the parties to this lawsuit[5] "have completed extensive fact and expert discovery, including 10 expert reports, numerous depositions, groundwater-flow analyses, well testing and records, and the exchange of hundreds of thousands of documents." (ECF 319 at 17). If Lamb Weston has any third-party cause of action against Shearer's, it should be able to state as much in its pleading, and the failure to do so at this late juncture should indicate to the court that its third-party claims are without merit and, thus, should be dismissed in full and with prejudice.

**C. Lamb Weston's Apportionment Claim is Barred By the Statute of Limitations and Statute of Repose.**

1. <u>Statute of Limitations.</u>

In addition to Lamb Weston's ATPC failing to plead the requisite elements of each of its causes of action, Lamb Weston is also not entitled to implead Shearer's for its apportionment claim

[5] Not including J.R. Simplot and Shearer's, having only recently been joined.

because the statute of limitations has run for each of the underlying claims. *See* Or. Rev. Stat. § 31.600(2)(c); *See Hogan*, 2024 WL 4471680, at *4 (quoting Or. Rev. Stat. § 31.600(2)(c) for the proposition that "there shall be no [apportionment] with any person…who is not subject to action because the claim is barred by a statute of limitation."). Both negligence and negligence per se claims "shall be commenced within two years" under Oregon law. *See* Or. Rev. Stat. § 12.110(1); *see also Adnan v. Whole Foods Mkt. Pac. Nw., Inc.*, No. CV 10-44-MO, 2010 WL 1335144, *2 (D. Or. Mar. 30, 2010). Further, Or. Rev. Stat. § 12.080(3)–(4) provides that actions for "trespass upon or for interference with or injury to any interest of another in real property...shall be commenced within six years." An action is "commenced" when the plaintiff files the complaint and serves the summons. *See* Or. Rev. Stat. § 12.020(1). For negligence claims specifically, "the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that…harm, causation, and tortious conduct[] exist[]." *Gaston v. Parsons*, 318 Or. 247, 256, 864 P.2d 1319 (1994).

Lamb Weston has no right to apportionment against Shearer's for its negligence, negligence per se, trespass, and private nuisance claims because the statute of limitations has run out on those claims if they were brought directly against Shearer's by Plaintiffs. Lamb Weston should have known about Shearer's existence and location near the LUBGWMA by February 2024—when Plaintiffs filed the Underlying Action against it—at the latest. But Lamb Weston argues that it only learned about Shearer's through Plaintiffs' expert report, produced on June 30, 2026. (ECF 297, at 4.) But that cannot be true. As Lamb Weston even alleges, Shearer's has operated in the LUBGWMA since 1997. (*See* ATPC ¶ 19.) Now, Lamb Weston attempts to bring this action for underlying claims of negligence and negligence per se more than two years later; it

cannot. The statute of limitations for negligence claims has run and thus Lamb Weston's claims against Shearer's are time-barred.

Moreover, Lamb Weston's own allegations support the idea that the statute of limitations has long-since run as against Shearer's on all of the underlying claims. Lamb Weston asserts that Shearer's and its predecessors' land-applied wastewater from 1997 to 2022—a fact that in and of itself is not tortious—but only refers to land application of wastewater with high nitrate concentration as occurring between 2001 and 2010. (*See* ATPC ¶ 19.). There are no allegations regarding land application and high-level nitrogen concentrations by Shearer's between 2010 and 2022. (*See id.*) There are no allegations or data to suggest Shearer's took any action after 2010 that contributed to the water contamination that is the subject of this litigation. Thus, based on the facts as Lamb Weston has alleged them, any claim of negligence, negligence per se, trespass, and private nuisance as against Shearer's should have been brought within two years after 2010 for the negligence claims and six years after 2010 for trespass and nuisance claims. Because the statute of limitations has run for all of the underlying claims, Lamb Weston is not entitled to relief.

2. <u>Statute of Repose.</u>

In addition to the statute of limitation, Oregon's statute of repose bars Lamb Weston's causes of action based in negligence. Under Or. Rev. Stat. § 12.115(1), "[i]n no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of." *See Marshall v. PricewaterhouseCoopers, LLP*, 371 Or. 536, 539, 539 P.3d 766 (2023) (quoting Section 12.115(1) and describing it as a "statute of ultimate repose"). This is true regardless of the date of discovery of the injury. *See Nails v. Case & Dusterhoff, LLP*, No. 3:25-cv-00263-AN, 2025 WL 691314, *3 (D. Or. Mar. 4, 2025); *see also Shasta View Irrigation Dist. v. Amoco Chems. Corp.*, 329 Or. 151, 162, 986 P.2d 536

(1999). An apportionment claim barred by the statute of repose cannot survive. Or. Rev. Stat. § 31.600(2).

While Lamb Weston alleges that Shearer's and its predecessors' land-application processes continued until 2022, it only—and barely—alleges that Shearer's potentially engaged in such conduct until 2010 at the latest. (*See* ATPC ¶¶ 17–20.) Lamb Weston alleges the annual wastewater application volumes and nitrogen loadings occurred from 2001–2010, but it fails to allege how Shearer's conduct injured the Plaintiffs and fails to allege tortious conduct after the 2010 time period. (*Id.* ¶ 19.) As established above, the underlying claims to Lamb Weston's apportionment claim sounds in negligence, as Plaintiffs allege negligence and negligence per se, and Plaintiffs' trespass and private nuisance claims sound in negligence as neither Plaintiffs nor Lamb Weston have alleged Shearer's committed intentional trespass or private nuisance. (*See* Section III(b)(iii)–(iv).) Further, Lamb Weston failed to allege these actions within 10 years as required by Or. Rev. Stat. § 12.115(1). The underlying claims are barred by the statute of repose under Section 12.115(1); and thus, Lamb Weston cannot pursue a cause of action for apportionment against Shearer's. *See Hogan*, 2024 WL 4471680, at *4.

### D. Lamb Weston's Contribution Claim Must Be Dismissed Because It Is Not Ripe For Adjudication.

Or. Rev. Stat. § 31.800(2) provides:

> The right of contribution exists only in favor of a tortfeasor who has paid more than a proportional share of common liability, and the total recovery of the tortfeasor is limited to the amount paid by the tortfeasor in excess of the proportional share. No tortfeasor is compelled to make contribution beyond the proportional share of the tortfeasor of the entire liability.

An action for contribution is premature, however, "until the person seeking contribution has discharged the common liability." *S. Pac. Transp. Co. v. City of Portland*, 75 Or. App. 149, 152,

706 P.2d 1000 (1985). Oregon courts have dismissed pleaded contribution claims that had not yet accrued. *Id.* at 152; *Arkema Inc. v. Anderson Roofing Co., Inc.*, 719 F. Supp. 2d 1318, 1327 (D. Or. 2010) (citing *Abney-Revard, Inc. v. Associated Materials Inc.,* No. CV 05–528–PK., 2007 WL 1467302, *1 (D. Or. May 17, 2007). The Court should thus dismiss Lamb Weston's contribution claim, for Lamb Weston admits its claim is "not ripe" under Oregon law. Not only has Lamb Weston's liability to Plaintiff not yet been determined in the Underlying Action, but whether or not Lamb Weston has been forced to pay Plaintiff *more* that its proportional share has also not occurred, nor is it certain to occur. (ATPC ¶ 31.) Thus, Count II of the ATPC should be dismissed.

### E. Shearer's Joins and Supplements Plaintiffs' Motion to Strike Under Rule 14(a)(4).

Shearer's joins Plaintiffs' Motion to Strike or in the Alternative, to Condition Lamb Weston's Amended Third-Party Complaint under Rule 14(a)(4) (ECF 260-1), filed on August 17, 2026, and hereby incorporates by reference all facts, arguments, and authorities there as if fully set forth in this motion. In addition to the reasons stated by Plaintiffs in their motion, the Court should strike Lamb Weston's ATPC for the following reasons.

*First*, as a procedural matter, Lamb Weston failed to timely file and seek leave to amend its ATPC with the Court. Under Fed. R. Civ. P. 14(a)(1), a party must "obtain the court's leave if it files [its] third-party complaint more than 14 days after serving its *original answer*." Thus, if a third-party plaintiff seeks to amend its third-party complaint, it must seek leave from the court to do so. *F.T.C. v. Cap. City Mortg. Corp.*, 186 F.R.D. 245, 247 (D.D.C. 1999) (holding that a third-party plaintiff must seek leave to file an amended third-party complaint when adding multiple new defendants). Lamb Weston filed its first TPC against Doe Third-Party Defendants on July 14, 2026 and 21 days later filed its ATPC, impleading J.R. Simplot and Shearer's, on August 4, 2026. (*See* ECF 238; ECF 244.) Lamb Weston wrongly assumes it is protected by Fed. R. Civ. P. 15(a), which

allows a party to amend its pleading once as a matter of course within 21 days of serving it. But courts have held that a third-party plaintiff seeking to amend its third-party complaint must seek leave from the court to do so, particularly in cases where the third-party plaintiff seeks to implead new third-party defendants. *See F.T.C.*, 186 F.R.D. 245, at 247.

*Second*, Shearer's will endure undue prejudice should Lamb Weston proceed with its third-party claims, which warrants striking the ATPC. If Lamb Weston's third-party claims against Shearer's proceed with the Underlying Action, Shearer's will be forced to defend and litigate a case in just 11 months, while the action has been proceeding for nearly two-and-a-half years. Given the extensive record in the Underlying Action, which keeps growing and includes "the exchange of hundreds of thousands of documents[,]" (ECF 319 at 17), Shearer's would need to play an intense game of "catch-up" to even be minimally prepared for trial. To require this of Shearer's, while abiding by the current case scheduling order would be unduly prejudicial. Shearer's would not be afforded the time it needs to develop its own meaningful defenses as all other Parties have done to date. Thus, Shearer's will likely have to move for a continuance to allow it to review the extensive record, engage in its own discovery processes and depositions, and work with experts. Without these opportunities, the prejudice to Shearer's warrants striking Lamb Weston's ATPC under Rule 14(a)(4). *See Blazevich v. Mass. Mut. Life Ins. Co.*, No. 5:25-cv-01319-SPG-MAA, 2026 U.S. Dist. LEXIS 183445, at *11–12 (C.D. Cal. Mar. 12, 2026).

*Third*, like Shearer's, Plaintiffs to the Underlying Action will suffer additional prejudice should the Court deny the motion to strike. Although Plaintiffs seek timely relief for their claims, they will be forced to derail their progress and conduct discovery regarding the Third-Party Defendants. Additional discovery of a party Plaintiffs chose not to bring into the Underlying Action on three separate occasions, with trial less than one year away is unduly burdensome.

*Finally*, striking Lamb Weston's ATPC is warranted given both the statute of limitations and statute of repose bar its claims of negligence, negligence per se, trespass, and private nuisance. (*See* Section III(C)(1)–(2)). As described above, Oregon law does not allow a third-party plaintiff to assert apportionment claims against a third-party defendant when the underlying claims against a party are barred by the statute of limitations or statute of repose. *Hogan*, 2024 WL 4471680, at *4; (*see also* Section III(C)(1)–(2)).

Accordingly, the Court should strike Lamb Weston's third-party claims against Shearer's to prevent such prejudice and delay of the Underlying Action under Rule 14(a)(4).

**F. In the Alternative, the Court Should Sever Lamb Weston's Third-Party Claims Against Shearer's to Prevent Confusion, Prejudice, and Undue Delay.**

A party may move to sever, strike, or try separately third-party claims when proceeding with such would cause confusion, prejudice to the other parties, or undue delay, and all three are likely possibilities should the Court allow Lamb Weston's third-party claim to proceed with the Underlying Action. *See* Fed. R. Civ. P. 14(a)(4). If the Court finds that dismissal is inappropriate in this case, the Court should alternatively sever and stay Lamb Weston's third-party claims against Shearer's. Generally, courts find it appropriate to separate proceedings regarding liability and damages in complex litigation—specifically in environmental contexts—due to their complexity. *See Pinal Creek Grp. v. Newmont Mining Corp.*, 218 F.R.D. 652, 658 (D. Ariz. 2003) (bifurcating CERCLA contribution trial into a liability phase and a damages/allocation phase). Thus, it is not necessary to adjudicate the Underlying Action and Lamb Weston's claims together, and severing the claims will prevent potential confusion, prejudice, and delay accordingly.

*First*, litigating Lamb Weston's third-party claims against Shearer's will cause confusion because impleading Shearer's will add new, adjacent issues to the dispute, derailing the two-and-a-half years of case progress and detracting from Plaintiffs' Underlying Action. Should the Court

allow Lamb Weston's third-party claims to proceed with the Underlying Action, Shearer's will need to add new issues, including but not limited to, Shearer's land-application practices while operating at the Shearer's Snack Alliance site, the location of Shearer's operations in the LUBGWMA beyond the mere allegation that Shearer's was "located northeast of Madison Ranches, adjacent to the Umatilla River, and upgradient of portions of the class area," (*See* ATPC ¶ 18), the harm Plaintiffs experience as a result of Shearer's alleged land-application, and the results of Shearer's ultimate expert analyses. Even worse, since the only allegations against Shearer's involve conduct prior to 2010, further delay may arise due to the potential need to locate witnesses with relevant knowledge from over 15 years ago. Adding these issues into the mix of a two-and-a-half year litigation will only cause confusion as these issues will be evaluated incongruently in comparison to the other Defendants' defenses and issues.

*Second*, it would prejudice both Shearer's and Plaintiffs to proceed with Lamb Weston's third-party claims. Shearer's is being thrown into litigation with significant uncertainty surrounding its liability, and yet Plaintiffs have litigated the Underlying Action for nearly two-and-a-half years. To date, each Party (*other* than Shearer's and J.R. Simplot) has conducted thorough discovery, taken witness and expert depositions, and has had the opportunity to meaningfully pursue and defend its case. Indeed, as stated earlier, "hundreds of thousands of documents" have been exchanged before Lamb Weston impleaded Shearer's. (ECF No. 319 at 17.) Further, to require Shearer's to enter this ongoing and ever-changing litigation and incur the expense of this litigation, especially with an unripe contribution claim, is unduly prejudicial. *See id.*; *see also* (ATPC ¶ 31.) It is worth noting that severance will not prejudice Lamb Weston, specifically regarding its contribution claim, because it cannot recover from its contribution claim until after its liability and proportionate share of contribution have been determined and paid.

*Third*, proceeding with Lamb Weston's third-party claims would result in significant and unreasonable delay to allow for Shearer's to play "catch-up" to properly build its defenses, review the current discovery, and pursue its own supplemental discovery—all of which it would be entitled to as a third-party defendant in this case. Since Plaintiffs filed the Underlying Action in February 2024, each Defendant has had the opportunity to build its defenses, conduct thorough discovery, take depositions of Plaintiffs and Plaintiffs' experts, and work with experts to evaluate class certification. (*See* ECF 273, at 1.) Discovery is set to substantially close on December 2, 2026 (less than three months away) and Shearer's has not had the opportunity to partake in any of this process, nor has it been able to make a dent in the 322 docket entries documenting the history of the Underlying Action. (*See id.*) Consequently, in order to meaningfully advocate for itself, Shearer's will move for a continuance of the current case scheduling order and the September 2027 trial to allow it the necessary time to build its case. This would cause significant delay for the parties—particularly Plaintiffs—who seek relief as soon as possible for their alleged injuries. The Court may, however, prevent such significant delay for Plaintiffs by severing Lamb Weston's third-party claims against Shearer's.

*Finally*, if and once Lamb Weston is found liable, the Court can proceed to adjudicate whether Shearer's is also liable for a portion of Lamb Weston's liability, and if so, later determine the amount Shearer's may be required to contribute to based on what Lamb Weston actually paid under Or. Rev. Stat. § 31.800. However, instead of evaluating Shearer's potential liability and contribution simultaneously with all other Defendants, the issues and hearing would be narrowed solely on Shearer's. Here, severance would promote judicial economy because it would prevent the Parties and the Court from expending the time and resources that comes with adding another party to the litigation, paying the additional discovery and motion practice, and further litigating a

contribution case that may even not occur, since it is contingent upon a liability determination that has not yet occurred. *See Pinal Creek Grp.,* 218 F.R.D. 652, at 657–58.

Accordingly, Shearer's respectfully requests the Court to alternatively sever the Underlying Action and Lamb Weston's third-party claims against Shearer's under Rule 14(a)(4).

## IV. CONCLUSION

For these reasons, Third-Party Defendant Shearer's respectfully requests that Third-Party Plaintiff Lamb Weston's Amended Third-Party Complaint be dismissed in its entirety, or in the alternative, that its claims be severed or tried separately from the Underlying Action. Shearer's further respectfully requests to join Plaintiffs' Motion to Strike Lamb Weston's Third-Party Complaint.

Dated: October 9, 2026 Respectfully submitted,

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ Deana S. Stein*
Deana S. Stein (*pro hac vice* admitted)
Vincent J. Michalec (*pro hac vice* application forthcoming)
Jane Wiertel (*pro hac vice* application forthcoming)
127 Public Square, Suite 4900
Cleveland, OH 44114-2378
(216) 363-4500
dstein@beneschlaw.com
vmichalec@beneschlaw.com
jwiertel@beneschlaw.com

Martha Payne (OSB85239)
225 Escondido
Lincoln City, OR 97367
(541) 961-7802
mpayne@beneschlaw.com

*Attorneys for Third-Party Defendant Shearer's Foods, LLC*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 8,275 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

*/s/ Deana S. Stein*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**Counsel for Plaintiffs**
Michael A Bliven
Bliven Law Firm, PC
704 South Main
Kalispell, MT 59901
Tel.: 406-755-6828
mike@blivenlawfirm.com

John Heenan
Heenan & Cook, PLLC
1631 Zimmerman Trail, Suite 1
Billings, MT 59102
Tel. 406-839-9091
john@lawmontana.com

Steve W. Berman
Meredith Simons
Sydney K. Thomas
Hagens Berman Sobol Shapiro LLP
1301 2nd Ave., Suite 2000
Seattle, WA 98101
Tel.: 206-623-7292
Email: steve@hbsslaw.com
merediths@hbsslaw.com
sydney.thomas@hbsslaw.com

**Counsel for Port of Morrow**
Amy Edwards
Misha Isaak
Ariel Stavitsky
Stoel Rives LLP
760 S.W. Ninth Ave., Suite 3000
Portland, OR 97205
Tel.: 503-224-3380
amy.edwards@stoel.com
misha.isaak@stoel.com
ariel.stavitsky@stoel.com

**Counsel for Columbia River Processing, LLC**

**Counsel for Lamb Weston Holdings, Inc.**
Bruno J. Jagelski
Yturri Rose, LLP
89 SW Third Avenue
P.O. Box S
Ontario, OR 97914
bjagelski@yturrirose.com

Amanda Groves
Jeff Wilkerson
Nathan R. Gilbert
Winston Taylor LLP
333 South Grand Ave., 38th Floor
Los Angeles, CA 90071
Tel.: (213) 615-1851
Amanda.Groves@winstontaylor.com
Jeff.Wilkerson@winstontaylor.com
Nathan.Gilbert@winstontaylor.com

**Counsel for Madison Ranches, Inc.**
Jennifer L. Gates
Heather C. Doherty
Pearl Legal Group PC
529 SW Third Ave., Suite 600
Portland, OR 97204
Tel.: 971-808-5666
jgates@pearllegalgroup.com
htourgee@pearllegalgroup.com

Jeffrey C. Misley
Steven F. Cade
Sussman Shank, LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205
Tel.: 503-227-1111
scade@sussmanshank.com
jmisley@sussmanshank.com

James H. Bolin
Kyle Miller

Sara C. Cotton
Alex Carroll
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 S.W. Fifth Avenue, Suite 1900
Portland, OR 97204
Tel.: 503.222.9981
scotton@schwabe.com
acarroll@schwabe.com

**Counsel for Portland General Electric**

Joshua M.F. Sasaki
Trajan Perez
Fabio Dwroschak,
Adrian Anderson
Miller Nash LLP
1140 SW Washington Street, Suite 700
Portland, OR 97205
Tel.: 503.224.5858
josh.sasaki@millernash.com
trajan.perez@millernash.com
fabio.dworschak@millernash.com
adrian.anderson@millernash.com

Butler Snow
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Tel.: 601-985-4595
jay.bolin@butlersnow.com
kyle.miller@butlersnow.com

**Counsel for Threemile Canyon Farm LLC**

Clifford S. Davidson
Drew L. Eyman
Snell & Wilmer LLP
601 SW Second Avenue, Suite 2000
Portland, OR 97204-3229
Tel.: 503.624.6800
cdavidson@swlaw.com
deyman@swlaw.com

John F. Stoviak
Erin Westbrook
Kayleigh Keilty
Jim Morsch
Saul Ewing LLP
1200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087-5569
Tel.: 610.251.5050
john.stoviak@saul.com
erin.westbrook@saul.com
kayleigh.keilty@saul.com
jim.morsch@saul.com

**Third-Party Defendant J.R. Simplot Company, LLC**

J. R. Simplot Company, LLC
Commercial 0152694
Corporation Service Company
1305 12th Ave Rd
Nampa, ID 83686
(Counsel has not yet entered an appearance)

/s/ *Deana S. Stein*
Deana S. Stein