**VICTOR Y. XU, OSB #223323**
**MARTEN LAW, LLP**
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Telephone: (503) 243-2200
vxu@martenlaw.com

**ALBERT P. BARKER, ISB #2867 (Admitted Pro Hac Vice)**
**MARTEN LAW, LLP**
101 S. Capitol Blvd., Suite 1200
Boise, Idaho 83702
Telephone: (208) 336-0700
abarker@martenlaw.com

*Attorneys for J. R. Simplot Company, LLC*

**IN THE UNITED STATES DISTRICT COURT,**

**DISTRICT OF OREGON**

**PENDLETON DIVISION**

| | |
|---|---|
| MICHAEL PEARSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PORT OF MORROW, et al.,<br><br>Defendants.<br><br>LAMB WESTON HOLDINGS, INC.,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>J. R. SIMPLOT COMPANY, LLC and SHEARER'S FOODS, LLC<br><br>Third-Party Defendants. | Case No. 2:24-cv-362-SI<br><br>**SIMPLOT'S MOTION TO DISMISS, STRIKE, AND SEVER THIRD-PARTY COMPLAINT** |

## LOCAL RULE 7.1(A) CERTIFICATION

Under Local Rule 7.1(a), counsel for J. R. Simplot Company, LLC reached out by telephone and email to counsel for Lamb Weston Holdings, Inc., advised them of Simplot's intent to file these motions, and made a good faith effort to confer regarding these motions, but opposing counsel had not responded, so counsel was unable to have any substantive conversations and unable to reach a resolution.

## MOTIONS

Third-Party Defendant J. R. Simplot Company, LLC moves to dismiss for failure to state a claim under Rule 12(b)(6), to strike under Rule 14(a)(4), and to sever under Rule 14(a)(4) the claims asserted against it in the Amended Third-Party Complaint filed by Third-Party Plaintiff Lamb Weston Holdings, Inc. (ECF 244).



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

# TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................1
II. FACTUAL AND PROCEDURAL BACKGROUND..................................................4
III. STANDARD OF REVIEW ......................................................................................6
  A. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ....................6
  B. MOTION TO STRIKE THIRD-PARTY COMPLAINT ..................................7
  C. MOTION TO SEVER THIRD-PARTY CLAIMS............................................8
IV. ARGUMENT .........................................................................................................9
  A. LAMB WESTON FAILS TO STATE A THIRD-PARTY CLAIM AGAINST SIMPLOT. ......................................................................................9
    1. Lamb Weston's third-party claims regarding land application practices that ended in 2004 that are based on alleged negligent injury are barred by the statute of repose. ..............................................................9
    2. Lamb Weston's third-party claims are barred by Oregon's right-to-farm act insofar as they aim to impose liability on Simplot for trespass and nuisance claims based on Simplot's farming operations. ....................12
    3. Lamb Weston has not adequately pleaded causation connecting Simplot's conduct to any Plaintiff's allegedly contaminated groundwater..........16
    4. Lamb Weston has not otherwise adequately pleaded Simplot's derivative liability through joint and several liability...........................................19
  B. ALTERNATIVELY, THE COURT SHOULD STRIKE LAMB WESTON'S THIRD-PARTY CLAIMS BECAUSE SIMPLOT'S ADDITION AT THIS ADVANCED STAGE OF PROCEEDINGS PREJUDICES BOTH PLAINTIFFS AND SIMPLOT, CONFUSES THE ISSUES, AND WASTES THE COURT'S AND THE PARTIES' RESOURCES ON UNMERITORIOUS CLAIMS. ...21
  C. THE COURT SHOULD SEVER ANY REMAINING THIRD-PARTY CLAIMS AGAINST SIMPLOT.......................................................................26
V. CONCLUSION.........................................................................................................28



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 6, 7, 19
*Behroozi v. New Albertson's, Inc.*, No. 2:11-cv-00579-JCM-NJK, 2014 WL 5469033, 2014 U.S. Dist. LEXIS 153288, at *5 (D. Nev. Oct. 24, 2014) ........ 8, 28
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 6, 7, 18
*Blazevich v. Mass. Mut. Life Ins. Co.*, No. 5:25-cv-01319, 2026 U.S. Dist. LEXIS 183445, at *11 (C.D. Cal. Mar. 12, 2026) ........ 24, 25
*Bond v. Solvay Specialty Polymers USA, LLC*, No. 1:20-CV-08487, 2023 WL 2237967, 2023 U.S. Dist. LEXIS 32426, *8 (D.N.J. Feb. 27, 2023) ........ 16
*Butler v. Unified Life Ins. Co.*, No. CV 17-50-BLG-SPW, 2020 WL 1164863, 2020 U.S. Dist. LEXIS 42450, at *6 (D. Mont. Mar. 10, 2020) ........ 28
*Cabalce v. VSE Corp.*, 914 F. Supp. 2d 1145 (D. Haw. 2012) ........ 26
*Cereghino v. Boeing Co.*, 826 F. Supp. 1243 (D. Or. 1993) ........ 12
*Cox v. Polk County*, 174 Or. App. 332, 335, 25 P.3d 970 (2001) ........ 14
*Crews v. Cnty. of Nassau*, 612 F. Supp. 2d 199 (E.D.N.Y. 2009) ........ 27
*DePaul v. Kimberly-Clark Corp.,* No. 3:24-CV-271 (KAD), 2026 U.S. Dist. LEXIS 65723, at *24 (D. Conn. Mar. 27, 2026) ........ 16
*Emp'rs Ins. v. Musick, Peeler & Garrett*, 954 F.2d 575 (9th Cir. 1992) ........ 27
*Friends of the Earth v. Crown Cent. Petroleum Corp.*, 95 F.3d 358 (5th Cir. 1996) ........ 16
*Gallagher & Kennedy PA v. City of Phx.*, No. 2:16-CV-4447-DAE, 2021 U.S. Dist. LEXIS 130077, at *18 (D. Ariz. July 13, 2021) ........ 26
*Gibson v. Morris*, 270 Or. App. 608, 613-14, 348 P.3d 1180 (2015) ........ 11
*Golden Bear Ins. Co. v. SBD Enters.*, 832 F. Supp. 3d 1163 (D. Mont. 2026) ........ 8
*Hampton Tree Farms v. Jewett*, 125 Or. App. 178, 193-94, 865 P.2d 420 (1993) ........ 19
*Hogan v. United States*, No. 3:23-cv-00765-HZ, 2024 WL 261758, 2024 U.S. Dist. LEXIS 12482, at *6 (D. Or. Jan. 22, 2024) ........ 12, 27
*Hood River County v. Mazzara*, 193 Or. App. 272, 278, 89 P.3d 1195 (2004) ........ 13
*Int'l Med. Tech., Inc. v. Lintech, LLC*, 203 F.R.D. 90 (S.D.N.Y. 2001) ........ 8
*Int'l Nickel Inc. v. Rudie Wilhelm Warehouse Co.*, Civil No. 98-1319-KI, 1999 U.S. Dist. LEXIS 6336, at *3 (D. Or. Apr. 29, 1999) ........ 8
*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ........ 7
*Lancaster Cnty. Agric. Pres. Bd. v. Fryberger*, 257 A.3d 192 (Pa. Commw. Ct. 2021) ........ 14
*Lunda v. Matthews*, 46 Or. App. 701, 705, 613 P.2d 63 (1980) ........ 11
*Manion v. United States*, No. CV-06-739-HU, 2006 WL 2990381, 2006 U.S. Dist. LEXIS 76028, at *21 (D. Or. Oct. 18, 2006) ........ 12
*Marshall v. PricewaterhouseCoopers, Ltd. Liab. P'ship*, 371 Or. 536, 539, 539 P.3d 766 (2023) ........ 10, 12
*McGanty v. Staudenraus*, 321 Or. 532, 551, 901 P.2d 841 (1995) ........ 11
*Millers Capital Ins. v. Hydrofarm, Inc.*, 340 F.R.D. 198 (D.D.C. 2022) ........ 8
*Nails v. Case & Dusterhoff, LLP*, No. 3:25-cv-00263-AN, 2025 WL 691314, 2025 U.S. Dist. LEXIS 38388, at *6 (D. Or. Mar. 4, 2025) ........ 10
*Port of Kalama v. M/V SM Mumbai*, No. 3:20-cv-00621-IM, 2020 WL 7398837, 2020 U.S. Dist. LEXIS 236549, at *5 (D. Or. Dec. 16, 2020) ........ 7
*Roberts v. Armscorp Cartridge Inc.*, 788 F. Supp. 3d 1145 (W.D. Wash. 2025) ........ 26
*Shasta View Irrigation Dist. v. Amoco Chems. Corp.*, 329 Or. 151, 162, 986 P.2d 536 (1999) .. 10
*Shell v. Schollander Cos.*, 358 Or. 552, 564, 369 P.3d 1101 (2016) ........ 12
*SHFL Entm't, Inc. v. Kardwell Int'l, Inc.*, No. 2:12-cv-8271-SVW-RZ, 2013 U.S. Dist. LEXIS 198658, at *9 (C.D. Cal. July 15, 2013) ........ 24
*Shockley v. Hoechst Celanese Corp.*, 132 F.R.D. 429 (D.S.C. 1990) ........ 26
*Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196 (9th Cir. 1988) ........ 7



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

*Sullivan v. Finn*, No. 16-cv-01948-WHO, 2016 U.S. Dist. LEXIS 107124, at *12 (N.D. Cal. Aug. 11, 2016) .......... 8, 22
*Tritz v. U.S. Postal Serv.*, 721 F.3d 1133 (9th Cir. 2013) .......... 18
*U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-3724 CW, 2013 WL 6671774, 2013 U.S. Dist. LEXIS 178526, at *22 (N.D. Cal. Dec. 18, 2013) .......... 28
*United States v. One 1977 Mercedes Benz*, 708 F.2d 444 (9th Cir. 1983) .......... 8, 19
*Valdez v. Farmington*, 580 F. Supp. 19 (D.N.M. 1984) .......... 27
*Zero Tolerance Entm't, Inc. v. Ferguson*, 254 F.R.D. 123 (C.D. Cal. 2008) .......... 24

**Statutes**

ORS 12.115(1) .......... 10, 12
ORS 30.930(2) .......... 13
ORS 30.932 .......... 13
ORS 30.933(2)(a) .......... 13
ORS 30.933(2)(c) .......... 13
ORS 30.936 .......... 16
ORS 30.936(1) .......... 13
ORS 30.936(2) .......... 13
ORS 31.600(2) .......... 9, 16
ORS 31.800(1) .......... 10, 16

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 6
Fed. R. Civ. P. 14(a)(2)(A) .......... 6
Fed. R. Civ. P. 14(a)(4) .......... 7



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

# I. INTRODUCTION

As the Court is aware, this is a complex class action lawsuit brought by four named Plaintiffs who have drinking water wells in the Lower Umatilla Basin Groundwater Management Area ("LUBGWMA") that they contend are contaminated by nitrates that were dumped or disposed of by the named Defendants through land application practices that are continuing to this day.

More than two and a half years into this litigation, with a trial set to start next year, Lamb Weston Holdings, Inc. ("Lamb Weston") filed its Amended Third-Party Complaint ("ATPC") against J. R. Simplot Company, LLC ("Simplot") and Shearer's Foods LLC ("Shearer's"), seeking apportionment of fault and contribution. Lamb Weston's third-party complaint against Simplot principally focuses on alleged conduct by Simplot that Lamb Weston agrees ended in 2004. Even then, Lamb Weston's sparse allegations do not satisfy its obligation to plead the grounds for entitlement to relief because Lamb Weston fails to plead facts showing any causal connection between Simplot's past or present alleged activities and Plaintiffs' alleged injuries, and Lamb Weston fails to plead why Simplot's alleged actions from decades ago injured Plaintiffs or entitle Lamb Weston to any relief. In addition, Lamb Weston's decision to try to bring Simplot into this proceeding at this late date unfairly prejudices both Simplot and Plaintiffs—disadvantaging Simplot in a case with over 300 docket entries, deep in discovery and motions practice, and an impending trial, and disadvantaging Plaintiffs by almost certainly delaying proceedings.

Lamb Weston cannot seriously argue that Simplot was an unknown in the basin or that Simplot's actions were not known to Lamb Weston. As far back as 2004, the Oregon Department of Environmental Quality ("DEQ") was conducting trend analyses of nitrates in the LUBGWMA.



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

DEQ prepared and published three trend analysis reports in 2004, 2007, and 2011.[1] The reports "describe[] a trend analysis of nitrate concentrations in groundwater monitoring wells at ten [twelve] sites operated by six facilities located in the [LUBGWMA] where food processor wastewater is treated through land application." Ex. 1 at vii (First Trend Analysis). The Port of Morrow and Lamb Weston were prominently identified in Sections 2 and 3 of those reports. But, also identified in the reports were Simplot and Snakcorp (the predecessor in interest to Shearer's). In fact, the allegations in Lamb Weston's ATPC about Simplot and Snakcorp appear to be lifted whole cloth from language in the DEQ Trend Analysis reports. *Compare* ATPC ¶¶ 10-16, *with, e.g.*, Ex. 3 at 4-1 to 4-15 (Third Trend Analysis). Given this historic knowledge, Lamb Weston has no justification for waiting so long after Plaintiffs' case has unfolded to attempt to bring Simplot into the case after Plaintiffs chose not to.

Moreover, Simplot is not in the same class of actors as Lamb Weston or the other Defendants, nor is it alleged to be. As Lamb Weston concedes and as DEQ's Trend Analysis Reports make clear, Simplot's potato processing plant shut down in 2004, and land application of potato process waste ended shortly thereafter. ATPC ¶ 10. DEQ also reported that in the 1990s and early 2000s, even before the shutdown, Simplot voluntarily implemented a whole range of best management practices. Ex. 3 at 4-1 (Third Trend Analysis). After the potato processing plant shut down, Simplot continued to apply cooling water from a Calpine cogeneration power plant near Hermiston to its fields, but it stopped applying any potato process waste. *Id. See also* ATPC

[1] *See* Simplot's Request for Judicial Notice and/or Incorporation by Reference; Ex. 1 (DEQ, *Trend Analysis of Food Processor Land Application Sites in the LUBGWMA* (2004)); Ex. 2 (DEQ, *Second Trend Analysis of Food Processor Land Application Sites in the LUBGWMA* (2007)); Ex. 3 (DEQ, *Third Trend Analysis of Food Processor Land Application Sites in the LUBGWMA* (2011)).

¶ 10 (Simplot facility shut down in 2004 but operates under a wastewater permit). As DEQ stated in its Trend Analysis Reports: "After expansion to the Levy farm in 2002, Simplot did not have enough nitrogen to fulfill the needs of all crops grown so they began applying commercial fertilizer at that time." Ex. 3 at 4-1. Shutting down its potato processing plant but continuing to operate its farms under a wastewater permit as alleged stand in stark contrast to the allegations against Lamb Weston and the Port of Morrow. *See, e.g.*, Third Am. Compl. ("TAC") ¶ 4 ("Defendants the Port of Morrow and Lamb Weston . . . each regularly dumps nitrogen-heavy wastewater in excess of permitted levels."); *id.* ¶¶ 82-98 (describing over 2,000 permit violations, including Class 1 violations, "the most severe violations the DEQ can assess," and millions of dollars in fines since 2007); *id.* ¶¶ 105-108 (describing 90 permit violations by Lamb Weston and DEQ's characterization of its behavior as "negligent").

Plaintiffs allege that Lamb Weston continues to land apply wastewater from its potato processing operations. *Id.* ¶ 100. Tellingly, Lamb Weston does not allege that Simplot continues to land apply potato process wastewater. ATPC ¶ 10. Similarly, neither Plaintiffs nor Lamb Weston allege any facts showing that Simplot has caused any harm to Plaintiffs' wells or water quality in their wells.

Under these circumstances, the Court should dismiss Lamb Weston's third-party claims against Simplot for failure to state a claim or strike the third-party claims because late filing of the ATPC significantly prejudices Simplot and Plaintiffs, injects additional complexity, and risks needlessly multiplying proceedings and delaying the case. If the Court does allow any portion of the third-party claims against Simplot to survive, the Court should sever and stay them until it fully resolves Plaintiffs' claims against Lamb Weston.



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs initiated this case on February 28, 2024, alleging that Lamb Weston and the other named Defendants contaminated their wells with nitrates from Defendants' land application or disposal practices and that "the actions of the Port of Morrow and Lamb Weston are particularly egregious." Compl. ¶ 6. Plaintiffs allege that DEQ characterized Lamb Weston as negligent and alleged that Lamb Weston sought to hide its violations. TAC ¶¶ 106-107. On August 4, 2026—three amended complaints, extensive written and deposition discovery, dozens of motions and orders (including two motions to dismiss filed by Defendants, Plaintiffs' motion for class certification and Defendants' oppositions to the motion, *Daubert* motions opposing Plaintiffs' hydrology expert, and a motion for summary judgment), and some 243 docket entries later—Lamb Weston filed its Amended Third-Party Complaint against Simplot and Shearer's, asserting two counts: (1) apportionment of fault under ORS 31.600, and, in the alternative, (2) contribution under ORS 31.800. ATPC ¶¶ 21-31.

Plaintiffs' TAC is extremely detailed regarding the actions of the Defendants complained of, the groundwater hydrology of the basin, and how Defendants' land application practices and the water flow from those practices have allegedly injured the Plaintiffs. The ATPC, on the other hand, contains only a handful of allegations specific to Simplot, ATPC ¶¶ 5, 10-16, which in material part state:

- From 1977 to 2004, Simplot generated "process wastewater" containing nitrogen at a potato processing facility and land-applied such wastewater to the "Simplot Plant Site" ("located east of the class area on the Umatilla River and upgradient of portions of the class area") beginning in 1977; the "Terrace Site" ("located east of the class area and upgradient of the alleged class area") beginning in 1981; the "Expansion Site" (located



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

"immediately northeast of Madison Ranches" and "largely within the class area" but no gradient is alleged) beginning in 1991; and the "Levy Site" (no location or gradient is alleged) beginning in 2002. *Id.* ¶¶ 5, 10-11. *See infra* Figure 1 for a map of these sites. For solely illustrative purposes, Simplot has superimposed the location of the four farms that Lamb Weston identifies in its ATPC on the relevant eastern portions of the aerial photo attached as Ex. A to Plaintiffs' TAC.

- "The facility permanently shut down in 2004, but JR Simplot continues to farm the sites and operate under a wastewater disposal permit." *Id.* ¶ 10.
- "The average total nitrogen concentration in process water from the JR Simplot facility between 1991 and 2000 was 146 mg/L." *Id.* ¶ 12.
- "Process water from JR Simplot is also received and land-applied by Madison Ranches." *Id.* ¶ 15.
- "The DEQ recently issued JR Simplot a penalty for alleged exceedances of the agronomic rates." *Id.* ¶ 16.

Lamb Weston also asserts that "each Third-Party Defendant also is liable in tort under the same theories asserted by Plaintiffs against Lamb Weston." *See, e.g., id.* ¶ 26. But Lamb Weston makes no effort to outline in its pleadings how Simplot's decades-old actions complained of have injured Plaintiffs, or make the kind of detailed allegations about Simplot similar to those Plaintiffs allege about Lamb Weston in the TAC, or make any factual allegations sufficient to raise Lamb Weston's claimed right to relief above the speculative level.



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200




*Figure 1: Map of Simplot Properties Identified by ATPC, Superimposed on TAC, Ex. A*

## III. STANDARD OF REVIEW

### A. Motion to Dismiss for Failure to State a Claim

Rule 14 allows a third-party defendant to "assert any defense against the third-party plaintiff's claim under Rule 12." Fed. R. Civ. P. 14(a)(2)(A). Under Rule 12, a complaint must be dismissed if it fails to state a claim. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Port of Kalama v. M/V SM Mumbai*, No. 3:20-cv-



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

00621-IM, 2020 WL 7398837, 2020 U.S. Dist. LEXIS 236549, at *5 (D. Or. Dec. 16, 2020) (Immergut, J.) (applying plausibility standard to third-party complaint). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A "sheer possibility that a defendant has acted unlawfully" is not enough. *Id.* Courts need "not assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Twombly*, 550 U.S. at 563. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. In deciding a motion to dismiss under Rule 12(b)(6), the Court may consider the pleadings, matters subject to judicial notice, and documents incorporated by reference in the pleadings without transforming the motion into one for summary judgment. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-99, 1002-03 (9th Cir. 2018).

For a third-party claim, a defendant must plausibly plead that "the third party's liability is in some way dependent on the outcome of the main claim and is secondary or derivative thereto." *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199 (9th Cir. 1988); *id.* at 200 ("The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff. The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough." (citing 6 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1446 (1971 ed.)).

### B. Motion to Strike Third-Party Complaint

If a defendant files a third-party complaint, "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4); *see also* 6 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1443 (3d ed.) ("[W]hether a third-party defendant may



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

be impleaded under Rule 14 continues to be a question addressed to the sound discretion of the trial court . . . [W]hen the third-party claim is instituted within the fourteen-day period[,] the case against permitting impleader must be made on a motion to strike the third-party claim."); *Sullivan v. Finn*, No. 16-cv-01948-WHO, 2016 U.S. Dist. LEXIS 107124, at *12-13 (N.D. Cal. Aug. 11, 2016) (Rule 14(a)(4) motion to strike is proper "even where the defendant need not obtain leave of the court" to file third-party complaint). "The decision to dismiss a third-party defendant impleaded under Rule 14 is left to the sound discretion of the district court." *Int'l Nickel Inc. v. Rudie Wilhelm Warehouse Co.*, Civil No. 98-1319-KI, 1999 U.S. Dist. LEXIS 6336, at *3 (D. Or. Apr. 29, 1999); *see also United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir. 1983). Among the relevant considerations are "prejudice to the other parties, complication of the issues, undue delay, the merits of the underlying action, and the merits of the third-party complaint," *Golden Bear Ins. Co. v. SBD Enters.*, 832 F. Supp. 3d 1163, 1170-71 (D. Mont. 2026), as well as "whether prejudice will result to the third party defendant," *Int'l Med. Tech., Inc. v. Lintech, LLC*, 203 F.R.D. 90, 91 (S.D.N.Y. 2001) (internal quotation marks omitted); *Millers Capital Ins. v. Hydrofarm, Inc.*, 340 F.R.D. 198, 210 (D.D.C. 2022) (similar).

### C. Motion to Sever Third-Party Claims

Severance of third-party claims is proper under Rule 14(a)(4) "if confusion or prejudice would otherwise result." Fed. R. Civ. P. 14 Advisory Committee Note to 1963 Amendment; *Behroozi v. New Albertson's, Inc.*, No. 2:11-cv-00579-JCM-NJK, 2014 WL 5469033, 2014 U.S. Dist. LEXIS 153288, at *5 (D. Nev. Oct. 24, 2014) ("Courts have severed third-party claims pursuant to Rule 14(a)(4) when, *inter alia*, not doing so would significantly delay resolution of the underlying claims and create a risk of jury confusion.").



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

## IV. ARGUMENT

### A. Lamb Weston fails to state a third-party claim against Simplot.

Lamb Weston's ATPC should be dismissed for failure to state a claim for at least four reasons. First, Lamb Weston's third-party claims against Simplot attempt to pass-through Plaintiffs' claims against Lamb Weston. Plaintiffs allege a RCRA claim (which is not asserted by Lamb Weston against Simplot), negligence, two negligence *per se* counts, trespass, private nuisance, and inverse condemnation (solely against the Port of Morrow). Lamb Weston's third-party claims against Simplot thus arise from negligence, trespass, and nuisance causes of action, and are primarily alleged to relate to practices of land applying potato processing waste that ended decades ago. ATPC ¶¶ 10-14. All claims based on "negligent injury" (whether the claims are pleaded as negligence, trespass, or nuisance) are barred by the statute of repose. Second, Oregon's right-to-farm act bars Lamb Weston's trespass and nuisance claims because they target Simplot's normal farming operations. ATPC ¶ 10 ("Simplot continues to farm the sites…") Third, Lamb Weston's sparse pleading fails to allege any facts that causally connect any alleged releases by Simplot to any alleged injury suffered by any Plaintiff. Fourth, Lamb Weston fails to plausibly plead that Simplot otherwise has any liability derivative of a common liability shared by Lamb Weston.

#### 1. Lamb Weston's third-party claims regarding land application practices that ended in 2004 that are based on alleged negligent injury are barred by the statute of repose.

No comparison of fault is permitted, and no right of contribution exists, as to a third-party defendant who cannot be liable to a plaintiff due to a statute of repose. *See* ORS 31.600(2) ("[T]here shall be no comparison of fault with any person: . . . (c) Who is not subject to action



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

because the claim is barred by a statute of limitation or statute of ultimate repose."); ORS 31.800(1) ("There is no right of contribution from a person who is not liable in tort to the claimant.").

ORS 12.115(1) provides: "In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of." This is a statute of repose. *See Marshall v. PricewaterhouseCoopers, Ltd. Liab. P'ship*, 371 Or. 536, 539, 539 P.3d 766, 767 (2023) (characterizing ORS 12.115(1) as "statute of ultimate repose"). A statute of repose like ORS 12.115(1) applies regardless of the date of discovery of an injury. *Id.* at 539; *Nails v. Case & Dusterhoff, LLP*, No. 3:25-cv-00263-AN, 2025 WL 691314, 2025 U.S. Dist. LEXIS 38388, at *6 (D. Or. Mar. 4, 2025) ("[A] statute of ultimate repose requires a plaintiff to bring a claim of negligent injury to person or property within ten years, regardless of the date of discovery of the injury." (citing ORS 12.115)); *Shasta View Irrigation Dist. v. Amoco Chems. Corp.*, 329 Or. 151, 162, 986 P.2d 536, 542 (1999) ("Statutes of ultimate repose set maximum times to file a claim, regardless of the date of discovery of an injury or other circumstances that may affect the expiration of a statute of limitations.").

Lamb Weston alleges that Simplot ceased applying wastewater from its potato processing facility by 2004, over two decades ago. ATPC ¶ 10; *see also* Exs. 1-3 (First, Second, and Third Trend Analyses). Lamb Weston alleges that Simplot engaged in land application of process wastewater and resulting nitrogen loading from 1991 to 2000. ATPC ¶¶ 12-13. In other words, Lamb Weston acknowledges that Simplot is no longer engaging in the type of land application practices used by Lamb Weston, the Port of Morrow, and the other Defendants, and that Simplot has not engaged in those practices for over twenty years. DEQ agrees. As DEQ recently explained Simplot's "facility is no longer food processing; the wastewater [for which Simplot still has a



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

permit] is low nitrogen, and the facility currently manages land application of non-contact cooling water from a cogeneration plant." Ex. 4 at 67 (Oregon Nitrate Reduction Plan). Lamb Weston alleges (which allegations mirror the statements in DEQ's Trend Analysis Reports) amounts of wastewater applied and concentrations of nitrogen in Simplot's process wastewater in the 1990s and 2000, *see* ATPC ¶¶ 12-13, but Lamb Weston doesn't allege how that practice from decades ago injures Plaintiffs. Lamb Weston alleges that DEQ concluded that land application at the Simplot farms impacted groundwater quality. *Id.* ¶ 14. This allegation is also lifted from DEQ's Trend Analysis Reports. But neither the reports nor Lamb Weston's allegations explain what part or area of the basin's groundwater was impacted by Simplot's properties or whether that former practice now affects groundwater in the class area. More importantly, the ATPC doesn't allege how or even if the area that DEQ found to be impacted over fifteen years ago is connected to the class area or the Plaintiffs' current injuries.

Plaintiffs' damages claims against Lamb Weston largely allege a negligent injury to Plaintiffs. Count II alleges negligence, and Count IV alleges negligence per se based on ORS 468B.025(2). Count V alleges trespass, and Count VI alleges private nuisance. These counts also sound in negligence, in large part. *See Gibson v. Morris*, 270 Or. App. 608, 613-14, 348 P.3d 1180, 1183 (2015) (explaining standards for intentional and negligent trespass and nuisance under Oregon law); *Lunda v. Matthews*, 46 Or. App. 701, 705, 613 P.2d 63, 66 (1980) ("A trespass may arise from an intrusion upon plaintiffs' land which is either intentional, negligent or the result of ultrahazardous conduct."); *McGanty v. Staudenraus*, 321 Or. 532, 551, 901 P.2d 841, 853 (1995) (adopting Restatement (Second) of Torts § 8A and comments a and b, which provide that intent is used to "denote that the actor desires to cause consequences of his act, or that he believes that the



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

consequences are substantially certain to result from it"). Thus, claims for negligent trespass and nuisance more than ten years old are barred by the statute of repose. *See Cereghino v. Boeing Co.*, 826 F. Supp. 1243, 1249 (D. Or. 1993) (negligent trespass and nuisance claims were barred by ORS 12.115); *Manion v. United States*, No. CV-06-739-HU, 2006 WL 2990381, 2006 U.S. Dist. LEXIS 76028, at *21-25 (D. Or. Oct. 18, 2006) (finding amendment to allege negligent trespass claim would be futile because claim would be barred by ORS 12.115).

Neither Plaintiffs nor Lamb Weston has alleged that Simplot has committed any intentional trespass or nuisance or that Simplot is engaged in any ultrahazardous activity. Any claims arising from Simplot's alleged wastewater disposal from land application of its potato process water in the 1990s and 2000s, which concededly ceased over twenty years ago, are barred by the ORS 12.115(1) statute of repose. *See, e.g.*, *Marshall*, 371 Or. at 558 (negligently caused economic injury occurring 14 years before suit barred by ORS 12.115(1)); *Shell v. Schollander Cos.*, 358 Or. 552, 564, 369 P.3d 1101, 1108 (2016) (plaintiff's negligence claims accruing over ten years before suit were barred by ORS 12.115(1)). Hence, all third-party claims derivative of any of Plaintiffs' claims for negligent injury are likewise barred under ORS 31.600(2) and ORS 31.800(1). *Cf. Hogan v. United States*, No. 3:23-cv-00765-HZ, 2024 WL 261758, 2024 U.S. Dist. LEXIS 12482, at *6-7 (D. Or. Jan. 22, 2024) (comparison of fault with third-party defendants under ORS 31.600(2) not permitted where "the statute of limitations for negligence claims against Third Party Defendants has expired").

**2. Lamb Weston's third-party claims are barred by Oregon's right-to-farm act insofar as they aim to impose liability on Simplot for trespass and nuisance claims based on Simplot's farming operations.**

Oregon's right-to-farm law declares as the policy of the state that "[f]arming practices on lands zoned for farm use must be protected" and that "[p]ersons who locate on or near an area



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

zoned for farm . . . use must accept the conditions commonly associated with living in that particular setting." ORS 30.933(2)(a), (c). To that end, the law provides: "No farming or forest practice on lands zoned for farm or forest use shall give rise to any private right of action or claim for relief based on nuisance or trespass." ORS 30.936(1). Among the claims barred are any "actions or claims based on . . . use of crop production substances." ORS 30.932. The only exceptions to the right-to-farm law's immunity are for damage to commercial agricultural products or death or serious physical injury, ORS 30.936(2), which are not alleged here by either Plaintiffs or Lamb Weston.

Simplot is engaged and has been engaged for over twenty years in normal irrigating and farming activities by delivering raw water and Calpine's low-nitrate cooling water to farm fields in the Hermiston area. *See* ATPC ¶ 10 ("Simplot continues to farm the sites…"); Exs. 1-3 (Trend Analysis Reports). It is not disposing of potato process wastewater.

Insofar as Lamb Weston's third-party claims against Simplot are derivative of Plaintiffs' trespass or nuisance claims (Counts V and VI of the TAC) and target Simplot's application of water and fertilizer to its farmland, they are barred under ORS 30.936(1). "Farming practice" is defined broadly. *See* ORS 30.930(2) ("'Farming practice' means a mode of operation on a farm that: (a) Is or may be used on a farm of a similar nature; (b) Is a generally accepted, reasonable and prudent method for the operation of the farm to obtain a profit in money; (c) Is or may become a generally accepted, reasonable and prudent method in conjunction with farm use; (d) Complies with applicable laws; and (e) Is done in a reasonable and prudent manner."); *see also Hood River County v. Mazzara*, 193 Or. App. 272, 278, 89 P.3d 1195, 1199 (2004) (reversing where trial court found "six hours of dog barking could not be a recognized farming practice" under right-to-farm



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

act). Application of fertilizer to farmland constitutes a "farming practice" within the meaning of ORS 30.930(2) and may not be challenged by Lamb Weston. *Cf. Lancaster Cnty. Agric. Pres. Bd. v. Fryberger*, 257 A.3d 192, 205 n.17 (Pa. Commw. Ct. 2021) (recognizing "distribution of treated wastewater through an irrigation system" as a "normal agricultural operation" under Pennsylvania's right-to-farm law, 3 Pa. Stat. § 952); *Cox v. Polk County*, 174 Or. App. 332, 335, 25 P.3d 970, 972-73 (2001) (remanding with instructions to affirm county decision "that using recycled wastewater to irrigate tree plantations was an accepted farming practice" under zoning and revenue & tax laws). Nor has Lamb Weston alleged facts establishing that Simplot over-applies fertilizer to its farmland. Lamb Weston alleges that Simplot "continues to farm the sites," ATPC ¶ 10, and that "DEQ recently issued Simplot a penalty for alleged exceedances of the agronomic rates," *id.* ¶ 16, but this falls far short of plausibly pleading Simplot's third-party trespass or nuisance liability, particularly in light of Oregon's right-to-farm law.

Lamb Weston's allegation regarding a DEQ penalty could only refer to a Notice of Violation issued by DEQ to Simplot on March 10, 2026. *See* Ex. 5. In relevant part, DEQ alleged eight instances in 2023 and 2024 in which Simplot exceeded approved crop-specific agronomic rates for nitrogen. *Id.* ¶ 5. On June 4, 2026, DEQ withdrew its allegations on five of these claims, leaving only three alleged instances at the Levy site. Ex. 6. Lamb Weston makes no allegations about the Levy site, other than that process wastewater was applied there in 2002, but Lamb Weston fails to allege that any activities at the Levy site contributed to Plaintiffs' injuries. Nor does Lamb Weston allege that the Levy site is upgradient. *See* ATPC ¶¶ 10-11; Ex. 6. Lamb Weston does not allege that DEQ issued Simplot any notices other than this "recently issued" penalty arising from an irrelevant property. And other than this instance at the Levy site, Lamb



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

Weston does not allege that Simplot exceeded agronomic rates on any farm fields since the processing plant shut down over twenty years ago.

For comparison, Plaintiffs alleged that Defendant Threemile Canyon Farms, LLC land-applied animal waste year-round, "purely for disposal purposes," TAC ¶ 125; routinely land-applied "high nitrogen effluent" "in excess of a given crop's agronomic rate," *id.* ¶ 126; specifically over-applied fertilizer for wheatlage, *id.*, and organic dry corn, *id.* ¶ 127, on specified dates and in specified quantities; discharged manure and wastewater from storage lagoons, *id.* ¶ 129; and thereby knowingly contributed to the nitrate contamination in the LUBGWMA, *id.* ¶¶ 128, 130. Likewise, Plaintiffs alleged in detail Lamb Weston's practice of pumping "high-nitrogen wastewater to nearby farms," including Lamb Weston's 1,180 acres of farmland, "year-round, including during the winter, when most fields lie fallow and no crops benefit from the nitrogen." *Id.* ¶¶ 100, 102. Lamb Weston has allegedly "violated its permit at least 90 times: 11 times in 2015, 20 times in 2016, 6 times in 2017, 14 times in 2018, 18 times in 2019, 18 times in 2020, and 3 times in 2021." *Id.* ¶ 105. "Lamb Weston has dumped more than 220 tons of excess nitrates to nearby farmland," incurring $127,800 in DEQ fines. *Id.* Allegedly, Lamb Weston also applies "excess fertilizer to its farmland," causing "almost 2.3 million pounds of nitrogen to leach into the soil every year." *Id.* ¶¶ 110, 112.

In contrast, neither Plaintiffs nor Lamb Weston allege that Simplot routinely misuses or applies fertilizer or process water year-round. Lamb Weston only claims that Simplot was charged a penalty relating to three recent alleged exceedances of agronomic rates. ATPC ¶ 16. And these allegations relate to a single farm. Lamb Weston's sparse allegations establish that Simplot's alleged conduct is protected from third-party nuisance or trespass liability under Oregon's right-



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

to-farm law. *See* ORS 31.600(2) ("[T]here shall be no comparison of fault with any person: . . . (a) Who is immune from liability to the claimant."); ORS 31.800(1) ("There is no right of contribution from a person who is not liable in tort to the claimant."); ORS 30.936 (section is titled "Immunity from private action based on farming or forest practice on certain land").

**3. Lamb Weston has not adequately pleaded causation connecting Simplot's conduct to any Plaintiff's allegedly contaminated groundwater.**

The full extent of Lamb Weston's allegations seeking to tie Simplot to injuries alleged by Plaintiffs is that two of Simplot's farms, the Simplot Plant Site and the Simplot Terrace Site, are located east and "upgradient" of the class area. ATPC ¶ 11. These sorts of "water flows downstream" allegations are routinely rejected by courts as inadequate at the pleading stage in environmental contamination cases. *See Bond v. Solvay Specialty Polymers USA, LLC*, No. 1:20-CV-08487, 2023 WL 2237967, 2023 U.S. Dist. LEXIS 32426, *8-9 (D.N.J. Feb. 27, 2023) (characterizing as "speculative" and "conclusory" plaintiffs' allegations that contaminants were carried by "ambient winds" across "large distances which easily included Plaintiffs' residences and the surrounding neighborhoods"); *DePaul v. Kimberly-Clark Corp.,* No. 3:24-CV-271 (KAD), 2026 U.S. Dist. LEXIS 65723, at *24-25 (D. Conn. Mar. 27, 2026) ("isolated allegations about what [a contaminant] can or might do . . . shed[] no light on what is actually happening"); *cf. Friends of the Earth v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 361 (5th Cir. 1996) (where plaintiff "relied solely on the truism that water flows downstream and inferred therefrom that any injury suffered downstream is 'fairly traceable' to unlawful discharges upstream," plaintiff failed to establish causation for standing purposes, and defendant was entitled to summary judgment). As for the other two farms Lamb Weston identifies, the Expansion Site and the Levy Site, Lamb Weston alleges nothing at all about causation—nor does Lamb Weston even allege that they are



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

upgradient of the class area. ATPC ¶¶ 10-11 (alleging only that "[t]he Simplot Expansion Site is located immediately northeast of Madison Ranches and largely within the class area."); *id.* ¶ 14 (alleging DEQ concluded land application at Simplot's sites "impacted groundwater quality," but not alleging any connection to the class area or Plaintiffs); *id.* ¶ 16 (alleging a DEQ penalty for land application above agronomic rates, but not alleging any connection to the class area or Plaintiffs). In addition, the DEQ Third Trend Analysis Report specifically states that groundwater flow under the Expansion Site is north and northeast and the flow from the Levy Site is to the northeast, away from the class area and away from these two farms. Ex. 3 at 4-13, 4-18. That known gradient likely explains why Lamb Weston did not allege these sites are upgradient. Furthermore, Lamb Weston does not plead anything to the contrary about the flow under the Expansion Site or the Levy Site. Pleading that two Simplot properties are "upgradient" while making no claims at all about the water flow at two other farms is inadequate to state any plausible claim for relief or to take Lamb Weston's claims out of the realm of speculation.

The causation allegations in Plaintiffs' TAC lend no assistance to Lamb Weston's ATPC. Plaintiffs make no allegations about Simplot at all or groundwater flow east of the Umatilla River or east of the class areas. Indeed, the causation allegations of Plaintiffs' TAC only serve to highlight the lack of similar allegations in Lamb Weston's ATPC. For example, the TAC alleges that Plaintiff Mohedano's well is within Lamb Weston's class area, which is bounded to the east by the Umatilla River. TAC ¶¶ 147-48, 181, Ex. A; *see also id.* ¶ 105 (alleging 90 permit violations by Lamb Weston since 2015); *id.* ¶ 157 ("Nitrates from Lamb Weston's wastewater contaminate Plaintiff Mohedano's well water."). Lamb Weston does not allege (or have any facts to allow it to



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

allege) that Simplot's properties contaminated or caused any damage to Mohedano or any other Plaintiff's water supply.

Attempting to connect Simplot to Madison Ranches does not assist Lamb Weston, either. Even if Simplot provided process water to Madison Ranches, as Lamb Weston alleges (which Simplot did not do), Lamb Weston does not allege when Simplot purportedly provided process water to Madison Ranches, or that it was potato process water, or whether the water supplied contained excessive nitrate concentrations, or how Simplot had any control over how Madison Ranches applied water to its fields.

Apart from a portion of the Expansion Site, the farms Lamb Weston identifies are all outside the class area. ATPC ¶ 11. The Plant Site is east of the class area, adjacent to the Umatilla River, where water collects from higher elevations and ultimately flows to an even lower elevation in the Columbia River. Lamb Weston hasn't pleaded how groundwater from the Plant Site flows into which part of the class area, then through Lamb Weston's site to Plaintiff Mohedano's well. *See Twombly*, 550 U.S. at 567 (refusing to credit plaintiff's requested inference where there was an "obvious alternative explanation"). Lamb Weston alleges the Terrace Site is "upgradient of the alleged class area according to the Plaintiffs' own expert's model." ATPC ¶ 11. Since Lamb Weston's complaint specifically cites Plaintiffs' expert's model, we can turn to Dr. Laton's report to see what it does say about the Terrace Site. There is a specific figure from Laton's report that shows the water flow leaving the Terrace Site in a northerly direction towards Hermiston, not west or northwest toward any of Plaintiffs' wells. *See* ECF 230-3 at 1861; *see also Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1135 n.1 (9th Cir. 2013) ("[The Court] need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint").



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

As to the Expansion Site, Lamb Weston does not allege it is upgradient of Plaintiffs' wells, likely because DEQ's Third Trend Analysis Report states that "groundwater flows north-northeast across the" Expansion Site, Ex. 3 at 4-13—which is away from the class area and Mohedano. Thus, even if the Expansion Site is partially in the class area, Lamb Weston has not plausibly pleaded any connection between the Expansion Site and any of Plaintiffs' injuries.

In these circumstances, Lamb Weston has alleged no more than a "sheer possibility" that Simplot caused any of Plaintiffs' alleged injuries. *Iqbal*, 556 U.S. at 678. The third-party claims must therefore be dismissed.

**4. Lamb Weston has not otherwise adequately pleaded Simplot's derivative liability through joint and several liability.**

"[A] third-party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and the third party's liability is secondary or derivative." *One 1977 Mercedes Benz*, 708 F.2d at 452. "It is not sufficient that the third-party claim is a related claim; the claim must be derivatively based on the original plaintiff's claim." *Id.*; *see also Hampton Tree Farms v. Jewett*, 125 Or. App. 178, 193-94, 865 P.2d 420, 429 (1993) ("The third-party claim has the effect of shifting all or part of the third-party plaintiff's liability to its defendant. An independent claim by a defendant, even though arising out of the same transaction or occurrence as the main claim, is not a sufficient third-party claim.").

Lamb Weston has not pleaded any basis for imposing joint and several liability on Simplot. Without adequate pleading of joint and several liability, there is no derivative liability on which to base any third-party claims against Simplot.

Plaintiffs invoke joint and several liability among the Defendants through civil conspiracy allegations. TAC ¶¶ 169-80; *see also* ECF 216 at 8-12. Plaintiffs allege a conspiracy among the



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

Port, Lamb Weston, and other Defendants who discharge wastewater to the Port and Lamb Weston, focusing on the lease agreements among the Defendants. *Id*. These civil conspiracy allegations have nothing to do with Simplot. Lamb Weston does not allege that Simplot had a lease agreement with the Port or Lamb Weston, nor that Simplot ever discharged to the Port or to Lamb Weston. Neither the Plaintiffs nor Lamb Weston allege that Simplot engaged in any civil conspiracy with Lamb Weston or the Port.

The Court previously concluded that joint and several liability could be available via Restatement (Second) of Torts § 876, which provides that "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . (a) does a tortious act in concert with the other or pursuant to a common design with him." ECF 216 at 10-11. Accordingly, the Court determined that the Second Amended Complaint gave "rise to the plausible inference that CRP, Lamb Weston, Madison, and PGE acted in concert with the Port by generating and sending high-nitrate wastewater that they knew would be improperly disposed of by the Port." *Id.* at 11. But this theory is irrelevant to Simplot—Simplot never sent wastewater to the Port or acted in concert with the Port or Lamb Weston, and Lamb Weston does not allege that Simplot did so.

Plaintiffs also rely on ORS 31.610(6), which provides that the pure several liability regime created by ORS 31.610 does not apply to "[a] civil action resulting from the violation of Oregon or federal standards for . . . water pollution." *See* ECF 260-1 at 5-6 (Plaintiffs discussing theory); ECF 297 at 8-10 (Defendants rebutting same); *see also* ECF 216 at 19-20 (holding that Plaintiffs plausibly pleaded negligence per se based on ORS 468B.025(2), violation of permit conditions, against Lamb Weston, and finding joint tortfeasor liability available against other Defendants "on the basis that sending wastewater to . . . Lamb Weston for those entities to discharge in violation



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

of state law constitutes 'substantial assistance or encouragement'"). Whatever its merits, this theory for joint and several liability based on ORS 31.610(6) has no application to Simplot because Simplot stopped the land application of potato process wastewater in 2004. As explained in Section IV.A.1, *supra*, the statute of repose bars comparison of fault and contribution as to such claims against Simplot.

It was incumbent upon Lamb Weston to articulate in its ATPC a theory of joint and several liability. As Lamb Weston has not done so, it has failed to establish any common liability between Lamb Weston and Simplot and failed to state a third-party claim.

### B. Alternatively, the Court should strike Lamb Weston's third-party claims because Simplot's addition at this advanced stage of proceedings prejudices both Plaintiffs and Simplot, confuses the issues, and wastes the Court's and the parties' resources on unmeritorious claims.

The Court has broad discretion to strike the third-party claims under Rule 14(a)(4). Doing so is particularly appropriate here as allowing the third-party claims to proceed would prejudice both Plaintiffs and Simplot, needlessly complicate the issues, and delay resolution of the case. Plaintiffs have moved to strike Lamb Weston's ATPC because doing so would prejudice Plaintiffs. *See* ECF 260. Simplot agrees with and joins Plaintiffs' motion to strike. As the Third Amended Case Management Order makes clear, this case is at an advanced stage. The Court has twice ruled on motions to dismiss Plaintiffs' complaints, without any participation by the Third-Party Defendants. Defendants filed oppositions to the class certification motion, with expert reports, and associated *Daubert* motions on August 28, 2026. ECF 273 at 1. On that day alone, Defendants filed multiple expert witness reports of their own and 3,652 pages of documents. That was the same day that Simplot was served, leaving Simplot unable to participate in briefing on Plaintiffs' motion for class certification and *Daubert* motions on Plaintiffs' experts. Discovery will



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

substantially close in less than three months, on December 2, 2026. *Id.* The other parties have engaged in "extensive" discovery, including depositions of Plaintiffs and Plaintiffs' experts, and exchanged massive amounts of documents,[2] but Simplot didn't have the ability to participate in those depositions, and hasn't seen any discovery that is not appended to the class certification motions. Defendants, including Lamb Weston, have had years to consult with experts and determine the best way to respond to Plaintiffs' allegations. The Court can see from the reams of paper attached to those expert reports that putting them together was no simple, short-term task. Bringing Simplot in at this time would deprive Simplot of the same opportunities that Lamb Weston and the other Defendants have had to prepare a defense.

There is no justification for Lamb Weston's delay in impleading Simplot. Lamb Weston implies it only learned about Simplot through Plaintiffs' expert report, produced on June 30, 2026. ECF 297 at 4. But Simplot's presence in the LUBGWMA has been no secret. DEQ publicly evaluated Lamb Weston and Simplot's contributions of nitrogen to the LUBGWMA in trend analyses in 2004, 2007, and 2011. *See* Ex. 1 at 4-1 to 4-20 (First Trend Analysis); Ex. 2 at 4-1 to 4-18 (Second Trend Analysis); Ex. 3 at 4-1 to 4-15 (Third Trend Analysis). Whether Lamb Weston needed to seek leave under Rule 14(a) to file a third-party complaint does not insulate its third-party claims from objection on grounds of undue delay. *See Sullivan*, 2016 U.S. Dist. LEXIS 107124, at *12-13. If Lamb Weston believed Simplot shared in its potential liability to Plaintiffs, it should have impleaded Simplot at the outset, not three quarters of the way through this case. Lamb Weston chose to wait. Even then, Simplot was not brought into this case as a third-party

[2] *See* ECF 319 at 17 (referencing parties' engagement in "extensive fact and expert discovery, including 10 expert reports, numerous depositions, groundwater-flow analyses, well testing and records, and the exchange of hundreds of thousands of documents").



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

defendant within fourteen days of Lamb Weston's answer. The third-party complaint against Simplot (ECF 244) was not filed until thirty-five days after Lamb Weston's answer (ECF 233) and not served on Simplot until two months after Lamb Weston answered (ECF 305).

If Lamb Weston's ATPC is permitted, numerous new and peripheral issues would be injected into this timeline, threatening to upend it, including: (1) discovery on nitrogen loading, Simplot's land application practices, timing of the practices of the various involved parties, the impact of Simplot's best management practices implemented in the 1990s and early 2000s, hydrogeology in an additional portion of the groundwater management area outside the class area, recharge pathways, water flow direction at and around four new sites identified by Lamb Weston that are not evaluated in Plaintiffs' motion for class certification, and causal impacts to Plaintiffs, if any, given that Simplot's land application practices ceased more than twenty years ago, eliminating the application of potato process wastewater, and that the type of land application and irrigation practices on Simplot's farm land significantly changed over twenty years ago; (2) motions practice relating to additional expert witness evidence on matters like hydrogeology and source attribution; (3) additional motions practice on certifying or decertifying a class or modifying the class area from that defined in Plaintiffs' motion for class certification; and (4) thorny allocation issues arising from claims against Simplot being subject to the statute of ultimate repose, barred by the right-to-farm law, or otherwise ineligible for comparison of fault or contribution.

There is no need to litigate these issues unless the Court authorizes adding Simplot in this case as a third-party defendant. For example, evidentiary issues relating to Madison Ranches' class area would otherwise be largely moot after the Court approves Plaintiffs' settlement agreement with Madison Ranches, *see* ECF 247, but requiring Simplot to remain as a third-party defendant



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

could force the Court to nevertheless address many of these issues because Simplot's Expansion Site is alleged to be partly within the Madison Ranches class area and because Simplot is wrongly accused of providing unknown amounts of wastewater with unknown concentrations of nitrates at unknown times to Madison Ranches, *see* ATPC ¶ 10.

Indeed, if the Court does not dismiss or strike the ATPC as against Simplot, Simplot anticipates that it will be forced to ask for a continuance of existing deadlines in the current scheduling order and to vacate the September 2027 trial date to allow it to review the extensive filings and prior discovery in this case, participate in supplemental discovery (including the opportunity to re-depose Plaintiffs and Plaintiffs' expert witnesses), engage with experts, and otherwise receive a fair opportunity to prepare a defense to the third-party claims. Absent a continuance, Simplot would not likely be able to catch up on the two-and-a-half years of work that has already gone into litigating this case so that Simplot can meaningfully present a defense. Such prejudice, complication of the issues, and undue delay are proper grounds to strike third-party claims. *See, e.g.*, *Zero Tolerance Entm't, Inc. v. Ferguson*, 254 F.R.D. 123, 127 (C.D. Cal. 2008) (leave to implead third-party defendant denied where impleader "would require extending the discovery cut-off date," "delaying the trial," and complicating the issues); *SHFL Entm't, Inc. v. Kardwell Int'l, Inc.*, No. 2:12-cv-8271-SVW-RZ, 2013 U.S. Dist. LEXIS 198658, at *9 (C.D. Cal. July 15, 2013) (striking third-party claims where "additional discovery," "added issues," and "further motion practice" "would almost certainly necessitate the delay of the start of trial"); *Blazevich v. Mass. Mut. Life Ins. Co.*, No. 5:25-cv-01319, 2026 U.S. Dist. LEXIS 183445, at *11-12 (C.D. Cal. Mar. 12, 2026) ("Permitting the third-party claims to go forward would significantly



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

delay adjudication of this case, prejudice Plaintiff, and raise difficult issues . . . , all of which can be avoided by declining to hear these claims.”).

Lamb Weston may emphasize alleged synergies in hearing the original and third-party claims together, *see* ECF 297 at 11-13, but the Court’s resolution of the original claims “may obviate the need to adjudicate any derivative claims that Defendant may have.” *Blazevich*, 2026 U.S. Dist. LEXIS 183445 at *11 (defendant and third-party plaintiff “raise[d] serious questions” on the merits of the plaintiffs’ claims). Lamb Weston and the other Defendants have raised or claim to have raised serious defenses that strike at the heart of Plaintiffs’ case. *See, e.g.*, ECF 274 at 14-17 (promising liability would be “hotly contested,” attacking Plaintiffs’ “contrived ‘joint liability’ theory,” and raising “fundamental obstacles” to Plaintiffs’ causation theories). So far the Port of Morrow has filed one motion for summary judgment (ECF 319), and others may be filed as well. Defendants’ success on any one or more of these defenses could avoid the need to consider any third-party claims. In such circumstances, the Court may reasonably “place[] greater weight on the present delay than the hypothetical future effort that would be required to adjudicate a separate action.” *Blazevich*, 2026 U.S. Dist. LEXIS 183445 at *11.

Moreover, as explained in Section IV.A, striking the third-party claims is warranted because they lack merit. The statute of repose bars claims against Simplot based on alleged negligent injury; any remaining claims against Simplot are barred by the Oregon right-to-farm act; Lamb Weston speculates, but provides no specific factual allegations to connect Simplot to any injury alleged by Plaintiffs; and the third-party claims are not plausibly derivative of a common liability to Plaintiffs. If any third-party claim survives these defects, they will be so peripheral to Plaintiffs’ case that it will be difficult for the Court, Plaintiffs, and the other Defendants to integrate



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

Simplot into the case. The Court should not allow Lamb Weston to multiply the proceedings on such tenuous grounds. *See, e.g.*, *Cabalce v. VSE Corp.*, 914 F. Supp. 2d 1145, 1170 (D. Haw. 2012) (granting motion to strike third-party complaints where they failed to state a claim); *Roberts v. Armscorp Cartridge Inc.*, 788 F. Supp. 3d 1145, 1148 (W.D. Wash. 2025) (striking putative third-party claims that were "not derivative of Plaintiffs' claim against" third-party plaintiff); Fed. R. Civ. P. 14 Advisory Committee Note to 1963 Amendment ("After the third-party defendant is brought in, the court has discretion to strike the third-party claim if it is obviously unmeritorious and can only delay or prejudice the disposition of the plaintiff's claim.").[3]

**C. The Court should sever any remaining third-party claims against Simplot.**

If the Court does not fully dismiss or strike Lamb Weston's third-party claims against Simplot, severing and staying the surviving claims until resolution of Plaintiffs' claims against Lamb Weston is warranted. That procedure is appropriate in multi-site, multi-defendant environmental contamination cases to ensure manageability of litigation, especially where "[i]f [a defendant] is successful in its defense of the plaintiffs' claims, the various contribution issues will be mooted." *Shockley v. Hoechst Celanese Corp.*, 132 F.R.D. 429, 433-34 (D.S.C. 1990) (severing and staying contribution claims in tort and under CERCLA against third-party defendants where trial for original parties would have been unnecessarily complicated by voluminous new issues, prolonged, and delayed); *Gallagher & Kennedy PA v. City of Phx.*, No. 2:16-CV-4447-DAE, 2021 U.S. Dist. LEXIS 130077, at *18-19 (D. Ariz. July 13, 2021) (similar); *see supra* Section IV.B (third-party claims would be mooted by Defendants' successful defense of Plaintiffs' claim);

[3] The Court should also strike Lamb Weston's "Reserved RCRA Claim" as impertinent. ATPC ¶ 32. Lamb Weston has already used its amendment as of right under Rule 15(a)(1). It may not "reserve" a right to amend its third-party complaint further; it must seek leave of Court.



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

ATPC ¶ 31 (conceding the contribution claim is "not yet ripe"); ECF 297 at 5 (Lamb Weston alleges and admits that its contribution claim is a "contingent claim that would ripen, if at all, only if Lamb Weston is found liable and pays more than its legally allocated share").

Contrary to Lamb Weston's assertion that Simplot "need[s] to be at the original allocation," ECF 297 at 8, a separate contribution action after the Court's entry of judgment in this case is a perfectly adequate way for Lamb Weston to recoup any damages it believes it has paid beyond its proportional share. Indeed, that's the whole point of a contribution action under Oregon law. *See Hogan*, 2024 U.S. Dist. LEXIS 12482, at *6-7 (contribution may be available even if comparative fault under ORS 31.600 is not); *see also Emp'rs Ins. v. Musick, Peeler & Garrett*, 954 F.2d 575, 577 (9th Cir. 1992) ("While actions for contribution are frequently brought in the context of third party practice, it does not follow that third party procedure is the exclusive remedy. The right of contribution is substantive in nature. . . . Thus, a claim for contribution may be maintained in a separate action."); *Valdez v. Farmington*, 580 F. Supp. 19, 21 (D.N.M. 1984) ("Defendants will not be prejudiced substantially if the Court refuses to allow this third-party action. Defendants will remain free to institute a separate action for contribution or for indemnity against [the third-party defendant] should a judgment be entered against them in the present action."); *Crews v. Cnty. of Nassau*, 612 F. Supp. 2d 199, 219 (E.D.N.Y. 2009) (denying motion for leave to file third-party complaint where defendant could seek contribution in separate state court action if necessary, and third-party practice would cause delay, complicate the issues, and confuse the jury).

Courts routinely sever third-party claims where doing so would avoid delay, potential confusion of the jury, and prejudice to other parties with no third-party claims. *See, e.g.*, *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-3724 CW, 2013 WL 6671774, 2013 U.S. Dist.



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

LEXIS 178526, at *22 (N.D. Cal. Dec. 18, 2013) (sua sponte severing third-party claims given risk of delay, confusion, and prejudice to "other unrelated parties with no indemnification issues"); *Behroozi*, 2014 WL 5469033, 2014 U.S. Dist. LEXIS 153288, at *6-8 ("Considering the parties' papers and the record as a whole, the Court agrees with Plaintiff that not severing the third-party claims would create a significant delay in resolution of her case and, consequently, would prejudice Plaintiff. . . . The Court also agrees that not severing the claims creates a risk of jury confusion in light of the complex issues involved in the third-party claims."); *Butler v. Unified Life Ins. Co.*, No. CV 17-50-BLG-SPW, 2020 WL 1164863, 2020 U.S. Dist. LEXIS 42450, at *6 (D. Mont. Mar. 10, 2020) ("Severing the third-party complaint will promote judicial economy, avoid confusion, avoid possible delays of the underlying trial, and permit separate discovery plans to exist independent of each other."). That is the proper course here.

## V. CONCLUSION

For the foregoing reasons, the Court should grant Simplot's motion to dismiss or strike Lamb Weston's third-party complaint. Finally, the Court should sever and stay any of Lamb Weston's third-party claims against Simplot that are not dismissed or struck.



MARTEN LAW, LLP
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Tel: (503) 243-2200

Respectfully submitted October 9, 2026.

**MARTEN LAW, LLP**

By: /s/ ____________________________
**Victor Y. Xu, OSB #223323**
1050 SW 6th Ave., Suite 2150
Portland, Oregon 97204
Telephone: (503) 243-2200
vxu@martenlaw.com
**Albert P. Barker, ISB #2867 (pro hac vice)**
101 S. Capitol Blvd., Suite 1200
Boise, Idaho 83702
Telephone: (208) 336-0700
abarker@martenlaw.com

*Attorneys for J. R. Simplot Company, LLC*